**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 4:24-cv-10040-KMM**

| | |
|---|---|
| JAMES LUTZ, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, and DOUGLAS ELLIMAN INC., | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES LLC, AND DOUGLAS ELLIMAN INC.'S JOINT MOTION TO DISMISS AMENDED COMPLAINT, INCORPORATED <u>MEMORANDUM OF LAW, AND REQUEST FOR HEARING</u>**

## TABLE OF CONTENTS

TABLE OFAUTHORITIES ...................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD .............................................................................................................. 3

ARGUMENT ........................................................................................................................ 3

I.    Lutz Adequately Pleads His State Law Claims ................................................................ 3

   A. Lutz's State Law Claims Are Timely ......................................................................... 3

   B. Lutz Has Standing to Bring Claims in Each State for Which He Has Asserted a Claim .... 6

   C. Lutz Plausibly Alleges a Horizontal, Anticompetitive Agreement Among Defendants ..... 9

   D. Lutz Sufficiently Pleads His State Law Claims ............................................................. 12

      1.  Lutz's State Law Claims are Properly Pleaded ........................................................ 12

      2.  Lutz May Bring Antitrust Claims for Damages Under the Laws of Rhode Island, Maryland, New Hampshire, Utah, New York, Oregon, and Connecticut. ................. 13

      3.  Lutz May Bring His Utah Antitrust Claim. ............................................................. 15

      4.  Lutz Pleads Intrastate Effects for his D.C., Nevada, New York, North Carolina, Tennessee, West Virginia, and Wisconsin Antitrust Claims and Missouri, New York, Carolina and New Hampshire Consumer Protection Claims. ....................................... 16

      5.  Lutz's Arizona, Hawaii, Nevada, Rhode Island, and Utah Claims are Not Barred By State Notice Requirements. ....................................................................................... 17

      6.  *Illinois Brick* Does Not Bar Lutz's Missouri and New Jersey Consumer Protection Claims .................................................................................................................. 18

      7.  Lutz May Seek Restitution Under California's Unfair Competition Law ................. 20

      8.  Lutz's Colorado, Kansas, and Oregon Consumer Protection Claims are Actionable. 20

      9.  Lutz Pleads Deceptive Conduct for his Arizona, Kansas, Michigan, New York, Rhode Island, Pennsylvania, and Virginia Consumer Protection Claims. ............................. 23

i

E. Lutz Adequately Pleads His Unjust Enrichment Claim ........................................... 24

II. Lutz Adequately Pleads Standing for Injunctive Relief ......................................... 28

A. Lutz Has Antitrust Standing for His Federal Claim ............................................ 28

B. Lutz Has Article III Standing for His Equitable Federal Claim ......................... 30

III. Leave to Amend is Warranted if the Motion is Granted ....................................... 32

CONCLUSION ................................................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Hormel Foods Corp.*,
  273 Neb. 422 (2007) ................................................................................. 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 3

*Austin v. House of Vision, Inc.*,
  101 Ill. App. 2d 251 (Ill. App. Ct. 1968) ................................................... 5

*Batton v. Nat'l Ass'n of Realtors*,
  No. 21-CV-00430, 2024 WL 689989 (N.D. Ill. Feb. 20, 2024) .................... 1, 7, 12

*Beavers v. Walters*,
  537 N.W.2d 647 (N.D.1995) ...................................................................... 6

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ................................................................... 7

*Briehler v. City of Miami*,
  926 F. 2d 1001 (11th Cir. 1991) ................................................................ 32

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ................................................................. 3

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
  582 U.S. 497 (2017) ................................................................................. 4

*Cambridge Plating Co. v. Napco, Inc.*,
  991 F.2d 21 (1st Cir. 1993) ....................................................................... 5

*Cheatham v. ADT Corp.*,
  161 F. Supp. 3d 815 (D. Ariz. 2016) ......................................................... 23

*Coleman v. Burger King Corp.*,
  No. 22-CV-20925, 2023 WL 5507730 (S.D. Fla. Aug. 25, 2023) ................ 7, 8

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021) ........................................................ 23

*Cooley v. Pine Belt Oil Co.*,
  334 So. 3d 118 (Miss. 2022) ..................................................................... 5

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    144 S. Ct. 2440 (2024) ............................................................................ 4, 5

*Cox v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) ............................................................... 9

*Czeremcha v. Ass'n of Mack & Aero. Workers*, ,
    724 F.2d 1552 (11th Cir. 1984) ............................................................... 32

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) .................................................................. 11

*Dixon v. Shafton*,
    649 S.W.2d 435 (Mo. 1983) ................................................................... 5

*DOIT, Inc. v. Touche, Ross & Co.*,
    926 P.2d 835 (Utah 1996) ....................................................................... 6

*Dubose v. Quinlan*,
    643 Pa. 244 (2017) ................................................................................. 6

*Duty Free Americas, Inc. v. Estée Lauder Companies, Inc.*,
    797 F.3d 1248 (11th Cir. 2015) ............................................................... 31

*Elder v. Reliance Worldwide Corp.*,
    563 F. Supp. 3d 1221 (N.D. Ga. 2021) .................................................. 22

*Gibbons v. J. Nuckolls, Inc.*,
    216 S.W.3d 667 (Mo. 2007) ................................................................... 19

*Gilliam v. Elliott*,
    151 Haw. 321 (Ct. App. 2022) ............................................................... 5

*Gov't Emps. Ins. Co. v. Gomez-Cortes*,
    No. 20-21558-CIV, 2022 WL 820377 (S.D. Fla. Jan. 20, 2022) ............ 26

*Green-Cooper v. Brinker Int'l, Inc.*,
    73 F.4th 883 (11th Cir. 2023) ................................................................. 30

*Griffin v. Sec. Pac. Auto. Fin. Servs. Corp.*,
    33 F. Supp. 2d 926 (D. Kan. 1998) ........................................................ 21

*Hamilton v. Suntrust Mortg. Inc.*,
    6 F. Supp. 3d 1312 (S.D. Fla. 2014) ...................................................... 25

*Hegg v. Hawkeye Tri-Cnty. REC*,
    512 N.W.2d 558 (Iowa 1994) ................................................................ 5

*Hendel v. World Plan Exec. Council*,
 705 A.2d 656 (D.C. 1997) ........................................................................... 5

*Highland Consulting Grp., Inc. v. Minjares*,
 74 F.4th 1352 (11th Cir. 2023) ................................................................... 8

*Hill v. Rhode Island State Employees' Retirement Bd.*,
 935 A.2d 608 (R.I. 2007) ............................................................................ 6

*In re Aftermarket Filters Antitrust Litig.*,
 No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .................... 18

*In re Broiler Chicken Antitrust Litig.*,
 290 F. Supp. 3d 772 (N.D. Ill. 2017) ....................................................... 18

*In re Capacitors Antitrust Litig.*,
 No. 14-cv-03264-JD, 2018 WL 4558265 (N.D. Cal., Sept. 20, 2018) ...... 16

*In re Cattle Antitrust Litig.*,
 No. CV 19-1129 (JRT/HB), 2021 WL 7757881 (D. Minn. Sept. 14, 2021) ........... 19

*In re Checking Acct. Overdraft Litig.*,
 No. 1:09-MD-02036-JLK, 2016 WL 5848730 (S.D. Fla. Jul. 5, 2016) ...... 9

*In re Dynamic Random Access Memory Antitrust Litig.*,
 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................. 14, 22

*In re Estate of Miller*,
 2008 ME 176, 960 A.2d 1140 (Me. 2008) ................................................. 5

*In re Generic Pharms. Pricing Antitrust Litig.*,
 368 F. Supp. 3d 814 (E.D. Pa. 2019) ................................................ passim

*In re Interior Molded Doors Antitrust Litig.*,
 No. 3:18-CV-00718-JAG, 2019 WL 4478734 (E.D. Va. Sept. 18, 2019) .............. 24

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
 No. 16-md-2687, 2017 WL 3131977 (D.N.J. Jul. 20, 2017) ............... 16, 20

*In re Managed Care Litig.*,
 298 F. Supp. 2d 1259 (S.D. Fla. 2003) ................................................... 20

*In re Niaspan Antitrust Litig.*,
 42 F. Supp.3d 735 (E.D. Pa. 2014) ................................................... 14, 15

*In re Packaged Seafood Prod. Antitrust Litig.*,
 242 F. Supp. 3d 1033 (S.D. Cal. 2017) ................................... 14, 15, 19, 22

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    355 F. Supp. 3d 145 (E.D.N.Y. 2018) ................................................................. 18

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
    No. 2895, 2022 WL 736250 (D. Del. Mar. 11, 2022) ....................................... 26, 27

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    64 F. Supp. 3d 665 (E.D. Pa. 2014) ................................................................ 16, 19

*In re Takata Airbag Prod. Liab. Litig.,*
    462 F. Supp. 3d 1304 (S.D. Fla. 2020) ................................................................. 26

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................................................................. 24

*In re Terazosin Hydrochloride*,
    220 F.R.D. 672 (S.D. Fla. 2004) .................................................................... 24, 25

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
    300 F. Supp. 2d 1107 (D. Kan. 2003) ............................................................ 21, 23

*In re Vanguard Chester Funds Litig.*,
    No. CV 22-955, 2023 WL 8091999 (E.D. Pa. Nov. 20, 2023)......................... 20, 21

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)............................................................................ 24

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    555 F. Supp. 3d 829 (N.D. Cal. 2021) .................................................................. 15

*In re Zantac (Ranitidine) Prod. Liab. Litigation*,
    No. 21-10335, 2022 WL 16729170 (11th Cir. Nov. 7, 2022) ............................... 7, 8

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    No. CV 2:18-MD-2836, 2019 WL 1397228 (E.D. Va. Feb. 6, 2019) .......... 17, 18, 19

*Inform Inc. v. Google LLC*,
    No. 21-13289, 2022 WL 3703958 (11th Cir. Aug. 26, 2022) ................................ 13

*Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*,
    29 Mass. App. Ct. 215 (1990)................................................................................. 5

*Johnson v. Catamaran Health Sols., LLC*,
    687 F. App'x 825 (11th Cir. 2017) ........................................................................ 27

*Kelley & Grant, P.A. v. JPMorgan Chase Bank, N.A.*,
    No. 23-CV-80749, 2023 WL 11899127 (S.D. Fla. Oct. 10, 2023).......................... 23

*Kerns v. Wells Fargo Bank, N.A.,*
    818 S.E.2d 779 (Va. 2018) ............................................................................. 6

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004) ..................................................................... 9

*Klumpp v. Borough of Avalon,*
    997 A.2d 967 (N.J. 2010) .............................................................................. 5

*Kotteakos v. United States,*
    328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) ............................... 11

*Kronos, Inc. v. AVX Corp.,*
    81 N.Y.2d 90 (1993) ..................................................................................... 5

*LaCroix v. Town of Fort Myers Beach, Fla.,*
    38 F.4th 941 (11th Cir. 2022) ..................................................................... 31

*Lagassey v. State,*
    268 Conn. 723 (2004) ................................................................................... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ...................................................................................... 8

*Long v. Dell, Inc.,*
    93 A.3d 988 (R.I. 2014) .............................................................................. 23

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...................................................................................... 6

*MacBride v. Pishvaian,*
    937 A.2d 233 (Md. 2007) ............................................................................. 5

*Med James, Inc. v. Barnes,*
    31 Kan. App. 2d 89 (2003) ........................................................................... 5

*Miami Prod. & Chem. Co. v. Olin Corp.,*
    No. 1:19-CV-00385 EAW, 2022 WL 3701159 (W.D.N.Y. Aug. 26, 2022) .......................... 15

*Moehrl v. Nat'l Ass'n of Realtors,*
    492 F. Supp. 3d 768 (N.D. Ill. 2020) .......................................................... 10

*National Society of Professional Engineers v. United States,*
    435 U.S. 679 (1978) ............................................................................. 10, 11

*NCAA v. Alston,*
    594 U.S. 69 (2021) ...................................................................................... 11

*nFinanSe, Inc. v. Interactive Commc'ns Int'l, Inc.*,
   No. 1:11-CV-3728-AT, 2012 WL 13009231 (N.D. Ga. July 24, 2012)..................................... 11

*Nuwer v. FCA US LLC*,
   343 F.R.D. 638 (S.D. Fla. 2023) ................................................................................................. 9

*Nuwer v. FCA US LLC*,
   552 F. Supp. 3d 1344 (S.D. Fla. 2021) ..................................................................................... 12

*Oganov v. American Family Ins. Group*,
   767 N.W.2d 21 (Minn.2009).......................................................................................................... 5

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)..................................................................................................................... 7

*Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*,
   604 F.3d 1291 (11th Cir. 2010) ................................................................................... 2, 28, 29

*Penthouse N. Ass'n, Inc. v. Lombardi*,
   461 So. 2d 1350 (Fla. 1984)....................................................................................................... 5

*Peterson v. Aaron's, Inc.*,
   No. 1:14-CV-1919-TWT, 2015 WL 5479877 (N.D. Ga. Sept. 16, 2015).......................... 26, 27

*Pooshs v. Philip Morris USA, Inc.*,
   51 Cal. 4th 788 (2011) ................................................................................................................ 5

*Prescott v. Adams*,
   627 S.W.2d 134 (Tenn. Ct. App. 1981) ...................................................................................... 6

*Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*,
   61 F.4th 299 (2d Cir. 2023) ........................................................................................... 9, 11, 12

*Rennie v. State*,
   171 Vt. 584 (2000) ...................................................................................................................... 6

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) ................................................................................................ 12

*Rickman v. BMW of N. Am.*, No.
   18-4363 (KM)(JBC), 2020 WL 3468250 (D.N.J. June 25, 2020)............................................ 18

*Roberts v. West Virginia American Water Co.*,
   655 S.E.2d 119 (W.Va. 2007)..................................................................................................... 6

*Romano v. Motorola, Inc.*,
   No. 07-CIV-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) .......................................... 25

*Satamian v. Great Divide Insurance Co.*,
 545 P.3d 918 (Ariz. 2024) .................................................................................. 5

*Seldon v. Home Loan Servs., Inc.*,
 647 F. Supp. 2d 451 (E.D. Pa. 2009) ................................................................. 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393 (2010) ...................................................................................... 17, 18

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*,
 650 F.Supp.2d 1213 (S.D. Fla. 2009) ................................................................ 25

*Singer Asset Fin. Co., LLC v. Wyner*,
 156 N.H. 468 (2007) ........................................................................................... 5

*Siragusa v. Brown*,
 971 P.2d 801 (Nev. 1998) .................................................................................... 5

*Speerly v. Gen. Motors, LLC*,
 343 F.R.D. 493 (E.D. Mich. 2023) .................................................................... 23

*Sprint Sols., Inc. v. Fils-Amie*,
 44 F. Supp. 3d 1224 (S.D. Fla. 2014) ............................................................... 10

*State ex rel. Nixon v. Estes*,
 108 S.W.3d 795 (Mo. Ct. App. 2003) ............................................................... 17

*State ex rel. Rosenblum v. Johnson & Johnson*,
 362 P.3d 1197 (2015) ........................................................................................ 22

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*,
 777 S.E.2d 176 (S.C. 2015) ................................................................................ 6

*State Farm Mut. Auto. Ins. Co. v. B & A Diagnostic, Inc.*,
 104 F. Supp. 3d 1366 (S.D. Fla. 2015) ............................................................. 26

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery*, LLC,
 315 F. Supp. 3d 1291 (S.D. Fla. 2018) ............................................................. 26

*Steel Media Grp., LLC v. Lewis*,
 No. 1:22-CV-21780-JLK, 2023 WL 8476577 (S.D. Fla. Aug. 10, 2023) ............... 32

*Stiff v. BilDen Homes, Inc.*,
 88 P.3d 639 (Colo. App. 2003) ........................................................................... 5

*Strizver v. Wilsey*,
 150 P.3d 10 (Ore. 2006) .................................................................................... 14

*Sunset Presbyterian Church v. Brockamp & Jaeger, Inc.*,
    325 P.3d 730 (Or. 2014) ............................................................................................ 6

*Taylor v. Bank of America, N.A.*,
    898 S.E.2d 740 (N.C. 2024) ...................................................................................... 6

*Texaco, Inc. v. Hasbrouck*,
    496 U.S. 543 (1990) ................................................................................................. 29

*Tietsworth v. Harley-Davidson, Inc.*,
    270 Wis. 2d 146 (2004) ............................................................................................ 6

*Township of Fraser v. Haney*,
    983 N.W.2d 309 (Mich. 2022) .................................................................................. 5

*Uhler v. Doak*,
    268 Mont. 191 (1994) ............................................................................................... 5

*Valdez v. Seidner-Miller, Inc.*,
    245 Cal. Rptr. 3d 268 (2019) ................................................................................. 20

*Vibe Micro, Inc. v. Shabanets*,
    878 F.3d 1291 (11th Cir. 2018) ........................................................................ 13, 32

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) .............................................................................. 13

*Williams v. Reckitt Benckiser LLC*,
    65 F.4th 1243 (11th Cir. 2023) ............................................................................... 31

*Wilson v. EverBank, N.A.*,
    77 F. Supp. 3d 1202 (S.D. Fla. 2015) ...................................................................... 9

*Wilson v. Gen. Motors Corp.*,
    190 N.J. 336 (2007) ................................................................................................. 19

**Statutes**

Colo. Rev. Stat. § 6-1-105 ............................................................................................. 20

New York GBL § 349 ..................................................................................................... 23

Or. Rev. Stat. § 646.607 ................................................................................................ 22

Or. Rev. Stat. § 646.608 ................................................................................................ 22

Utah Code Ann. § 76-10-3109 (1)(a) (West) ............................................................... 14

## INTRODUCTION

For decades, the Defendants[1] perpetuated an antitrust conspiracy that inflated the amount that homebuyers paid to purchase homes throughout the country. In 2021, Plaintiff James Lutz fell victim to this scheme when he purchased a home in Florida. Lutz filed this lawsuit after the Northern District of Illinois allowed identical claims to proceed against the Defendants' co-conspirators while dismissing the HomeServices Defendants from the case for lack of personal jurisdiction. *Batton v. Nat'l Ass'n of Realtors* ("*Batton I*"), No. 21-CV-00430, 2024 WL 689989, at *14 (N.D. Ill. Feb. 20, 2024); Notice of Voluntary Dismissal, *Batton et al. v. Compass, Inc.*, No. 1:23-cv-15618 (N.D. Ill. June 11, 2024), ECF No. 118.[2] As part of the parallel suit's order dismissing the claims against HomeServices Defendants, the Northern District of Illinois rejected the substantive claims that HomeServices Defendants made alongside its codefendants in that case. Lutz respectfully requests that this Court do the same here.

Indeed, the Defendants' arguments in their motion to dismiss[3] rehash losing arguments that the HomeServices Defendants made in the Northern District of Illinois. This Court should deny Defendants' motion to dismiss the state law claims for many of the same reasons *Batton* did.  More specifically, Lutz's claims are timely because they accrued in 2021 when he suffered harm through his home purchase. Defendants' argument that Lutz's claim accrued decades before it ever ripened ignores the traditional accrual rule embraced by every state law at issue in

---

[1] Defendants refers to HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, and Douglas Elliman Inc.

[2] All internal citations and quotations omitted unless specified otherwise.

[3] *See* ECF No. 65, hereinafter "MTD."

this case. Additionally, as other courts have repeatedly held, Lutz's pleadings satisfy Rule 8 and plausibly allege an agreement among Defendants and their co-conspirators.

Defendants' state-specific arguments also fail. While Defendants provide string cites to support their arguments regarding standing, *Illinois Brick,* damages, intrastate effects, deceptive conduct, reliance, residency, and pre-suit notice requirements (to name a few), the reasoning of those cases and other case law actually supports Lutz's claims. Lutz also does need to plead his unjust enrichment claim on a state-by-state basis as Defendants claim, because the elements of unjust enrichment are largely the same across the states and because Lutz pleads the common elements of unjust enrichment, including those of Florida law.

The Court should also reject Defendants' arguments for dismissing the federal equitable claim. Under Eleventh Circuit precedent, Lutz is an efficient enforcer of federal antitrust laws. *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010) ("*Palmyra*"), holds that plaintiffs are efficient enforcers even with multiple intermediaries involved so long as rational economic principles demonstrate harm that inevitably flows to them because defendants' conduct. Here, the fundamental economic principle of passing through input costs (such as inflated commissions) means that rational home-sellers baked supracompetitive prices into purchase prices. And although home-sellers' proposed settlements address some of Defendants' misconduct, they fail to prevent enforcement of all the restraints that facilitate home-sellers' pass-through of inflated commissions, such as forbidding homebuyers from negotiating commission rates as part of homebuying discussions.

## BACKGROUND

The Defendants engaged in a nationwide conspiracy with the National Association of Realtors and other real estate brokerage companies to artificially inflate commissions paid by

homebuyers, resulting in homebuyers paying too much for their homes, among myriad other harms. As part of this scheme, Defendants adopted rules that structured homebuying transactions in a way that both buyers' agents and sellers' agents received their pay as a percentage of the total house price paid by buyers. ¶ 46.[4] Although the commissions come directly from the money paid by homebuyers, Defendants obscured the cost to homebuyers by permitting their agents to represent their services to buyers as free. ¶¶ 82-83. They further obscured the cost to homebuyers by adopting rules that prohibited the disclosure of the total commission amount at the time of negotiating the purchase price of the home. ¶¶ 9, 57, 79. Rational home-sellers are motivated to pass on the harm from inflated commissions to homebuyers by increasing the prices of the homes they sell, among other economic harms to homebuyers. ¶¶ 1, 4, 13, 62, 108, 145-46. Lutz suffered this economic harm when he paid too much for his home.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Upon review of a motion to dismiss, "the complaint must be construed in a light most favorable to the plaintiff and the factual allegations taken as true." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## ARGUMENT

### I. Lutz Adequately Pleads His State Law Claims

#### A. Lutz's State Law Claims Are Timely

In June 2024, the Supreme Court explained that under the "traditional" or "standard rule for limitations periods," "a cause of action accrues 'on [the] date that damage is sustained and

---

[4] "¶" refers to paragraphs in Lutz's Amended Complaint, ECF No. 45.

not [the] date when causes are set in motion which ultimately produce injury.'" *Corner Post, Inc.*
*v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2451 (2024) (quoting Black's Law
Dictionary). In this case, Lutz sustained damage when he purchased his home—not the date
when the Defendants first adopted their unlawful business practices. Consequently, Lutz's causes
of action did "not become complete and present for limitations purposes—it d[id] not *accrue*—
until the plaintiff [could] file suit and obtain relief." *Id.*

This accrual rule for statutes of limitations, focusing on the date of the plaintiff's injury,
differs from "statutes of repose [that] begin to run on the date of the last culpable act or omission
of the defendant." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505
(2017). The Defendants would turn state statutes of limitations into statutes of repose without
any of the "clear terms" or "emphatic form" that courts require before determining that a time
bar is a statute of repose. *Id.* at 505 (statute of repose because it said "in no event" could an
action be brought beyond time limit and noted "defendant's last culpable act"); *id.* ("emphatic
form" of statutes of limitations differs from "fairly simple language" in statutes of limitations).

Defendants ignore accrual entirely and focus instead on "the delayed discovery rule" and
"the doctrine of fraudulent concealment." MTD at 11-19. These arguments are a sideshow.
Unless a claim accrued outside the statute of limitations, a court need not waste time addressing
these diversions from the traditional accrual rule. *See Corner Post*, 144 S. Ct. at 2451 (rejecting
argument that accrual occurred at rule's promulgation, holding that the "traditional rule" creates
"a strong background presumption" for all limitations statutes and that Corner Post could not
have been injured at rule's promulgation because it did not exist at that time).

Nothing in this case permits departure from the traditional accrual rule. To establish an
anomalous accrual rule, Defendants must identify something in the statutory text or a state

supreme court decision providing "indication that it begins to run before the plaintiff has a complete and present cause of action"—including injury and damages. *Id.* at 2452. Defendants identify nothing. If they had researched the accrual rules for the statutes they cite in Exhibit A, they would have discovered that state precedent bars their argument. That precedent uniformly establishes that every state follows the traditional accrual rule and starts the limitations clock, at the earliest, on the date a plaintiff suffers injury—not the date a conspiracy is first hatched.[5]

---

[5] *Satamian v. Great Divide Insurance Co.*, 545 P.3d 918, 925 (Ariz. 2024); *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011); *Stiff v. BilDen Homes, Inc.*, 88 P.3d 639, 641 (Colo. App. 2003); *Lagassey v. State*, 268 Conn. 723, 747 (2004); *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 660 (D.C. 1997); *Penthouse N. Ass'n, Inc. v. Lombardi*, 461 So. 2d 1350, 1352 (Fla. 1984); *Gilliam v. Elliott*, 151 Haw. 321, at *4 (Ct. App. 2022); *Austin v. House of Vision, Inc.*, 101 Ill. App. 2d 251, 255 (Ill. App. Ct. 1968); *Hegg v. Hawkeye Tri-Cnty. REC*, 512 N.W.2d 558, 559 (Iowa 1994); *Med James, Inc. v. Barnes*, 31 Kan. App. 2d 89, 99 (2003); *In re Estate of Miller*, 2008 ME 176, 960 A.2d 1140, 1146; *MacBride v. Pishvaian*, 937 A.2d 233, 238 (Md. 2007); *Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir. 1993) (citing *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 221 (1990)); *Township of Fraser v. Haney*, 983 N.W.2d 309, 311 (Mich. 2022); *Oganov v. American Family Ins. Group*, 767 N.W.2d 21, 24 (Minn.2009); *Cooley v. Pine Belt Oil Co.*, 334 So. 3d 118, 126 (Miss. 2022); *Dixon v. Shafton*, 649 S.W.2d 435, 439 (Mo. 1983); *Uhler v. Doak*, 268 Mont. 191, 196 (1994); *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 431 (2007); *Siragusa v. Brown*, 971 P.2d 801, 806 (Nev. 1998); *Singer Asset Fin. Co., LLC v. Wyner*, 156 N.H. 468, 477–78 (2007); *Klumpp v. Borough of Avalon*, 997 A.2d 967, 978 (N.J. 2010); *Kronos, Inc. v. AVX*

While unnecessary at this point because of the accrual rules, these states also recognize that accrual is often delayed after the date of injury when a reasonable plaintiff would not have discovered the injury and its source until later. Here, Defendants conspired to promulgate a rule to hide their misconduct and misled homebuyers like Lutz into believing that their services were free. ¶¶ 4 9, 46, 56, 81-83. Because of this misrepresentation, homebuyers like Lutz do not actually know how they are injured until after they suffer injury. And pinpointing the date when a reasonable homebuyer would discover the untruthfulness of this misrepresentation requires further factual development beyond the face of the complaint.

### B. Lutz Has Standing to Bring Claims in Each State for Which He Has Asserted a Claim

Lutz has Article III standing to assert claims under the laws of each of the Indirect Purchaser states in the Complaint. To have Article III standing, a plaintiff must allege: (1) injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61

---

*Corp.*, 81 N.Y.2d 90, 94 (1993); *Taylor v. Bank of America, N.A.*, 898 S.E.2d 740, 745 (N.C. 2024); *Beavers v. Walters*, 537 N.W.2d 647, 650 (N.D.1995); *Sunset Presbyterian Church v. Brockamp & Jaeger, Inc.*, 325 P.3d 730 (Or. 2014); *Dubose v. Quinlan*, 643 Pa. 244, 258 (2017); *Hill v. Rhode Island State Employees' Retirement Bd.*, 935 A.2d 608, 616 (R.I. 2007); *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 777 S.E.2d 176, 199 (S.C. 2015); *Prescott v. Adams*, 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981); *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 843 (Utah 1996); *Rennie v. State*, 171 Vt. 584, 586 (2000); Kerns v. Wells Fargo Bank, N.A., 818 S.E.2d 779, 784 (Va. 2018); *Roberts v. West Virginia American Water Co.*, 655 S.E.2d 119, 124 (W.Va. 2007); *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 158 (2004).

(1992); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005). Lutz pleads that he was injured by paying inflated commissions and home prices as a result of Defendants' implementation of anticompetitive rules and practices, which injury can be redressed through a favorable decision permitting damages and injunctive relief.[6]

Defendants' argument that Lutz lacks standing to assert claims in states other than Florida improperly conflates Article III standing with class certification requirements. Where standing issues arise in a class action only because the named plaintiff seeks to represent others similarly situated, class certification issues are treated as "logically antecedent" to standing issues. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) ("class certification issues are . . . logically antecedent to Article III concerns" about absent class members and "may properly be treated before Article III standing" (internal quotation marks omitted)). The Eleventh Circuit has observed that "all circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III." *In re Zantac (Ranitidine) Prod. Liab. Litigation*, No. 21-10335, 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022) ("*Zantac*"); *Coleman v. Burger King Corp.*, No. 22-CV-20925, 2023 WL 5507730, at *4 (S.D. Fla. Aug. 25,

---

[6] Defendants inexplicably claim in a footnote that Lutz fails to plead these elements. As set forth above, Lutz does plead the required elements. Indeed, the *Batton* court already held as much. *Batton I*, 2024 WL 689989, at *3.

2023) ("when [plaintiffs] request . . . certification, we'll have to decide whether they can assert the claims of absent class members from other states. But that day is not today.").[7]

Defendants attempt to downplay *Zantac* as an unpublished, nonbinding decision, but *Zantac* does not stand alone. It follows Supreme Court and Eleventh Circuit precedent recognizing that the mislabeled doctrine of "statutory standing . . . does not implicate subject-matter jurisdiction" under Article III standing doctrine. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014); *Highland Consulting Grp., Inc. v. Minjares*, 74 F.4th 1352, 1359 (11th Cir. 2023) (same).

---

[7] Defendants appear to read into *Coleman* a requirement that Plaintiff plead in his complaint that the state statutes under which he brings claims are materially identical to Florida's. MTD at 23 n. 12. Neither *Coleman* or *Zantac* establish any such requirement, which would contravene Rule 8's lax notice pleading standard. Rather, those cases recognize that the identity among claims and class members is a question for Rule 23's commonality and predominance inquiries. *Coleman* stated that plaintiffs "may (and probably should) assert in some of those counts that, at some future date and time, they will be seeking court approval (what we call 'certification') to assert materially identical consumer-protection claims on behalf of class members from *other* states"). *Coleman*, 2023 WL 5507730, at *3. Lutz has done this by pleading the state claims for which they intend to seek class certification. And *Coleman's* citations to *Zantac* concern *Zantac's* holding that "Determining whether [p]laintiffs' injuries are sufficiently similar to those of the purported class is a question for the certification stage." *Id.*, 2023 WL 5507730, at *4

In class cases implicating various state statutes, this District has repeatedly determined that named plaintiffs have Article III standing and allowed those claims to proceed to the certification stage. *Wilson v. EverBank, N.A.,* 77 F. Supp. 3d 1202, 1230 (S.D. Fla. 2015) ("the issue is not whether the named plaintiff has standing to sue the defendant, but whether his or her injuries are sufficiently similar to those of the purported class to justify the prosecution of a nationwide class action, which is properly determined at the class certification stage"); *see also Nuwer v. FCA US LLC*, 343 F.R.D. 638, 648 (S.D. Fla. 2023) (same); *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2016 WL 5848730, at *3 (S.D. Fla. Jul. 5, 2016) (same); *see Klay v. Humana, Inc.,* 382 F.3d 1241, 1262 (11th Cir. 2004) ("if a claim is based on a principle of law that is uniform among the states, class certification is a realistic possibility").

In place of this prevailing law, Defendants would instead impose a "highly inefficient" requirement "contrary to established practice" that for every "multistate class action . . . there be a named plaintiff from every state." *See Wilson,* 77 F. Supp. 3d at 1231. That would effectively require more than 50 named plaintiffs in these class actions, negating Rule 23's goal of reducing duplicative and unnecessary plaintiffs. *Cf. Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (Rule 23's numerosity requirement is generally satisfied where non-class treatment would result in "more than 40" named plaintiffs).

### C. Lutz Plausibly Alleges a Horizontal, Anticompetitive Agreement Among Defendants

Lutz alleges that Defendants and their co-conspirators, including NAR and other brokerages, entered into horizontal agreements—codified in NAR's handbook and Defendants' own rules and procedures—to abide by NAR rules and ensure their franchises and MLSs did too. ¶¶ 96-109. These rules essentially codified Defendants' conspiracy, raising home prices and commissions nationwide. ¶ 110. Lutz pleads a classic horizontal agreement to restrain trade. *Relevent Sports, LLC v. United States Soccer Fed'n, Inc*., 61 F.4th 299, 307 (2d Cir. 2023)

9

(finding that association's rules eliminating competition were direct evidence of a horizontal agreement between association members), *cert. denied*, 144 S. Ct. 1391 (2024). Lutz further alleges that each Defendant was a member of NAR and agreed to adopt, maintain, and be bound by its anticompetitive rules. ¶¶ 9, 11-12, 98, 103-109. This is not a case where the complaint "fails to give each defendant notice of the claims against it." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014) ("[C]ollective allegations are construed as applying to each defendant individually. The practice only runs afoul of the applicable pleading standard where it results in a complaint that fails to give each defendant notice of the claims against it.").

Virtually identical allegations have been held to plausibly allege an agreement under the antitrust laws. *Moehrl v. Nat'l Ass'n of Realtors,* 492 F. Supp. 3d 768, 778 (N.D. Ill. 2020) ("[T]he purported anticompetitive restraints here are a product of written rules issued by the NAR that each Corporate Defendant expressly imposes upon their franchisees and realtors. That suggests that each Corporate Defendant has reviewed, understood, and ultimately agreed to the NAR's rules, including the Buyer-Broker Commission Rules.").

Defendants argue that their unlawful restraints on trade must be legal because they were implemented through a trade association. The Supreme Court has rejected this exact pretext. *National Society of Professional Engineers v. United States*, 435 U.S. 679 (1978), involved a trade "association's canon of ethics prohibiting competitive bidding by its members." *Id.* at 681. The canon's "agreement among competitors to refuse to discuss prices with potential customers" was so obviously improper that "no elaborate industry analysis is required to demonstrate the anticompetitive character of such an agreement." *Id.* at 692. The Court declared the defendant's "attempt to [justify the restraints] on the basis of the potential threat that competition poses to the public safety and the ethics of its profession is nothing less than a frontal assault on the basic

10

policy" of antitrust. *Id.* at 695. More recently, the Supreme Court reiterated the impropriety of attempting to escape antitrust liability by claiming membership in a trade association. *NCAA v. Alston*, 594 U.S. 69, 95 (2021) (discussing *Nat'l Soc. Prof. Eng'rs* in rejecting the NCAA's bid to escape antitrust liability). Although trade associations are not "walking conspirac[ies]," MTD at 21, "[c]ompetitors do not avoid antitrust liability by hiding behind or acting through" such associations. *Relevent Sports*, 61 F.4th at 306. "[T]he adoption of a binding association rule designed to prevent competition is <u>direct evidence</u> of concerted action" and "[n]o further proof is necessary." *Id.* at 309 (emphasis in original).

Defendants' hub-and-spoke argument similarly fails. Lutz does not allege individual vertical agreements between NAR and each Defendant, MLS, subsidiaries, and franchises. Rather, Lutz alleges that Defendants were members of NAR, agreed together to be bound by NAR's rules, and required their agents, franchisees, and employees to follow NAR's rules aimed at preventing price competition. ¶¶ 9, 103-109.[8] Lutz need not demonstrate Defendants "agree[d]

---

[8] None of Defendants' cases involve defendants who were all members of an association and all agreed with each other to be bound by anticompetitive rules to inflate prices. *See Kotteakos v. United States*, 328 U.S. 750, 754–55, 66 S. Ct. 1239, 1242–43, 90 L. Ed. 1557 (1946) (criminal case involving completely independent and separate defendants who happened to all transact with one individual); *Dickson v. Microsoft Corp*., 309 F.3d 193, 203 (4th Cir. 2002) (in separate agreements between Defendants and Microsoft)*; nFinanSe, Inc. v. Interactive Commc'ns Int'l, Inc*., No. 1:11-CV-3728-AT, 2012 WL 13009231, at *8 (N.D. Ga. July 24, 2012) (spokes of the conspiracy were unaware of each other).

to agree" to the anticompetitive rules; the rules plus Defendants' "surrender[] . . . to the control of" NAR is sufficient. *Relevent Sports*, 61 F.4th at 309.

**D. Lutz Sufficiently Pleads His State Law Claims**

**1. Lutz's State Law Claims are Properly Pleaded**

Contrary to Defendants' argument (MTD at 20), Lutz is not required to recite the state-law elements of each of his claims. Instead, Lutz must "plead all facts establishing an entitlement to relief." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("[W]e no longer require the hyper-technical code pleadings of ages past."). Here, Lutz's complaint discusses in detail the facts that entitle Lutz to relief for each cause of action identified in the complaint. ¶¶ 33-131.

Defendants suggest that Lutz has not addressed key distinctions between the laws of different states (MTD at 20), but Defendants do not actually bother to identify any supposed distinctions.[9] Indeed, the *Batton I* court rejected this argument, explaining: "Defendants implicitly suggest that the complaint be evaluated under the standards of code pleading such that Plaintiffs should have plead[ed] the elements of a cause of action along with facts supporting each element. But the notice pleading system established by the Federal Rules of Civil Procedure does not require such level of detail." *Batton I*, 2024 WL 689989, at *6. Consistent with this ruling, this District also allows plaintiffs to plead claims of various states where the factual allegations in the complaint are sufficient to entitle plaintiffs to relief. *See Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1361 (S.D. Fla. 2021).

---

[9] To the extent that Defendants raised any specific arguments under a particular statute or the common law of a state, Lutz addresses those arguments below.

Defendants' argument that Lutz's complaint should be dismissed as a "shotgun pleading" (MTD at 19) fails for the same reason. A shotgun pleading is one that fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Defendants claim Lutz's complaint is a shotgun pleading because it groups the antitrust laws and consumer protection laws of various states into two cause of action headings. MTD at 19. As Defendants' own case explains, however, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324; *see also Inform Inc. v. Google LLC*, No. 21-13289, 2022 WL 3703958, at *4 (11th Cir. Aug. 26, 2022) (no shotgun pleading where complaint "did not prevent the district court or the . . . defendants from understanding the basis of [plaintiff's] core antitrust claims"). Lutz has spelled out the alleged anticompetitive conduct in detail and alleged how that conduct violated the identified laws. That is sufficient to put Defendants on notice of the claims against them.[10]

### 2. Lutz May Bring Antitrust Claims for Damages Under the Laws of Rhode Island, Maryland, New Hampshire, Utah, New York, Oregon, and Connecticut.

Defendants do not dispute that Lutz may bring antitrust claims for damages under the laws of Rhode Island, Maryland, New Hampshire, New York, Oregon, and Connecticut, only whether these states' *Illinois Brick* repealer statutes apply retroactively. MTD at 24-25. This argument fails for the same reason that Defendants' statute of limitations argument fails. As

---

[10] In any event, the Eleventh Circuit has made clear that a when faced with an improper shotgun pleading, district courts must give at least one opportunity to replead the allegations prior to dismissal. *See Vibe Micro*, 878 F.3d at 1296.

noted above, Lutz's claim accrued when he discovered his injury resulting from his home purchase. That happened no earlier than 2021. Defendants have identified no repealer statute enacted after that date and instead wrongly assume that Lutz's claim accrued before it ever ripened when NAR first promulgated its anticompetitive rules.

But even if Lutz's claims require retroactive application, the repealer statutes in these states permit them. In *In re Dynamic Random Access Memory Antitrust Litig. ("DRAM")*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007), defendants made a similar argument regarding Hawaii's repealer statute. *Id.* at 1109-1110. *DRAM* held that the statute's language indicating when a plaintiff "may bring an action" applied to when a complaint could be filed, not the period for which plaintiffs could recover. *Id.* The Utah and Maryland statutes have nearly identical language. *See* Utah Code Ann. § 76-10-3109 (1)(a) (West) ( "may bring an action"); Md. Code Ann. § 11-209(b)(2)(i) (2017) ("may maintain an action"). Under *DRAM*, Lutz's Utah and Maryland antitrust claims are viable with respect to conduct both before and after the enactment of the repealer statutes.

Similarly, *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017) ("*Packaged Seafood*"), rejected defendants' bid to dismiss plaintiffs' Oregon claim on the grounds that Oregon's repealer statute does not apply retroactively. *Id.* 1071–72. Applying the Oregon supreme court's decision *Strizver v. Wilsey*, 150 P.3d 10, 12 (Ore. 2006), *Packaged Seafood* held that the 2010 amendment to the repealer statute was remedial and applied retroactively. *Packaged Seafood*, 242 F. Supp. 3d. at 1072. *Packaged Seafood* distinguished *In re Niaspan Antitrust Litig. ("Niaspan"),* 42 F. Supp.3d 735 (E.D. Pa. 2014)*,* cited by Defendants here, MTD at 25, because the *Niaspan* plaintiffs presented no evidence supporting the retroactive application of Oregon's repealer. Here, where the Court has the benefit of *Packaged Seafood's*

14

evidence and analysis of the Oregon statute, the Court should reject *Niaspan* and apply the Oregon statute prospectively in accordance with *Packaged Seafood*.

Lutz's Connecticut claim for damages should also proceed. Defendants' argument against the Connecticut claim consists of a single case in a string cite (MTD at 25), in which the plaintiffs conceded their Connecticut claim should be limited to post-2018 conduct. *Miami Prod. & Chem. Co. v. Olin Corp.*, No. 1:19-CV-00385 EAW, 2022 WL 3701159, at *5 (W.D.N.Y. Aug. 26, 2022). Defendants ignore *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829 (N.D. Cal. 2021) ("*Xyrem*"), which rejected a similar argument under Connecticut law. There, the court distinguished defendants' single authority on the basis that the anticompetitive conduct before it ceased before the 2018 repealer statute. *Id.* at 885. In *Xyrem*, in contrast, the alleged unlawful conduct continued through 2023, permitting the claim to proceed. *Id.* Similarly here, Lutz alleges ongoing unlawful conduct that continued past the date of the repealer statute.

If this Court denies retroactive application and decides the issue now despite it being irrelevant to Lutz's claims, Lutz limits Maryland antitrust claims to damages incurred after May 27, 2017; Utah antitrust claims to damages incurred after May 1, 2006; Oregon claims to damages incurred after January 1, 2010; and Connecticut antitrust claims to damages incurred after January 1, 2018. He limits New Hampshire antitrust claims to damages incurred after January 1, 2008; Rhode Island claims to damages incurred after July 15, 2013; and New York claims to damages incurred after January 1, 1998 because those repealer statutes are not retroactive. Lutz withdraws his claims under the Florida and Missouri antitrust statutes.

### 3. Lutz May Bring His Utah Antitrust Claim.

In seeking to dismiss Plaintiff's Utah antitrust claim, Defendants misquote the Utah statute. The Utah Antitrust Act specifies that "[a] person who is a citizen of this state or a resident of this state" is permitted to bring a claim. Utah Antitrust Act, 76-10-3109.1. There is

no requirement that the named plaintiffs in class actions be citizens or residents. Plaintiff alleges that putative class members purchased homes and were injured across the nation. ¶¶ 13, 115, 132-33. Such "[a]llegations that members of the putative class presumably include Utah . . . citizens and residents are sufficient to overcome a motion to dismiss." *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 838 (E.D. Pa. 2019) ("*Generic Pharms*").

### 4. Lutz Pleads Intrastate Effects for his D.C., Nevada, New York, North Carolina, Tennessee, West Virginia, and Wisconsin Antitrust Claims and Missouri, New York, Carolina and New Hampshire Consumer Protection Claims.

Lutz's allegations of a nationwide price-fixing conspiracy satisfy the intrastate or effects requirements under state antitrust and consumer protection statutes. Lutz alleges that Defendants engaged in a nationwide conspiracy to raise, fix, and maintain buyer-agent compensation at artificially high levels, which caused homebuyers across the nation to pay too much for their homes. *See e.g.,* ¶¶ 13, 110. Lutz further alleges that "Defendants' conduct constitutes an unreasonable restraint of trade in or substantially affecting commerce in each of the Indirect Purchaser States." ¶ 153. Courts across the country have found that allegations of a nationwide conspiracy to fix prices such as those alleged here satisfy intrastate requirements at the motion to dismiss stage. *See In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2018 WL 4558265, at *2-3 (N.D. Cal., Sept. 20, 2018) (New York); *In re liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687, 2017 WL 3131977, at *24-25 n. 26 (D.N.J. Jul. 20, 2017) ("*Aluminum Sulfate*") (New York, North Carolina, and Nevada claims); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 698–99 (E.D. Pa. 2014) ("*Suboxone*") (D.C., Tennessee, West Virginia, North Carolina); *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 836 (E.D. Pa. 2019) ("*Generic Pharms*.") (Nevada, New York, North Carolina, Tennessee, West Virginia, Wisconsin). This makes sense because it is undeniably plausible that companies fixing prices nationwide engage in anticompetitive conduct within each state.

Defendants challenge Lutz's Missouri, New York, North Carolina, and New Hampshire consumer protection claim on the same grounds. MTD at 27. Their arguments against these claims fail for the same reasons set forth above. Additionally, their Missouri case, *State ex rel. Nixon v. Estes*, 108 S.W.3d 795 (Mo. Ct. App. 2003), does not support their argument. There, the court affirmed a grant of summary judgment finding that "it matters not that most of the victims of Estes' illegal merchandising practices were domiciled in states other than Missouri, that some of the events in the chain of fraudulent transactions he initiated took place in states other than Missouri, or that the incoming telephone number in the newspaper advertisements was toll-free." *Id.* at 801. What mattered is that the trade or commerce inflicting the injury occurred in the state of Missouri. Here, Lutz alleges that Defendants implemented their scheme nationwide, which plausibly (and necessarily) means that real estate transactions subject to their scheme took place in and/or with residents of Missouri.

5.   **Lutz's Arizona, Hawaii, Nevada, Rhode Island, and Utah Claims are Not Barred By State Notice Requirements.**

The Court should not dismiss Lutz's claims under the Arizona, Hawaii, Nevada, Rhode Island, and Utah statutes based on so-called notice requirements. State procedural requirements apply in federal court only if they are intertwined with state-created substantive rights. *Generic Pharms.*, 368 F. Supp. 3d at 834. (discussing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)). "[C]ourts are split on the impact these notice requirements have in federal court." *In re Zetia (Ezetimibe) Antitrust Litig.*, No. CV 2:18-MD-2836, 2019 WL 1397228, at *25 (E.D. Va. Feb. 6, 2019) ("*Zetia*"); *Generic Pharms.,* 368 F. Supp. 3d at 835 ("there is no consensus"). While Defendants note that some courts dismissed claims where a plaintiff fails to allege compliance with notice statutes, numerous others have rejected Defendants' argument. *Generic Pharms.,* 368 F. Supp. 3d at 835 (declining to dismiss Arizona,

17

Hawaii, Nevada, and Utah claims for failure to comply with notice requirements); *Rickman v. BMW of N. Am.*, No. CV 18-4363 (KM)(JBC), 2020 WL 3468250, at *16 (D.N.J. June 25, 2020) (citing cases); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F.Supp.3d 145, 156 (E.D.N.Y. 2018); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 817 (N.D. Ill. 2017). In any event, the Court need not decide at this stage whether notice requirements are substantive or procedural. *Rickman*, 2020 WL 3468250, at *16 ("issue . . . need not be faced until the certification stage.").

Regardless of whether the notice requirements are procedural or substantive under *Shady Grove*, dismissing these claims would be "inefficient and heavy-handed remedy for a relatively minor delay, as to which no one claims prejudice." *Zetia*, 2019 WL 1397228, at *25. Lutz provided notice of his complaint on April 30, 2024 and can amend the Complaint as necessary. And even if he had not, Defendants do not identify any prejudice and "[n]o Attorney General or other state official has objected to the notice provided or indicated any intent to intervene." *Zetia*, 2019 WL 1397228, at *25. Defendants should not be permitted to use the notice requirements "as a shield to avoid answering for alleged anti-competitive behavior." *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009).

**6.  *Illinois Brick* Does Not Bar Lutz's Missouri and New Jersey Consumer Protection Claims**

Lutz may bring a claim for anticompetitive conduct under the Missouri Merchandising Act ("MMA") and the New Jersey Consumer Fraud Act ("NJCFA"). *Illinois Brick* does not address consumer protection actions at all, let alone bar them. "Because states remain free to permit recovery by indirect purchasers," indirect purchasers "are not barred from pursuing such a recovery under the various state consumer protection laws so long as their allegations are enough to plead the relevant consumer protection violation." *Generic Pharms.*, 368 F. Supp. 3d at 840.

Accordingly, both Lutz's New Jersey and Missouri claims should not be dismissed on the basis of *Illinois Brick. Id.*

Moreover, in 2007 the Missouri Supreme court rejected the argument that the MMA requires a plaintiff to be in direct privity with the defendant. *Gibbons v. J. Nuckolls, Inc*., 216 S.W.3d 667, 669 (Mo. 2007) ("The statute's plain language does not contemplate a direct contractual relationship between plaintiff and defendant, and Missouri courts have not imposed such a requirement through statutory construction."). Since *Gibbons*, most federal courts applying Missouri law have concluded that *Illinois Brick* does not bar indirect purchaser claims under the MMA. *Packaged Seafood*, 242 F. Supp. 3d at 1079 (citing cases); *In re Cattle Antitrust Litig.*, No. CV 19-1129 (JRT/HB), 2021 WL 7757881, at *11 (D. Minn. Sept. 14, 2021). Defendants cite only *Suboxone*, 64 F. Supp. 3d 665, for support. MTD at 26. But this case "rests on speculative reasoning and goes against the majority view." *Zetia*, 2019 WL 1397228, at *28.

For Lutz's New Jersey claim, Defendants cite *Wilson v. Gen. Motors Corp.*, 190 N.J. 336 (2007). But *Wilson*, did not create a categorical rule that indirect purchasers may never bring suit under the NJCFA. The court explicitly left "for another day whether a CFA action would be precluded when the allegations of a violation of the Antitrust Act include communications with, or statements to, New Jersey consumers that are clear violations of the CFA." *Id.* at 341; *see also Generic Pharms.*, 368 F. Supp. 3d at 840–4.

Here, Lutz alleges that Defendants were encouraged to represent buyer broker services as free (¶¶ 9, 47, 82-3) and they were prohibited from disclosing the total commission amount at the time of entering into the purchase contract (¶¶ 9, 79), ), both of which were misrepresentations, omissions, and conduct that otherwise violates the NJCFA. Because Defendants implemented these practices in New Jersey (¶¶ 20, 36), Lutz's New Jersey claim should proceed.

### 7. **Lutz May Seek Restitution Under California's Unfair Competition Law**

Defendants suggests that California's Unfair Competition Law ("UCL") does not permit Lutz or putative class members any financial recovery and that this fact warrants dismissal of the claim. MTD at 26. But the UCL provides for equitable relief as well as restitution. *See Valdez v. Seidner-Miller, Inc.*, 245 Cal. Rptr. 3d 268, 280 (2019) ("The UCL provides for injunctive relief, restitution, and civil penalties."); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1302 (S.D. Fla. 2003) (same). Through his UCL claim, Lutz seeks "damages *and/or restitution* in an amount to be determined at trial." Am. Compl. at 50 (emphasis added). Because Lutz seeks relief expressly available under the UCL, there is no basis to dismiss his UCL claim.

### 8. **Lutz's Colorado, Kansas, and Oregon Consumer Protection Claims are Actionable.[11]**

**Colorado.** With regard to Lutz's Colorado consumer protection allegations, Lutz sufficiently alleges claims for relief. Colorado's "catch-all" provision prohibits conduct that includes "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." Colo. Rev. Stat. § 6-1-105(1)(rrr). This statute recognizes "unfair trade practices [] in the form of price-fixing" when plaintiffs "suffered injury as end use purchasers." *Aluminum Sulfate*, 2017 WL 3131977, at *26 (applying the Colorado statute). Lutz's rate-fixing allegations comfortably fit the statute. *See, e.g.*, ¶¶ 8-13.

*In re Vanguard Chester Funds Litig.*, No. CV 22-955, 2023 WL 8091999, at *1 (E.D. Pa. Nov. 20, 2023), is also instructive. There, plaintiffs satisfied the Colorado statute by alleging that Vanguard changed its mutual fund rules, resulting in some investors suffering surprise capital gains taxes. *Id*. According to the plaintiffs, Vanguard knew their decision would subject

---

[11] Lutz voluntarily dismisses his Tennessee consumer protection claim.

investors to unexpected taxes. *Id*. at 15. Based on these allegations, the Court upheld plaintiffs' Colorado consumer protection clam. Lutz here similarly alleges that Defendants created and enforced rules that they knew (indeed, intended) would cause homebuyers to pay more without them knowing. ¶¶ 47, 58. Specifically, Lutz alleges that Defendants "instituted a series of rules ensuring commission concealment from buyers," including prohibiting the disclosure to prospective buyers of the total commission before agreeing to purchase a property at a particular price and encouraging buyer-agents to misrepresent their services as free. ¶¶ 57, 79-81, 166. As a result, the buyer-agent commission is concealed from homebuyers, with homebuyers paying an inflated home price as a result of the inflated commission. ¶¶ 9, 110. As in *Vanguard*, homebuyers are subjected to a surprise "tax" on their homes as a result of Defendants' policies. This conduct violates the Colorado consumer protection statute.

**Kansas**. The Kansas Consumer Protection Act applies to anticompetitive conduct involving deception or fraud. *See, e.g.*, *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 300 F. Supp. 2d 1107, 1149–50 (D. Kan. 2003); *Griffin v. Sec. Pac. Auto. Fin. Servs. Corp.,* 33 F. Supp. 2d 926, 930 (D. Kan. 1998) (KCPA claim properly pleaded where "defendant willfully misrepresented or omitted material facts"). Here, Lutz alleges the required misrepresentations, namely that brokers were encouraged to represent their services as free and that they were prohibited from disclosing the total commission to the buyer. ¶¶ 57, 79, 131. The omission of the total broker fee was, as with all the rules at issue, designed to and did inflate commissions and home prices at the expense of Kansas homebuyers. ¶¶ 13. Allegations like these of material

omissions with intent to harm a consumer may satisfy the KCPA. *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1248 (N.D. Ga. 2021).[12]

**Oregon.** It is unlawful under the Oregon Unfair Trade Practices Act ("OUTPA") to make "false or misleading representations of fact concerning the offering price of . . . real estate, goods, or services." Or. Rev. Stat. § 646.608; *see also* Or. Rev. Stat. § 646.607. The OUTPA is to be construed liberally to protect consumers. *State ex rel. Rosenblum v. Johnson & Johnson*, 362 P.3d 1197, 1202–03 (2015). Lutz alleges that Defendants were encouraged to make misleading statements that buyer-broker services were free and not to disclose total commissions at the time of negotiation, such that homebuyers were ignorant as to the true terms of their home purchases. ¶¶ 9, 57, 79. Because Lutz has alleged misrepresentations about and concealment of Defendants' conduct and conspiracy, his OUTPA claim should be upheld. *Packaged Seafood*, 242 F. Supp. 3d at 1084 ("given that OUTPA is to be liberally construed to protect consumers, and that Plaintiffs here  . . . plausibly allege affirmative misrepresentations regarding and concealment of the alleged conspiracy . . . the Court concludes that Plaintiffs have stated a valid claim under OUTPA").[13]

---

[12] Defendants cite *Batton I* (MTD at 26), which dismissed the plaintiffs' KCPA claim. In that case, unlike here, the court did not consider Defendants' *omission*s as a form of deception. Lutz respectfully requests that this Court examine the additional allegations and uphold Lutz**'s** claim.

[13] *Packaged Seafood* distinguished *DRAM*, 516 F.Supp.2d 1072, on the grounds that the plaintiffs there failed to allege false and misleading representations. As Lutz has alleged false and misleading representations, *DRAM*, cited by Defendants (MTD at 26), is distinguishable here for the same reasons.

9. **Lutz Pleads Deceptive Conduct for his Arizona, Kansas, Michigan, New York, Rhode Island, Pennsylvania, and Virginia Consumer Protection Claims.**

Defendants overstate the deception element that is relevant to the consumer protection laws of Arizona, Kansas, Michigan, New York, Rhode Island, Pennsylvania, and Virginia. These states do not require a heightened showing of fraud, but merely conduct that would be misleading to a reasonable consumer. *See Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 521 (E.D. Mich. 2023) (Michigan Consumer Protection Act asks "whether the consumer could reasonably be expected to discover the omission at issue"), *aff'd*, No. 23-1940, 2024 WL 3964115 (6th Cir. Aug. 28, 2024); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 580 (S.D.N.Y. 2021) (New York GBL § 349 asks if conduct is "likely to mislead a reasonable consumer"); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 826–27 (D. Ariz. 2016) (Arizona Consumer Fraud Act asks if statement "it has the tendency and capacity to convey misleading impressions to consumers"); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (Pennsylvania consumer protection law measures deception against a "consumer acting reasonably"); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d at 1149–50 (plaintiffs alleged a willful misrepresentation); *Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014) (deception under Rhode Island consumer protection law uses reasonable consumer standard); *Generic Pharms.*, 368 F. Supp. 3d at 846 (allegations of antitrust violation maintained through deception states a Virginia consumer protection act claim).

Lutz has alleged deception and misrepresentation because Defendants agreed to and enforced NAR rules encouraging brokers to misrepresent their services as free and prohibiting brokers from disclosing the total commission paid to the buyer broker when identifying and negotiating to buy a home. ¶¶ 57, 79, 131. It is reasonable to infer that Defendants followed NAR's directive and did represent buyer broker services as free. *Kelley & Grant, P.A. v.*

23

*JPMorgan Chase Bank, N.A.*, No. 23-CV-80749, 2023 WL 11899127, at *1 (S.D. Fla. Oct. 10, 2023) (courts must "draw all reasonable inferences from the allegations in Plaintiff's favor."). Defendants' citation to the *Batton I* is misplaced. First, *Batton I* addressed only Kansas claims. Second, *Batton I* did not consider the allegation that NAR rules prohibit the disclosure of the total commission, nor did it draw the reasonable inference Lutz should be granted on a motion to dismiss that brokers were encouraged to misrepresent their services as free and did in fact do so. Lutz explains that misleading homebuyers about the cost of their brokers is a key piece of the inflated fees at issue here. ¶¶ 82-84. This rule mandates that buyer-agents withhold material information from homebuyers in a manner likely to deceive them about the cost of their services. NAR's rules prohibiting disclosure of buyer-agent commissions to homebuyers are sufficiently deceptive to state a claim under the laws of the states discussed above. ¶ 79.

### E. Lutz Adequately Pleads His Unjust Enrichment Claim

Contrary to Defendants' assertions (MTD at 29), Lutz plainly pleads unjust enrichment claims under the laws of the states listed in the complaint. ¶ 133. Lutz need not plead these unjust enrichment claims on a state-by-state basis because the elements of an unjust enrichment claim are "materially the same throughout the United States." *In re Interior Molded Doors Antitrust Litig.*, No. 3:18-CV-00718-JAG, 2019 WL 4478734, at *22 (E.D. Va. Sept. 18, 2019); *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 (S.D. Fla. 2004) ("*Terazosin*"). [14]

---

[14] Defendants' authority is irrelevant and inapposite because plaintiffs in those cases did not specify the states for which they claimed unjust enrichment. *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1379 (S.D. Fla. 2001); *In re Wellbutrin XL Antitrust*

Generally, unjust enrichment requires a plaintiff to plead that the defendant has been unjustly enriched at the expense of the plaintiff. *Terazosin*, 220 F.R.D. at 697. Here, Lutz pleads that Defendants received a benefit (inflated commissions and funds (¶¶ 13, 165, 166) at Lutz's expense (artificially inflated prices for buyer broker services and homes and decreased quality of services (¶¶ 13, 110)) under circumstances in which it would be unjust for Defendants to retain the benefit because the gains result from their anticompetitive conduct ( ¶¶ 167-68)). Accordingly, Lutz adequately pleads the elements of unjust enrichment.

Likewise, Lutz pleads a Florida unjust enrichment claim. A party pursuing an unjust enrichment claim under Florida law must allege that: (1) the plaintiff conferred a "direct benefit" on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit, and (4) it would be "inequitable under the circumstances for the defendant to retain the benefit without paying fair value for it." *Hamilton v. Suntrust Mortg. Inc*., 6 F. Supp. 3d 1312, 1316 (S.D. Fla. 2014). Defendants argue that Lutz cannot satisfy Florida's "direct benefit" requirement because Lutz did not deal directly with the Defendants. But "whether [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1213, 1229 (S.D. Fla. 2009).

Additionally, Defendants' argument that Lutz's unjust enrichment claim fails because he purchased his home using a HomeServices franchise broker (MTD at 28-29) "erroneously equates direct contact with direct benefit." *Romano v. Motorola, Inc*., No. 07-CIV-60517, 2007

_____

*Litig*., 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("plaintiffs fail to link their claim to the law of any particular state."). In any event, as explained above, there is no requirement that plaintiffs do so.

WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). Defendants appear to argue that because there
may be intermediaries between its profits Lutz**'s** funds, any benefit Lutz conferred on Defendants
was indirect. MTD at 28. But a "plaintiff may confer a direct benefit through indirect contact
with a defendant through an intermediary." *In re Takata Airbag Prod. Liab. Litig.,* 462 F. Supp.
3d 1304, 1328 (S.D. Fla. 2020) ("*Takata*"); *State Farm Mut. Auto. Ins. Co. v. Performance
Orthapaedics & Neurosurgery*, LLC, 315 F. Supp. 3d 1291, 1311 (S.D. Fla. 2018) (same). In
fact, "there is significant case law holding that a defendant is not required to individually receive
payments in order for a cause of action for unjust enrichment to exist." *State Farm Mut. Auto.
Ins. Co. v. B & A Diagnostic, Inc.*, 104 F. Supp. 3d 1366, 1375-76 (S.D. Fla. 2015). What
matters is that Lutz paid too much in commissions for his home and that HomeServices directly
benefited from these funds. ¶¶ 13, 165, 166-68. And as for Defendant Douglass Elliman, it is
axiomatic that a defendant is jointly and severally liable for the conduct of his co-conspirators.
*Gov't Emps. Ins. Co. v. Gomez-Cortes*, No. 20-21558-CIV, 2022 WL 820377, at *3 (S.D. Fla.
Jan. 20, 2022).

   *Peterson v. Aaron's, Inc*., No. 1:14-CV-1919-TWT, 2015 WL 5479877, at *1 (N.D. Ga.
Sept. 16, 2015) is distinguishable.[15] First, it is a Georgia case discussing a Georgia claim. More

---

[15] Defendants cite to additional distinguishable cases in conclusory string citations. These cases
do not address this District's clear ruling that direct contact is not required to sustain an unjust
enrichment claim under Florida law. *Takata*, 462 F. Supp. 3d at 1328 ("aside from the isolated
reference in *Kopel* to one element of an unjust enrichment claim, Defendants do not cite any
authority ruling that a direct benefit can only be conferred through direct contact"). For example,
in the out-of-district case *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, No.

importantly, the plaintiffs' unjust enrichment claim in *Peterson* was defeated because of basic contract law. Plaintiffs there had a contract with the franchisee, but brought their unjust enrichment claim against the franchisor. *Id.* Plaintiffs alleged that they unjustly paid fees to the franchisee who then remitted a portion of those fees to the franchisor pursuant to the franchisor-franchisee contract. *Id.* As there can be no unjust enrichment claim where an express contract governs, the court rightfully held it made "no sense to hold the franchisor liable" on a different express contract. *See also Sensipar*, 2022 WL 736250, at *23 ("a party to a contract cannot assert an unjust enrichment claim against another party to a different contract"). No such allegations

---

2895, 2022 WL 736250, at *23 (D. Del. Mar. 11, 2022) ("*Sensipar*"), the court held that indirect purchaser plaintiffs did not confer a direct benefit on the defendant drug company, but did not offer any analysis or address the difference between direct contact and direct benefit. In *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017), plaintiffs made payments to a company acting as an insurance broker, which in turn made payments to an underwriting company. The path from plaintiffs to the underwriting company was therefore much less direct than here, where HomeServices "provides financing to its franchisees, provides them with marketing materials and support, conducts on-site and group visits with franchisees, provides training materials and mandatory curriculum" (¶ 23) and further requires all of its agents to follow the NAR rules that Defendants wielded to damage Lutz.

have been made here, nor has there been enough fact discovery to determine what, if any contracts govern.[16] Plaintiff's unjust enrichment claim should proceed.

## II.  Lutz Adequately Pleads Standing for Injunctive Relief

### A.  Lutz Has Antitrust Standing for His Federal Claim

Plaintiffs have antitrust standing under federal statutes if they "alleged an antitrust injury" and are "an efficient enforcer of the antitrust laws." *Palmyra*, 604 F.3d at 1299. Defendants concede that Lutz has alleged antitrust injury. Where a plaintiff has suffered antitrust injury and seeks only injunctive relief, "courts are less concerned about whether the plaintiff is an efficient enforcer of the antitrust laws." *Id.* For equitable claims, courts examine the following efficient-enforcer factors: "[1] the directness or indirectness of the injury, [2] the remoteness of the injury, [3] whether other potential plaintiffs were better suited to vindicate the harm, . . . and [4] whether the plaintiff would be able to efficiently and effectively enforce the judgment." *Id.* Lutz satisfies all of these factors under Eleventh Circuit precedent.

In *Palmyra*, the Eleventh Circuit reversed the district court to hold that the plaintiff was an efficient enforcer of federal antitrust law in circumstances more indirect than those here. *Id.* at 1296. There, one hospital sued a competitor that structured its contracts with insurers to exclude the plaintiff from the insurer's provider network. *Id.* at 1296. The Eleventh Circuit recognized that the first two factors of "directness or remoteness of the injury are intertwined," and held that the plaintiff satisfied them even though "several steps must occur before Palmyra suffers injury,"

---

[16] As Lutz has adequately pleaded unjust enrichment under Florida law, Defendants' cases holding that a plaintiff cannot represent class members if he himself does not have a cognizable claim have no bearing. *See* MTD at 27-29.

including that "insurance companies must first agree" to the defendant's exclusionary contracts, and patients then "must choose to receive care at Phoebe Putney instead of Palmyra." *Id.* at 1304. The Eleventh Circuit reasoned that though the plaintiff's injury "occurs several steps down the causal chain," it was an efficient enforcer because the defendant "starts the ball rolling" and the plaintiff's "injury all but inevitably follows" due to the "rational" economic behavior of patients preferring cheaper in-network treatment. *Id.*

Here, the injury is even more direct. Homebuyers automatically suffer injury as a result of Defendants' scheme. The only degree of indirectness identified by Defendants is technical: "buyer-agents governed by NAR are technically paid through the seller-broker" out of the purchase price of the home." MTD at 7 (internal quotation marks omitted). That technical degree of removal pales in comparison to *Palmyra*, where the injury required separate actions by both insurers and patients before the plaintiff suffered injury. And much like in *Palmyra*, where "rational" economic behavior explained the decision of patients to prefer in-patient treatment and thus cause damage to the plaintiff hospital, here "rational" economic behavior dictates that homesellers bake the increased input cost of agent services into the sales prices paid by homebuyers like Lutz. *Cf. Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 561 n.18 (1990) (discussing pass-through as a potential explanation for price disparities).

The remaining factors also support Lutz. Defendants concede that Lutz is able to efficiently and effectively enforce the judgment, so the only remaining factor is whether other plaintiffs are better suited to vindicate the harm suffered by homebuyers. Homesellers have also challenged some of the unlawful practices, but that does not render them better suited to vindicate all of the homebuyers' harms. Homesellers' interests and harms are distinct from homebuyers'. The proposed settlements in the homeseller actions illustrate this. The

HomeServices Defendants' settlement does not unambiguously forbid any prohibition on modifying broker commissions as part of the home price negotiation. It also fails to address the lockbox policy that prevents viewers from viewing houses unless they conform with the allegedly unlawful restraints. *See* Settlement Agreement of HomeServices Defendants, *Burnett v. NAR*, No. 4:19-cv-00332-SRB (W.D. Mo. Aug. 7, 2024), ECF No. 1518-1 at 22-25.

These policies facilitate the harm that buyers suffer, and the settlements themselves do nothing to address some of the key problems faced by homebuyers. If a plaintiff cannot frankly negotiate the buyer-broker compensation schema as part of the total home sale, then the settlement will not prevent homebuyers from paying home prices that are inflated as a result of obfuscation around how much of the total commission paid to the seller-broker pays the buyer-broker. Without frank negotiation around this critical issue at the point of sale, homebuyers will remain unable to protect themselves from inflated prices.

In light of the seller settlements, Defendants' reliance on *Batton I* is misplaced. There, the district court assumed that homesellers would adequately represent homebuyers' interests based on an expectation that a home-seller injunction would cause "additional rules that Plaintiffs seek to enjoin" to "fall as well." *Id.* at 32. But the settlements do not fully unlock the prohibition against commission negotiations as part of broader home sale negotiations.

### B. Lutz Has Article III Standing for His Equitable Federal Claim

Article III requires a plaintiff bringing an equitable claim to demonstrate a "material risk of future harm." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023). Lutz purchased his home in 2021. ¶ 21. Defendant's own website advises that a person buying a home "should plan on staying there for approximately five years." Berkshire Hathaway Home Services, "The Five-Year Equity Rule", https://www.bhhs.com/about/newsroom/talking-real-

estate/2021/may/the-five-year-equity-rule (last visited September 11, 2024). By Defendant's own estimate, Lutz can expect to move into a new house in fewer than two years and will enter the housing market before then. As explained above, the settlements in the homesellers' lawsuits will not adequately protect Lutz from artificially inflated agent commissions and home prices.

Defendants' promises to abandon aspects of their unlawful scheme do not strip Lutz of standing. In *LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941 (11th Cir. 2022), the Eleventh Circuit explained that even though the plaintiff's city-issued "citation was dismissed" by the defendant town, he still had standing because there remained "a credible threat of enforcement" of the challenged practice in the future. *Id.* at 947. The same is true here, where Defendants' settlement agreement still lacks court approval, are subject to appeal, and where the settlement does not fully address or prevent Lutz's future pass-through injuries.

Defendants' cited authority does not support their argument. In *Duty Free Americas, Inc. v. Estée Lauder Companies, Inc.*, 797 F.3d 1248 (11th Cir. 2015), the plaintiff lacked standing because it did not actually purchase or plan to purchase the defendant's products. The court rightly denied the plaintiff's attempt to piggyback off of the "harm [to the plaintiff's] competitors" because those restrictions and harm "benefit DFA." *Id.* The court also discounted the plaintiff's comment at oral argument that it may be injured "if it resumes purchasing from Estée Lauder" because that posturing argument would likely "never occur." *Id.* The same was true in *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023), where the plaintiffs disingenuously claimed that they would purchase the defendant's allegedly bogus brain supplements if the defendant "develops products that truly improve brain performance"— something highly unlikely to happen. *Id.* at 1255 (cleaned up). Here, Lutz is likely to enter the market based on HomeServices Defendants' own estimation, and he cannot escape harm in that

market because the conspiracy encompasses the majority of broker services in homebuying market.

### III.   Leave to Amend is Warranted if the Motion is Granted

The Eleventh Circuit has made clear that in the event a complaint is dismissed, plaintiffs "may still move the court for leave to amend, and such amendments should be granted liberally." *Steel Media Grp., LLC v. Lewis*, No. 1:22-CV-21780-JLK, 2023 WL 8476577, at *2 (S.D. Fla. Aug. 10, 2023) (quoting *Czeremcha v. Ass'n of Mack & Aero. Workers*, 724 F.2d 1552, 1556 (11th Cir. 1984)). "The Eleventh Circuit has also held that an order of dismissal is not final and appealable until a pending motion for leave to amend is ruled upon." *Id.* (citing *Briehler v. City of Miami*, 926 F. 2d 1001 (11th Cir. 1991)). This is the first motion to dismiss in this action, and Lutz requests that, if the Court grants any portion of Defendants' motion, that Lutz be granted the opportunity to move for leave to amend in a manner consistent with the Court's decision. Numerous arguments raised by Defendants, such as the claim to require class representatives from certain states at the motion to dismiss stage, needing to plead specific state-law elements, and requirements to plead deception, among others, could, if accepted by this Court, be easily remedied through an amended complaint. Lutz also notes that certain of Defendants' arguments, if adopted by the Court, would require at least one opportunity to amend the complaint. *See, e.g.*, *Vibe Micro*, 878 F.3d at 1296 (when dismissing on shotgun pleading grounds, courts must give at least one opportunity to replead).

### CONCLUSION

For the foregoing reasons, Lutz respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

Dated: October 4, 2024

*/s/* **Randall P. Ewing**
George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Vincent Briganti (*pro hac vice*)
(Bar No. 2785376)
Christian Levis (*pro hac vice*)
Noelle Forde (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nforde@lowey.com

Michael E. Klenov (Ill. Bar No. 6300228)
Carol O'Keefe (Ill. Bar No. 6335218)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: 314-241-4844
mklenov@koreintillery.com
cokeefe@koreintillery.com

*Attorneys for Plaintiff and the Proposed Class*

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2024, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.

Dated: October 4, 2024                    <u>**/s/ Randall P. Ewing**</u>
                                          Randall P. Ewing