**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-10040-MOORE/ELFENBEIN

**JAMES LUTZ**,

                 Plaintiff,

     v.

**HOMESERVICES OF AMERICA, INC.**, *et al.*,

                 Defendants.

<u>**DEFENDANTS HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES LLC, AND DOUGLAS ELLIMAN INC.'S JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT, INCORPORATED MEMORANDUM OF LAW, AND REQUEST FOR HEARING**</u>

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 4

III.  LEGAL STANDARD .......................................................................................... 5

IV.  ARGUMENT ...................................................................................................... 5

    A.  Plaintiffs' Sherman Act Claim for Injunctive Relief Fails .................................. 5

        1.  This Claim Fails for Lack of Antitrust Standing ........................................ 6

        2.  Plaintiffs Lack Article III Standing to Pursue This Claim.......................... 9

    B.  The Vast Majority of State-Law Claims Plaintiffs Assert Are Time-Barred ....... 11

    C.  Plaintiffs' State Antitrust and Consumer-Protection Claims Fail........................ 18

        1.  These Claims Fail Because They Constitute A Shotgun Pleading ........... 18

        2.  Plaintiffs Do Not Actually Plead Their State-Law Claims...................... 18

        3.  Plaintiffs Fail to Plausibly Allege Any Unlawful Agreement ................. 19

        4.  Plaintiffs Lack Standing to Bring Claims Under the Laws of Colorado, Hawaii, Montana, Nebraska, New Jersey, North Dakota, Pennsylvania, Rhode Island, and Vermont ............................................... 21

        5.  Certain State-Law Antitrust Claims Fail for Additional Reasons ........... 22

        6.  Certain Consumer-Protection Claims Must Also Be Dismissed ............. 24

    D.  Plaintiffs' Unjust Enrichment Claim Fails........................................................ 25

V.  CONCLUSION.................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### Cases

*AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*,
    2008 WL 4907976 (D. Haw. Nov. 12, 2008) .......................................................................28

*Abbott Lab'ys, Inc. (Ross Lab'ys Div.) v. Segura*,
    907 S.W.2d 503 (Tex. 1995) ..............................................................................................23

*In re Aftermarket Filters Antitrust Litig.*,
    2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ......................................................................25

*In re Aftermarket Filters Antitrust Litig.*,
    2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) .......................................................................26

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015) ..............................................................................3, 19

*Allapattah Servs., Inc. v. Exxon Corp.*,
    188 F.R.D. 667 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th Cir. 2003) ..............................14

*In re Aluminum Warehousing Antitrust Litig.*,
    2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ....................................................................8

*Alvarez v. Lakeland Area Mass Transit Dist.*,
    2019 WL 2868943 (M.D. Fla. July 3, 2019) .....................................................................18

*Andreasen v. Progressive Express Ins. Co.*,
    2017 WL 5635403 (S.D. Fla. Aug. 25, 2017) ...................................................................14

*Apple Inc. v. Pepper*,
    587 U.S. 273 (2019) ...........................................................................................................22

*Appleby v. Knauf Gips KG*,
    2023 WL 2401800 (S.D. Fla. Mar. 8, 2023) ....................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ...................................................................................................2, 7, 8

*Barron v. Snyder's-Lance, Inc.*,
    2015 WL 11182066 (S.D. Fla. Mar. 20, 2015) .................................................................16

*Batton v. Compass, Inc. et al.*,
    Case No. 23-cv-15618 .........................................................................................................8

## TABLE OF AUTHORITIES
### (*Continued*)

<u>Page(s)</u>

*Batton v. Nat'l Ass'n of Realtors*,
    2024 WL 689989 (N.D. Ill. Feb. 20, 2024) ...................................................1, 6, 8, 9, 24, 25

*Belanger v. Apple, Inc.*,
    2020 WL 9047165 (S.D. Fla. Apr. 14, 2020) .........................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................5, 19

*Bickerstaff Clay Prods. Co. v. Harris Cnty.*,
    89 F.3d 1481 (11th Cir. 1996) .............................................................................................18

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    818 N.E.2d 1140 (N.Y. 2004) ..............................................................................................25

*Brooks v. Blue Cross and Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ...........................................................................................14

*Burnett v. Nat'l Ass'n of Realtors*,
    No. 4:19-cv-00332-SRB (W.D. Mo.), Dkt. 759 .....................................................................7

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
    2015 WL 5166014 (E.D. Tenn. 2015) .................................................................................23

*Coleman v. Burger King Corp.*,
    2023 WL 5507730 (S.D. Fla. Aug. 25, 2023)........................................................................22

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*,
    846 F.2d 284 (5th Cir. 1988) ...............................................................................................19

*Cornelison v. Denison State Bank*,
    315 P.3d 278 (Kan. Ct. App. 2014) .....................................................................................25

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020) ...............................................................................................21

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) .........................................................................8

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ...............................................................................................20

*Dunn v. Rockwell*,
    225 W. Va. 43, 689 S.E.2d 255 (2009)................................................................................30

*Duty Free Ams., Inc. v. Estee Lauder Cos.*,
    797 F.3d 1248 (11th Cir. 2015) .............................................................................2, 6, 9, 10, 11

*Duvall v. Silvers, Asher, Sher & McLaren, M.D.*
    *'s, Neurology, P.C.*, 998 S.W.2d 821 (Mo. Ct. App. 1999) ...................................................23

## TABLE OF AUTHORITIES
### (*Continued*)

**Page(s)**

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................................24

*Eddie v. Bank of Am., N.A.*,
 2018 WL 573406 (M.D. Fla. Jan 26, 2018)...............................................13

*In re Flonase Antitrust Litig.*,
 692 F. Supp. 2d 524 (E.D. Pa. 2010) ........................................................26

*Garrison v. Oracle Corp.*,
 159 F. Supp. 3d 1044 (N.D. Cal. 2016) .....................................................15

*Garvey v. Sec'y, U.S. Dep't of Lab.*,
 2023 WL 3057474 (M.D. Fla. Apr. 24, 2023)............................................18

*GEICO Corp. v. Autoliv, Inc.*,
 345 F. Supp. 3d 799 (E.D. Mich. 2018) ....................................................23

*In re Gen. Motors LLC Ignition Switch Litig.*,
 257 F. Supp. 3d 372 (S.D.N.Y. 2017) .......................................................28

*Gibson v. Nat'l Ass'n of Realtors*,
 No. 4:23-cv-788-SRB (W.D. Mo.), Dkt. 232 ..............................................7

*Griffin v. Dugger*,
 823 F.2d 1476 (11th Cir. 1987) .................................................................21

*Gutierrez v. Wells Fargo Bank, NA*,
 889 F.3d 1230 (11th Cir. 2018) ...................................................................4

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
 2021 WL 4306018 (N.D. Cal. Sept. 22, 2021) ...........................................23

*Hill v. Texaco, Inc.*,
 825 F.2d 333 (11th Cir. 1987) ...................................................................17

*Holliday v. Lloyd's, Underwriters At, London*,
 2017 WL 6624160 (M.D. Fla. Dec. 28, 2017)............................................12

*Illinois Brick Co. v. Illinois*,
 431 U.S. 720 (1977)...........................................................................3, 7, 22

*In re Ins. Brokerage Antitrust Litig.*,
 618 F.3d 300 (3d Cir. 2010)......................................................................20

*Johnson v. Catamaran Health Sols., LLC*,
 687 F. App'x 825 (11th Cir. 2017) ............................................................27

*Katteakos v. Unites States*,
 328 U.S. 750 (1946).................................................................................20

**TABLE OF AUTHORITIES**
(*Continued*)

Page(s)

*Keilholtz v. Lennox Hearth Prods. Inc.*,
  2009 WL 2905960 (N.D. Cal. Sept. 8, 2009) ............................................................. 13

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ...................................................................................... 19

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  383 F. Supp. 3d 187 (S.D.N.Y. 2019).......................................................................... 7, 8

*Kopel v. Kopel*,
  229 So. 3d 812 (Fla. 2017)............................................................................................ 26

*Korea Supply Co. v. Lockheed Martin Corp.*,
  63 P.3d 937 (Cal. 2003) ................................................................................................ 24

*Koski v. Carrier Corp.*,
  347 F. Supp. 3d 1185 (S.D. Fla. 2017) ........................................................................ 15

*Kuehn v. Stanley*,
  91 P.3d 346 (Ariz. App. Div. 2004) .............................................................................. 25

*State ex rel. Leech v. Levi Strauss & Co.*,
  1980 WL 4696 (Tenn. Ch. Sept. 25, 1980).................................................................. 29

*Leeder v. Nat'l Ass'n of Realtors*,
  601 F. Supp. 3d 301 (N.D. Ill. 2022) .................................................................. 1, 6, 8, 9

*Leeder v. Nat'l Ass'n of Realtors et al.*,
  Case No. 21-cv-00430 ..................................................................................................... 8

*Lewis v. Mercedes-Benz USA, LLC*,
  530 F. Supp. 3d 1183 (S.D. Fla. 2021) ........................................................................ 21

*In re Lipitor Antitrust Litig.*,
  336 F. Supp. 3d 395 (D.N.J. 2018) ............................................................................... 24

*In re Loestrin 24 FE Antitrust Litig.*,
  410 F. Supp. 3d 352 (D.R.I. 2019)................................................................................ 28

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).......................................................................................................... 9

*Mack v. Bristol-Myers Squibb*,
  673 So.2d 100 (Fla. Dist. Ct. App. 1996) .................................................................... 23

*Mayhall v. A.H. Pond Co.*,
  341 N.W.2d 268 (Mich. App. 1983) ............................................................................. 25

*Merced Irrigation Dist. v. Barclays Bank PLC*,
  165 F. Supp. 3d 122 (S.D.N.Y. 2016) .......................................................................... 26

## TABLE OF AUTHORITIES
### (*Continued*)

**Page(s)**

*Miami Prod. & Chem. Co. v. Olin Corp.*,
2022 WL 3701159 (W.D.N.Y. Aug. 26, 2022) ....................................................23

*Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.*,
92 F. Supp. 3d 982 (D. Haw. 2015), *aff'd sub nom. Moddha Interactive, Inc.
v. Philips Elecs. N. Am. Corp.*, 654 F. App'x 484 (Fed. Cir. 2016) .......................15

*Moehrl v. Nat'l Ass'n of Realtors*,
No. 1:19-cv-01610-ARW (N.D. Ill.), Dkt. 84 ........................................................7

*Molock v. Whole Foods Market Grp.*,
952 F.3d 293 (D.C. Cir. 2020) ..............................................................................21

*Moser v. Benefytt, Inc.*,
8 F.4th 872 (9th Cir. 2021) ...................................................................................21

*nFinanSe, Inc. v. Interactive Commc'ns Int'l, Inc.*,
2012 WL 13009231 (N.D. Ga. July 24, 2012)......................................................20

*In re Niaspan Antitrust Litig.*,
42 F. Supp. 3d 735 (E.D. Pa. 2014) ................................................................23, 28

*Padilla v. Porsche Cars N. Am., Inc.*,
391 F. Supp. 3d 1108 (S.D. Fla. 2019) ............................................................12, 14

*Papasan v. Allain*,
478 U.S. 265 (1986)................................................................................................5

*Patel v. Diplomat 1419VA Hotels, LLC*,
605 F. App'x 965 (11th Cir. 2015) .......................................................................13

*Pedraza v. United Guar. Corp.*,
114 F. Supp. 2d 1347 (S.D. Ga. 2000)..................................................................12

*Peterson v. Aaron's, Inc.*,
2015 WL 5479877 (N.D. Ga. Sept. 16, 2015) ......................................................27

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
2012 WL 39766 (N.D. Ill. Jan. 9, 2012) .................................................................8

*In re Pork Antitrust Litig.*,
495 F. Supp. 3d 753 (D. Minn. 2020) ...................................................................25

*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000) .............................................................................21

*Premier Concrete LLC v. Argos N. Am. Corp.*,
2021 WL 1209354 (N.D. Ga. Mar. 31, 2021)........................................................14

*In re Restasis Antitrust Litig.*,
355 F. Supp. 3d 145 (E.D.N.Y. 2018) ..............................................................24, 25

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Ross v. Mickle*,
    194 F. App'x 742 (11th Cir. 2006) ................................................................12

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
    2022 WL 736250 (D. Del. Mar. 11, 2022) ....................................................27

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis*,
    *plc*, 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ......................................24

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    2015 WL 5458570 (D. Mass. Sept. 16, 2015)................................................26

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
    2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ...........................................14, 16

*In re Suboxone Antitrust Litig.*,
    64 F. Supp. 3d 665 (E.D. Pa. 2014) ..........................................................24, 28

*Sunbeam Tel. Corp. v. Nielsen Media Rsch., Inc.*,
    711 F.3d 1264 (11th Cir. 2013) ......................................................................6

*In re Takata Airbag Prod. Liab. Litig.*,
    2016 WL 1266609 (S.D. Fla. Mar. 11, 2016).................................................21

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) .............................................21, 23, 26, 28

*In re Terazosin Hydrochloride Antitrust Litig.*,
    2002 WL 35651679 (S.D. Fla. Sept. 12, 2002) .............................................23

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004)....................................................................23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008)..........................................................26

*Tomlinson v. Goldman, Sachs & Co.*,
    682 F. Supp. 2d 845 (N.D. Ill. 2009), *aff'd sub nom. Premium Plus Partners,*
    *L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533 (7th Cir. 2011) ................................17

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) .......................................................................5

*United Food & Commercial Workers Local 1776 & Participating Emp'rs Health*
    *& Welfare Fund v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) .........................................................28

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) .................................................................12, 13

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ...................................................................3, 18

**TABLE OF AUTHORITIES**
(*Continued*)

**Page(s)**

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)...............................................................26

*Williams v. Reckitt Benckiser LLC*,
    65 F.4th 1243 (11th Cir. 2023) ..........................................................10, 11

*Wilson v. Gen. Motors Corp.*,
    921 A.2d 414 (N.J. 2007) .......................................................................24

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001) .............................................................10

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    2022 WL 16729170 (11th Cir. Nov. 7, 2022)........................................21

**Statutes**

740 ILCS 10/7(2) ..........................................................................................29

740 ILCS 10/7(4) ..........................................................................................29

14 M.R.S.A. § 752 .........................................................................................29

42 Pa. Cons. Stat. Ann. § 5525(a)(4) ...........................................................30

42 Pa. Cons. Stat. § 5527 ..............................................................................30


Ariz. Rev. Stat. Ann. § 12-550.....................................................................30

Ariz. Rev. Stat. § 12-541 ..............................................................................29

Ariz. Rev. Stat. § 44-1410 ............................................................................29

Cal. Bus. & Prof. Code § 16750.1 ................................................................29

Cal. Bus. & Prof. Code § 17208 ...................................................................29

Cal. Civ. Proc. Code § 338(d) .......................................................................30

Colo. Rev. Stat. § 6-1-115 ............................................................................29

Colo. Rev. Stat. § 13-80-101(1)(a) ...............................................................30

Conn. Gen. Stat. 42-110g(f)..........................................................................29

Conn. Gen. Stat. § 35-40 ...............................................................................29

Conn. Gen. Stat. § 52–576(a).........................................................................30

D.C. Code § 12-301 .......................................................................................29

**TABLE OF AUTHORITIES**
*(Continued)*

**Page(s)**

D.C. Code § 12-301(7).................................................................30

D.C. Code § 28-4511(b)..............................................................29

Fla. Stat. 542.26(1)......................................................................29

Fla. Stat. § 95.11(3)(e)................................................................29

Fla. Stat. § 95.11(3)(j).................................................................30

Hawai'i Rev. Stat. § 657-1(1)......................................................30

HRS § 480-24...............................................................................29

Ill. Comp. Stat. 5/13-205............................................................30

Iowa Code § 553.16......................................................................29

Iowa Code § 614.1(4)...................................................................30

Iowa Code § 714H.5(5)...............................................................29

Kan. Stat. Ann. 60-512(2)...........................................................29

Kan. Stat. Ann. § 60-512........................................................29, 30

Mass. Gen. Laws ch. 260, § 2......................................................30

Mass. Gen. Laws ch. 260, § 5A...................................................29

MCL 445.781................................................................................29

Md. Code Ann. § 5-101................................................................30

Md. Code Ann. § 11-209(d)(1)....................................................29

Me. Stat. tit. 14, § 752.................................................................30

Mich. Comp. Laws § 445.911(8).................................................30

Mich. Comp. Laws § 600.5813....................................................30

Minn. Stat. § 325D.64..................................................................29

Minn. Stat. § 541.05, subd. 1(1)..................................................30

Mo. Rev. Stat. § 416.131..............................................................29

Mo. Rev. Stat. § 516.120(1).........................................................30

Mo. Rev. Stat. § 516.120(2).........................................................29

**TABLE OF AUTHORITIES**
*(Continued)*

Page(s)

Mont. Code Ann. § 27-2-202(3) ...................................................................................30

Mont. Code Ann. § 27-2-211 .......................................................................................29

N.C. Gen. Stat. § 75-16.2 ............................................................................................29

N.C. Gen. Stat. § 1-52(1) .............................................................................................30

N.D. Cent. Code § 51-08.1-10(2) ................................................................................29

N.D. Cent. Code § 28-1-16 ..........................................................................................30

N.H. Rev. Stat. Ann. 508:4(I) ......................................................................................30

N.H. Rev. Stat. Ann. § 356:12 .....................................................................................29

N.H. Rev. Stat. Ann. § 358-A:3 ...................................................................................29

N.J. Rev. Stat. § 2A:14-1 .............................................................................................30

N.M. Stat. Ann. § 37-1-4 .............................................................................................30

N.M. Stat. Ann. § 57-1-12 ...........................................................................................29

N.Y. Gen. Bus. Law § 340(5) ......................................................................................29

Neb. Rev. Stat. § 25-212 .......................................................................................29, 30

Neb. Rev. Stat. § 59-1612 ............................................................................................29

Nev. Rev. Stat. § 11.190(2)(c) .....................................................................................30

Nev. Rev. Stat. § 598A.220 .........................................................................................29

Nev. Rev. Stat. § 11.190(1)(b) .....................................................................................29

N.Y. C.P.L.R. 214 ........................................................................................................29

N.Y. C.P.L.R. 214(3) ...................................................................................................30

Or. Rev. Stat. § 12.080(1) ............................................................................................30

Or. Rev. Stat. § 646.638(6) ..........................................................................................29

Or. Rev. Stat. § 646.800 ...............................................................................................29

R.I. Gen. Laws Ann. § 6-36-21 ....................................................................................24

R.I. Gen. Laws Ann. § 6-36-23 ....................................................................................29

R.I. Gen. Laws Ann. § 9-1-13 ......................................................................................30

## TABLE OF AUTHORITIES
### (*Continued*)

**Page(s)**

S.C. Code Ann. § 15-3-530(1) .................................................................30

S.C. Code Ann. § 39-5-150 .....................................................................29

Tenn. Code. Ann. § 28-3-105 ............................................................29, 30

Tenn. Code. Ann. § 47-18-110 ...............................................................29

Utah Code Ann. § 78B-2-307(4) .............................................................30

Utah Code Ann. § 76-10-3117 ................................................................29

Va. Code Ann. § 8.01-246(4) ..................................................................30

Va. Code Ann. § 59.1-204.1(A) ..............................................................29

Vt. Stat. tit. 12, § 511 ........................................................................29, 30

W. Va. Code § 47-18-11 .........................................................................29

Wis. Stat. § 100.18 ..................................................................................29

Wis. Stat. § 133.18(2) .............................................................................29

Wis. Stat. § 893.4 ....................................................................................30

### Other Authorities

*The Code of Ethics*, NAT. ASS'N OF REALTORS, https://www.nar.realtor/about-
       nar/governing-documents/the-code-of-ethics (last visited Dec. 20, 2024) ............................15

*Governing Documents*, NAT'L ASS'N OF REALTORS,
       https://www.nar.realtor/about-nar/governing-documents (last visited Dec. 20,
       2024) ..................................................................................................................................15

*Policies*, NAT. ASS'N OF REALTORS, https://www.nar.realtor/about-nar/policies
       (last visited Dec. 20, 2024) ..............................................................................................15

*Previous Editions of the Code of Ethics*, NAT'L ASS'N OF REALTORS,
       https://www.nar.realtor/about-nar/governing-documents/code-of-
       ethics/previous-editions-of-the-code-of-ethics (last visited Dec. 20, 2024) ............................15

## I.      INTRODUCTION

In the Second Amended Complaint ("SAC," Dkt. 92), a group of 32 Plaintiffs—nearly all of whom have long been serving as named plaintiffs in related cases pending in other jurisdictions—seek to represent a nationwide class of home buyers asserting antitrust, consumer-protection, and unjust enrichment claims against HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates LLC (collectively, "HomeServices"), and Douglas Elliman Inc. ("Douglas Elliman," and together with HomeServices, "Defendants").  The crux of Plaintiffs' theory is that Defendants unlawfully conspired with various non-parties—including the National Association of Realtors® ("NAR")—to adhere to and enforce various rules promulgated by NAR.

Despite having ample notice of the defects in their pleading by virtue of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 65), as well as various dismissal orders entered in a related case pending before Judge Wood in the Northern District of Illinois, the only material amendment in the SAC is the addition of 31 Plaintiffs.  Plaintiffs have thus wasted what essentially amounts to a fourth or fifth bite at the apple.  Their SAC must be dismissed in full, for the following reasons.

*Plaintiffs' injunctive relief claim under the Sherman Act (Claim I) fails for two independent reasons*.  First, as Judge Wood has *twice* held as to an identical Sherman Act injunctive relief claim brought by many of these same Plaintiffs, Plaintiffs lack antitrust standing to pursue this claim because they are not efficient enforcers of the antitrust laws.  *See Batton v. Nat'l Ass'n of Realtors*, 2024 WL 689989, at *10 (N.D. Ill. Feb. 20, 2024); *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 312–14 (N.D. Ill. 2022).  Not only are Plaintiffs' claimed injuries indirect—as they acknowledge by not asserting a damages claim under the Sherman Act—but there are more directly injured plaintiffs (i.e., home sellers) pursuing *the same injunctive relief that Plaintiffs seek here*. Denying Plaintiffs antitrust standing is thus "not likely to leave a significant antitrust violation

undetected or unremedied." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 542 (1983).  Despite Judge Wood's rulings, Plaintiffs now bring the same claim here hoping for a different result.  The result should be the same.

Second, Plaintiffs lack Article III standing to pursue injunctive relief because they do not— and cannot—allege an "injury-in-fact" for purposes of their claim.  To plead an injury-in-fact, Plaintiffs must allege some "lasting impact or likely future injury" from the challenged conduct. *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1271–72 (11th Cir. 2015).  Here, Plaintiffs have failed to include any allegations of lasting impact from the supposed effect NAR's rules had on their past home purchases.  Nor do they allege any likely future injury from NAR's rules.  In fact, Defendants and NAR have *abandoned* the challenged rules through settlements— making clear that these rules will *not* impact any future home purchases by Plaintiffs.[1]  This defect provides an independent basis for dismissal here.

*Most of Plaintiffs' state-law claims (Claims II, III & IV) are time-barred.*  Relying on the delayed discovery rule and fraudulent concealment, Plaintiffs assert claims on behalf of themselves based on home purchases that occurred as early as 2018, as well as claims on behalf of putative class members that date back *nearly thirty years*, to 1996.  Plaintiffs have failed to sufficiently allege facts supporting their tolling theories, and, in any event, these theories are contradicted by other allegations in the SAC, including numerous widely published articles from 2007 and earlier that discuss the alleged anticompetitive conduct and injury on which the claims are based.

*Plaintiffs' state antitrust and consumer-protection claims (Claims II & III) fail as a matter of law.*  In Claim II, Plaintiffs assert claims under the antitrust laws of 28 jurisdictions; in Claim

---

[1] Defendants are investigating whether Plaintiffs' claims are released by Defendants' settlements and reserve the right to move to dismiss or otherwise seek judgment on their claims if they so find.

III, Plaintiffs assert claims under the consumer-protection laws of 25 jurisdictions.  This is a textbook example of improper "shotgun pleading," as Plaintiffs have failed to "separat[e] into a different count each cause of action or claim for relief."  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015).  Moreover, neither count lists the elements of Plaintiffs' state-law claims, thereby limiting the Court's ability to assess plausibility.  Nor do Plaintiffs even attempt to plead facts that satisfy the various statutes' requirements.  They have therefore not "truly *pleaded*" these claims, as Rule 8 requires.  *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255 (D. Conn. 2015).  Even setting aside these defects, these claims fail because Plaintiffs do not plead the basic requirement of an antitrust claim—an unlawful agreement.  Rather, they merely allege membership in a trade association.  Plaintiffs also fail to allege that any Defendant reached an agreement with any horizontal competitor.

At a minimum, the antitrust and consumer-protection claims Plaintiffs assert under the laws of states other than those in which they purchased their homes must be dismissed for lack of Article III standing.  Plaintiffs allege they were injured *only* in the states in which they purchased their homes—they therefore lack standing to assert claims on behalf of putative class members whose claims arise under other states' laws.  Certain of these claims also fail because they are either barred by the direct purchaser rule of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), or otherwise fail to state a claim under the relevant statute.

*Plaintiffs' unjust enrichment claim (Claim IV) must be dismissed.*  This claim fails because Plaintiffs do not even identify the specific state unjust enrichment claims they are asserting, which deprives Defendants and the Court of any opportunity to assess whether the requirements of each state's law are plausibly alleged.  But even setting aside this glaring defect, many of these claims would still fail because they are either barred by *Illinois Brick* or otherwise fail to state a claim.

For these reasons, the Court should grant Defendants' Motion to Dismiss in its entirety.[2]

## II.    BACKGROUND

Plaintiffs allege that they purchased homes in various states across the country between 2018 and 2024 "using a buyer-agent." SAC ¶¶ 21–52.[3]  These homes were listed for sale on multiple listing services ("MLSs") owned and/or operated by members of NAR, *id.*, a trade association in the real estate industry, *id.* ¶ 5.  MLSs are databases of properties listed for sale in a particular geographic region of the United States.  *Id.* ¶ 3.  At issue in this case are a handful of NAR rules and policies, as well as NAR's code of ethics (collectively, the "NAR Rules") that govern the operation of MLSs affiliated with NAR.  *Id.* ¶ 9.  The primary rule at issue, which Plaintiffs term the "Buyer-Agent Commission Rule," allegedly requires brokers for sellers of residential real property ("seller brokers") to make a "blanket unilateral offer of compensation" to brokers who represent buyers of such property ("buyer brokers").  *Id.* ¶¶ 9.a, 60.

Although Plaintiffs do not allege that Defendants were involved in drafting the NAR Rules, they theorize that Defendants unlawfully agreed with NAR (and other alleged co-conspirators) to "adhere to and enforce" those rules.  *Id.* ¶ 89.  They in turn claim that the rules restrain trade by "foreclos[ing] virtually all negotiations over . . . buyer-agent commission[s]," *id.* ¶ 120, and

---

[2] Defendants are investigating whether Plaintiffs entered into buyer representation agreements that require arbitration of their claims.  Accordingly, Defendants reserve the right to compel arbitration if warranted and to compel arbitration of the claims of putative class members at the appropriate time.  *See Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) (no obligation to move to compel arbitration as to putative class members before any class is certified).

[3] As is required at this stage, Defendants take the properly pleaded facts as true for purposes of this motion only.

ultimately "cause[] America's home buyers to pay inflated commissions for broker services . . . [and] inflated prices for the homes they purchase," *id.* ¶ 4.  Plaintiffs do not, however, allege that they paid their buyer brokers, let alone HomeServices (or its franchisee and/or affiliate) or Douglas Elliman *anything*.  Rather, they allege that listing agreements between home sellers and their seller brokers "specif[y] the total commission that a home seller will pay to the seller-broker, often with a portion of that amount earmarked to be paid to the buyer-agent in the event the buyer has a broker." *Id.* ¶ 75.  Buyer brokers are then "technically paid through the seller-broker." *Id.* ¶ 114.

Plaintiffs sue for injunctive relief under Section 1 of the Sherman Act, *id.* ¶¶ 173–82, and bring claims for money damages under dozens of state antitrust and consumer-protection statutes. *Id.* ¶¶ 183, 194.  They also bring claims for unjust enrichment.  *Id.* ¶¶ 195–200.

## III.    LEGAL STANDARD

Defendants' Article III standing arguments challenge this Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  In deciding a facial challenge under Rule 12(b)(1), this Court must ascertain whether the "allegations in [the] complaint . . .[,] taken as true" "sufficiently allege[] a basis of subject matter jurisdiction."  *Id.* at 1232–33.

Defendants' remaining arguments arise under Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court need not "accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or unsupported by factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009).

## IV.    ARGUMENT

### A.    Plaintiffs' Sherman Act Claim for Injunctive Relief Fails

Plaintiffs' claim for injunctive relief under the Sherman Act fails for two independent

reasons.  First, as Judge Wood in the Northern District of Illinois has twice correctly held, this claim fails for lack of antitrust standing because home buyers like Plaintiffs are not efficient enforcers of the antitrust laws.  *See Batton*, 2024 WL 689989, at *10; *see also Leeder*, 601 F. Supp. 3d at 312–14.  Second, Plaintiffs also lack Article III standing to pursue this claim because they fail to allege a real and immediate threat of future injury stemming from the NAR Rules.

### 1.      This Claim Fails for Lack of Antitrust Standing

Plaintiffs' request for injunctive relief under the Sherman Act fails for lack of antitrust standing.  As noted, Judge Wood has twice dismissed an identical claim asserted by many of these same Plaintiffs, represented by the same counsel, on this basis.  *See Batton*, 2024 WL 689989, at *10; *Leeder*, 601 F. Supp. 3d at 312–14.  There is no reason to depart from that ruling here.

To have antitrust standing, a plaintiff must, among other things, "be an 'efficient enforcer' of the antitrust laws." *Duty Free*, 797 F.3d at 1273 (quoting *Sunbeam Tel. Corp. v. Nielsen Media Rsch., Inc.*, 711 F.3d 1264, 1271 (11th Cir. 2013)).  Whether a plaintiff is an "efficient enforcer" in the context of a claim for injunctive relief depends on various considerations, including whether the plaintiff claims only an indirect injury, whether there are more directly injured plaintiffs who are better situated to bring suit, and whether the plaintiff could enforce a judgment awarding his or her requested relief.  *See, e.g.*, *id.* n.5.  Here, all of these factors weigh against a finding that Plaintiffs have antitrust standing to pursue this claim.

First, the only injury Plaintiffs claim is an indirect one.  That is, according to Plaintiffs' theory of injury, home buyers (like Plaintiffs) are indirectly injured by the NAR Rules because "buyer-agents governed by NAR are technically paid through the seller-broker," SAC ¶ 114, and any cost borne by *home buyers* is by virtue of the fact that buyer-broker commissions are "baked into" the purchase price of homes, *id.* ¶ 94.  *See Leeder*, 601 F. Supp. 3d at 309–11 (home buyers are "indirect purchasers of their buyer-brokers' services"); *Batton*, 2024 WL 689989, at *2

(same).[4]   The fact that Plaintiffs' claimed injuries are indirect weighs against a finding that Plaintiffs are "efficient enforcer[s]."   *E.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 223 (S.D.N.Y. 2019) (dismissing claim for injunctive relief in part because the "alleged injury is, by definition, indirect").

Second, there are more directly injured plaintiffs who are not only better situated to challenge the NAR Rules, but have already done so.   As the Supreme Court has held, "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general," as it means that "[d]enying . . . [the more remote party] a remedy . . . is not likely to leave a significant antitrust violation undetected or unremedied."   *AGC*, 459 U.S. at 542.   Here, various putative classes of *home sellers* have already sued NAR, Defendants, and their alleged co-conspirators, claiming that the NAR Rules violate the antitrust laws.   Importantly, the plaintiffs in those cases requested the same injunctive relief that Plaintiffs seek here.   *See Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610-ARW (N.D. Ill.), Dkt. 84 at 67; *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB (W.D. Mo.), Dkt. 759 at 53; *Gibson v. Nat'l Ass'n of Realtors*, No. 4:23-cv-788-SRB (W.D. Mo.), Dkt. 232 at 88.

Citing the existence of *Moehrl* and *Burnett*, Judge Wood has twice dismissed an identical claim for the same injunctive relief asserted by many of these same Plaintiffs, holding that "home

---

[4]  That Plaintiffs' claimed injuries are indirect is also confirmed by the fact that Plaintiffs have not asserted a claim for damages under the Sherman Act.   *See Illinois Brick*, 431 U.S. at 746–47 (indirect purchasers cannot sue for damages under the Sherman Act).

sellers rather than the homebuyers [are] better suited to seek injunctive relief."[5]  *Batton*, 2024 WL 689989, at *10; *see also Leeder*, 601 F. Supp. 3d at 312–14.  This outcome is in accord with the many cases that have held that indirect purchasers lack antitrust standing to pursue injunctive relief where, as here, the same relief is sought by more directly affected parties.  *E.g.*, *In re Keurig*, 383 F. Supp. 3d at 223 (dismissing indirect purchasers' claim because direct purchasers "are better situated to bring suit, and have brought suit," and they "seek injunctive relief that largely, if not completely, overlaps with the injunctive relief sought by the [indirect purchasers]"); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *14 (N.D. Ill. Aug. 23, 2013) (dismissing indirect purchasers' claim because "direct purchasers have actively pursued their claims and they [also] seek . . . injunctive relief"); *see also In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *23 (S.D.N.Y. Aug. 29, 2014); *In re Plasma-Derivative Protein Therapies Antirust Litig.*, 2012 WL 39766, at *9 (N.D. Ill. Jan. 9, 2012).

As in those cases, the fact that *home sellers* (i.e., more directly injured parties) have also challenged the NAR Rules weighs heavily against a finding that Plaintiffs have antitrust standing.  In fact, recent settlements in *Burnett, Moehrl*, and *Gibson* make clear that denying Plaintiffs antitrust standing will *not* leave the alleged antitrust violation "unremedied,"  *AGC*, 459 U.S. at 542, as the defendants in those cases (including Defendants here) have agreed to "injunctive relief eliminating the challenged NAR rules and business practices," *Burnett*, No. 4:19-cv-00332-SRB,

---

[5] HomeServices was named in the home buyer suit pending before Judge Wood that was initially captioned *Leeder v. Nat'l Ass'n of Realtors et al.,* Case No. 21-cv-00430, but is now captioned *Batton v. Nat'l Ass'n of Realtors et al.*, Case No. 21-cv-00430.  Douglas Elliman was named in the separate home buyer suit pending before Judge Wood captioned *Batton v. Compass, Inc. et al.*, Case No. 23-cv-15618.  Defendants were dismissed from those suits earlier this year.

Dkt. 1622 at 61 (Order Granting Plaintiffs' Motion for Final Approval of Settlements with NAR and HomeServices); *see Burnett*, No. 4:19-cv-00332-SRB, Dkt. 1518-1 at 32 (HomeServices settlement agreement, which states: HomeServices will "advise and periodically remind . . . agents that there is no . . . requirement that they must make offers to or must accept offers of compensation from buyer brokers or . . . that, if made, such offers must be blanket, unconditional, or unilateral"); *Gibson*, No. 4:23-cv-788-SRB, Dkt. 161-6 at 23 (Douglas Elliman settlement agreement, which contains a similar practice change commitment).

Third, for the same reasons Plaintiffs lack Article III standing to pursue this claim, *see infra* pp. 9–11, Plaintiffs lack antitrust standing because they could not enforce any judgment enjoining Defendants from enforcing the NAR Rules. *Duty Free* is instructive. There, the Eleventh Circuit held that an antitrust plaintiff was "not an efficient enforcer of the antitrust laws because it is not currently subject to" the challenged restrictions. 797 F.3d at 1273. As a result, the plaintiff "could not enforce any judgment that [the court] would reach about the requirements." *Id.* Like the plaintiff in *Duty Free*, Plaintiffs are not *currently subject* to the NAR Rules at issue since they only allege *past* home purchases. SAC ¶¶ 21–52; *see Leeder*, 601 F. Supp. 3d at 313–14 (dismissing claim for injunctive relief because the plaintiff "has already purchased his home and does not allege that he intends to purchase a new home in the future"); *Batton*, 2024 WL 689989, at \*10 (same). Moreover, as discussed above, Defendants have *abandoned* the challenged rules through settlements. This claim must therefore be dismissed. *Duty Free*, 797 F.3d at 1273.

### 2. Plaintiffs Lack Article III Standing to Pursue This Claim

An independent basis for dismissal of Plaintiffs' claim for injunctive relief is lack of Article III standing. Among other requirements, the doctrine of Article III standing requires a plaintiff to "have suffered an 'injury in fact.'" *Duty Free*, 797 F.3d at 1271 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To satisfy this requirement in connection with a claim for injunctive

relief, a plaintiff must "allege[], and ultimately prove[], a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)).

Thus, a claim for injunctive relief must be dismissed for lack of Article III standing if the complaint fails to allege some "lasting impact or likely future injury" from the challenged conduct. *Id.* at 1272; *see also id.* at 1271 (constitutional standing must be evaluated at this stage "based on the facts alleged in the complaint"). For instance, in *Duty Free*, the Eleventh Circuit affirmed the dismissal of an antitrust plaintiff's claims for lack of Article III standing, reasoning that the fact the plaintiff "may have been injured by . . . [the] requirements [at issue] in the past . . . cannot be sufficient to establish an injury in fact that would support injunctive relief" because the complaint contained "no allegation that those restrictions caused any lasting impact or likely future injury." *Id.* at 1271–72; *see also Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1254–55 (11th Cir. 2023) (purchasers lacked Article III standing to pursue injunctive relief since "the complaint [did] not allege any 'continuing, present adverse effects' associated with [their] prior purchases" or "'any description of concrete plans' to purchase the . . . [p]roducts again in the future").

Plaintiffs' SAC suffers from the same defects as the complaints in *Duty Free* and *Williams*. Plaintiffs seek to enjoin Defendants' alleged adherence to and enforcement of the NAR Rules, which allegedly inflate the price at which homes are purchased on MLSs affiliated with NAR. But while Plaintiffs allege they purchased homes on such MLSs as recently as May 2024,[6] SAC ¶ 23, they do not allege any "continuing, present adverse effects" from those rules on their *past* home

---

[6] Notably, Plaintiffs do not bring claims predicated on home purchases that occurred *after* May 2024—the month that the first set of settlement agreements in the related cases discussed *supra* pp. 8–9 received final approval. *See Burnett*, No. 4:19-cv-00332-SRB, Dkt. 1487.

purchases, *Williams*, 65 F.4th at 1255.  They also do not allege "likely future injury" from NAR's Rules.  *Duty Free*, 797 F.3d at 1272.  As an initial matter, no Plaintiff alleges "any . . . concrete plans to purchase . . . in the future" another home through an MLS affiliated with NAR.  *Williams*, 65 F.4th at 1255.  To the contrary, Plaintiffs allege that "[m]ost people purchase . . . homes only a few times in their lives."  SAC ¶ 2.  Moreover, even if Plaintiffs had pleaded that they had such plans, they still would not be able to plausibly allege a "likely future injury" because the settlements in *Moehrl*, *Burnett*, and *Gibson* discussed *supra* pp. 8–9 make clear that the NAR Rules will *not* impact future home purchases by Plaintiffs (or others).  Plaintiffs' Sherman Act claim for injunctive relief therefore fails for lack of Article III standing.

**B.**      **The Vast Majority of State-Law Claims Plaintiffs Assert Are Time-Barred**

Numerous statute-of-limitations issues are apparent from the face of the SAC.  As an initial matter, nine Plaintiffs (Mya Batton, Michael Brace, Sabrina Clark, Do Yeon Irene Kim, Joshua Putt, John Sannar, Robert Sayles, Lisa Shankus, and Brent Strine) have each brought at least one state-law claim that is untimely under the relevant statute of limitations.[7]  Moreover, although none of the state laws at issue has a 28-year statute of limitations, Plaintiffs assert claims on behalf of putative class members dating back to *December 1, 1996*.  SAC ¶¶ 163, 164.

Plaintiffs attempt to plead around these timeliness problems by invoking the delayed discovery rule, *id.* ¶ 157, or, alternatively, the doctrine of fraudulent concealment, *id.* ¶ 160.  These attempts fail as a matter of law because: (a) the tardiness of Plaintiffs' claims is readily apparent

---

[7] For instance, Mya Batton purchased her home in Tennessee in 2020, SAC ¶ 24; her Tennessee antitrust claim thus expired three years later (in 2023), and her Tennessee consumer-protection claim expired one year later (in 2021).  *See* Exhibit A, which identifies the relevant statutes of limitations, as well as the named Plaintiffs whose individual claim(s) are time barred.

from their pleading, and they fail to plead any facts to support application of either doctrine; and (b) Plaintiffs affirmatively allege facts that demonstrate that claims of the putative class are time-barred. *See Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1112 (S.D. Fla. 2019) (dismissal under Rule 12(b)(6) on statute-of-limitations grounds is appropriate if it is "apparent from the face of the complaint that the claim is time-barred"); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff . . . can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling.").

**Plaintiffs fail to plead delayed discovery or fraudulent concealment.** Where, as here, it is apparent from the face of a pleading that claims are filed outside of the relevant statute of limitations and the plaintiff affirmatively relies on an exception to the statute of limitations, the plaintiff bears the burden to plead facts to invoke the exception upon which he or she relies. *See Appleby v. Knauf Gips KG*, 2023 WL 2401800, at *5 (S.D. Fla. Mar. 8, 2023) ("[A] plaintiff purporting to rely on equitable tolling based on a discovery rule must plead sufficient facts to demonstrate when the discovery occurred and that the plaintiff was diligent in discovering the claim."); *Holliday v. Lloyd's, Underwriters At, London*, 2017 WL 6624160, at *3 (M.D. Fla. Dec. 28, 2017) ("Because Holliday acknowledges he is relying on the discovery rule to avoid dismissal, the [] Complaint should have included allegations supporting the application of the discovery rule to toll the statute of limitations."); *see also Ross v. Mickle*, 194 F. App'x 742, 744 (11th Cir. 2006) (affirming dismissal where "[i]t was clear on the face of [the] complaint that it was filed out-of-time and there were no facts in the complaint indicating that [plaintiff] could avoid the statute-of-limitations bar"). And even a named plaintiff whose own claim may be timely must still plead sufficient facts to support tolling on behalf of putative class members. *See Pedraza v. United*

*Guar. Corp.*, 114 F. Supp. 2d 1347, 1356–57 (S.D. Ga. 2000) (dismissing class claims as untimely where the named plaintiff—whose own claim was timely—failed to plead facts supporting tolling of class claims); *Keilholtz v. Lennox Hearth Prods. Inc.*, 2009 WL 2905960, at *4–5 (N.D. Cal. Sept. 8, 2009) (same).

Here, Plaintiffs have not alleged *any* facts to support application of the delayed discovery rule or the doctrine of fraudulent concealment.  To invoke either doctrine, a plaintiff must plead facts showing the exercise of diligence to uncover his or her claim and injury.  *See Villarreal*, 839 F.3d at 971 ("The general test for equitable tolling requires the party seeking tolling to prove (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."); *Eddie v. Bank of Am., N.A.*, 2018 WL 573406, at *4 (M.D. Fla. Jan 26, 2018) (plaintiff must plead facts concerning diligence to invoke discovery rule). But Plaintiffs here do not allege any facts showing that they or putative class members acted diligently and could not have discovered their claims from 1996 to 2020, or that Defendants fraudulently concealed anything from them during those twenty-four years.  Rather, Plaintiffs merely recite conclusory allegations.  For example, they plead that they "could not have discovered [their claims] by the exercise of due diligence," SAC ¶ 157, that it was "reasonable" for them "not to suspect that Defendants were engaging in any unlawful anticompetitive behavior" because they are "unsuspecting home buyers" and "not well-versed with NAR's framework," *id.* ¶ 158, and that they were ignorant because "the average home buyer does not appreciate that buyer-agent services cost them anything, let alone that Defendants actively conspire together," *id.*  These allegations fall far short of pleading facts demonstrating diligence.  *See Patel v. Diplomat 1419VA Hotels, LLC*, 605 F. App'x 965, 966 (11th Cir. 2015) ("Paresh's allegation that he 'could not have

reasonably learned' of the facts on which his claim is based until 2012, without more, is insufficient to satisfy the pleading requirements as to tolling.").[8]

Plaintiffs' allegations regarding fraudulent concealment are also insufficient as a matter of law because they are not pleaded with particularity under Rule 9(b). *See Andreasen v. Progressive Express Ins. Co.*, 2017 WL 5635403, at *4 (S.D. Fla. Aug. 25, 2017) ("[A] plaintiff must satisfy [Rule] 9(b)'s requirement to plead with particularity . . . the facts giving rise to a claim of fraudulent concealment."). In a multi-defendant case such as this one, Rule 9(b) demands that a pleading inform each defendant of its specific role in the supposed fraud. *See Premier Concrete LLC v. Argos N. Am. Corp.*, 2021 WL 1209354, at *8 (N.D. Ga. Mar. 31, 2021) (citing *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)). That is, a complaint must "identify: (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statements; (3) the content and manner in which the statements misled [p]laintiffs; and (4) what [defendants] gained by the alleged fraud." *Padilla*, 391 F. Supp. 3d at 1114. Here, Plaintiffs have not alleged any willful concealment by *any* Defendant, let alone that each Defendant "deliberately and actively concealed . . . material facts for the purpose of inducing [anyone] to delay filing this action." *Id.*; *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (dismissing claim where plaintiff "fail[ed] to allege any elements of active fraudulent concealment on the part of Defendant,

---

[8] At least nine of the state laws under which Plaintiffs assert claims also require a showing of reliance for fraudulent concealment, which Plaintiffs have not attempted to plead. *See Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 675–76 (S.D. Fla. 1999) (California, Colorado, Maine, Maryland, Montana, New Mexico, New York, South Carolina, and Virginia), *aff'd*, 333 F.3d 1248 (11th Cir. 2003).

much less that any such acts delayed Plaintiff's filing beyond the statute of limitations").

**Plaintiffs' own allegations contradict their assertions of delayed discovery and fraudulent concealment.**  Separate and apart from Plaintiffs' failure to plead facts to support any tolling, the factual allegations that *are* alleged in the SAC, and the documents that Plaintiffs incorporate therein, affirmatively demonstrate that a reasonably prudent person would have discovered his or her alleged claims and injuries *no later than 2007*.  For instance, regarding the delayed discovery rule,[9] the SAC alleges that "Plaintiffs and the Classes had no knowledge of Defendants' unlawful conspiracy and could not have discovered it by the exercise of due diligence until, at the earliest, November 19, 2020, the date the DOJ announced the settlement of its antitrust claims against NAR."  SAC ¶ 157.  Yet, Plaintiffs' entire SAC is based on NAR rules that have existed since 1996, and which Plaintiffs do not dispute have always been publicly available.[10]  *See*

---

[9] The discovery rule is not applicable to all of Plaintiffs' (and the putative class's) claims.  *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192, 1195 (S.D. Fla. 2017) (inapplicable to Florida consumer protection and unjust enrichment claims); *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1082–83 (N.D. Cal. 2016) (inapplicable to California consumer-protection claim based on anticompetitive conduct); *Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.*, 92 F. Supp. 3d 982, 993 (D. Haw. 2015) (Hawaii follows California's discovery rule), *aff'd sub nom. Moddha Interactive, Inc. v. Philips Elecs. N. Am. Corp.*, 654 F. App'x 484 (Fed. Cir. 2016).

[10] *See Policies*, NAT. ASS'N OF REALTORS, https://www.nar.realtor/about-nar/policies (last visited Dec. 20, 2024); *The Code of Ethics*, NAT. ASS'N OF REALTORS, https://www.nar.realtor/about-nar/governing-documents/the-code-of-ethics (last visited Dec. 20, 2024); *see also Governing Documents*, NAT'L ASS'N OF REALTORS, https://www.nar.realtor/about-nar/governing-documents (last visited Dec. 20, 2024); *Previous Editions of the Code of Ethics*, NAT'L ASS'N OF REALTORS, https://www.nar.realtor/about-nar/governing-documents/code-of-ethics/previous-editions-of-the-

*Speier-Roche*, 2014 WL 1745050, at *5 (affirming dismissal on limitations grounds where plaintiff's own pleading demonstrated she was "on notice" of her alleged injury outside of the limitations period); *Belanger v. Apple, Inc.*, 2020 WL 9047165, at *3–4 (S.D. Fla. Apr. 14, 2020) (granting motion to dismiss on limitations grounds where plaintiff had earlier opportunities to discover alleged claims through defendant's public announcements).

In addition, Plaintiffs cite sources in the SAC that were publicly available *well over a decade before* the DOJ announcement, each of which discusses the NAR Rules, the alleged anticompetitive conduct at issue, and Plaintiffs' alleged injuries. These publicly available sources were sufficient to put Plaintiffs and putative class members on notice of their claims and injuries. Indeed, the articles read as if they could have been first drafts of Plaintiffs' SAC:

- An August 2005 *Wall Street Journal* article titled "The Realtor Racket," which labeled NAR a "price-fixing scheme" and a "cartel" that victimizes "home buyers and sellers who are required to pay brokerage fees that can easily be several thousand dollars above a competitive market price" as compared to the "industry average in other countries." SAC ¶ 143 n.11.

- A January 2006 *New York Times* article that stated that "[a] broad range of critics say the organization [NAR] and its state and local affiliates have worked to smother competition and protect the decades-old system that provides traditional brokers 5 percent to 6 percent commission on most home sales." *Id.* ¶ 148 n.13.

- A June 2006 article published by the Consumer Federation of America that labels the real estate industry a "Cartel" and states: (a) "a portion of th[e] commission is added to the sale price of the home so that the seller and buyer both end up paying a portion of the commission;" (b) buyers are "rarely aware" they pay commissions; (c) the MLS is a "monopolization of listings that allows traditional brokers to support 6-7% commissions," as "home buyers will not have access to [] information about the [commission] splits;" and (d) home buyers "cannot check to see whether their broker is steering them away from houses carrying lower [commission] splits." *Id.* ¶ 150 n.17.

---

code-of-ethics (last visited Dec. 20, 2024). The Court may take judicial notice of the public availability of the NAR Rules. *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *4 (S.D. Fla. Mar. 20, 2015).

- A 2007 article in the Cornell Real Estate Review, published online, that criticizes, among many other points echoed in the SAC: (a) how "real estate broker commissions are strangely unrelated to either the quantity or quality of the service rendered or even to the value provided;" (b) how the NAR Rules allow "the seller's broker set the fee received by the buyer's broker," "permit[] realtors to represent their services as 'free' or without cost," and "recommend[] that [commission] splits are designed to 'encourage cooperation,' as opposed to competition;" (c) why cost savings through the "development of the Internet, databases, and other communication technologies" have not been passed on to consumers; and (d) how "leaving buyer brokers' fees up to selling agents often leads traditional agents to steer away from homes not represented by other traditional brokers." *Id.* ¶ 152 n.20.

Plaintiffs' theory they "could not have discovered" the basis of their claims until November 2020 is therefore belied by Plaintiffs' own pleading. *See Hill v. Texaco, Inc.*, 825 F.2d 333, 335–36 (11th Cir. 1987) (affirming dismissal of claims in spite of fraudulent concealment argument where appraisal value "should have put [plaintiff] on notice if, as he claims, Texaco deliberately and in bad faith inflated their purchase price").

Indeed, although several of the referenced articles *did* spell out, chapter and verse, all of the facts to support Plaintiffs' claims, "a plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim." *Tomlinson v. Goldman, Sachs & Co.*, 682 F. Supp. 2d 845, 847 (N.D. Ill. 2009) (rejecting argument that "news reports are vague and did not provide sufficient notice of their injuries because the facts reported did not address every element" of the claim), *aff'd sub nom. Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533 (7th Cir. 2011). Accordingly, the 2005 *Wall Street Journal* article alone—which addresses the specific harm Plaintiffs allege—should have been sufficient to put Plaintiffs and putative class members on notice of their alleged injuries. *See* SAC ¶ 143 n.11 (citing *WSJ* article noting that buyers "pay brokerage fees that can easily be several thousand dollars above a competitive market price" as compared to the "industry average in other countries"); *id.* ¶¶ 149–50 (2002 study comparing NAR MLS broker commission rates to other countries' rates as support for damages).

All told, this 28-year-old alleged conspiracy illustrates precisely why statutes of limitations exist in the first place.  Indeed, ignoring the dispositive allegations in the SAC until after discovery would defeat the purpose of the protections that statutes of limitations are intended to provide.

## C.    Plaintiffs' State Antitrust and Consumer-Protection Claims Fail

All of Plaintiffs' state antitrust and consumer-protection claims must be dismissed on shotgun pleading grounds.  They also fail because Plaintiffs have not even attempted to account for differences between the statutes under which they sue and because Plaintiffs have not pleaded an unlawful agreement.  Certain of these claims fail for additional reasons, as discussed below.

### 1.    These Claims Fail Because They Constitute A Shotgun Pleading

A complaint that does "not separat[e] into a different count each cause of action or claim for relief" constitutes a shotgun pleading, and is subject to dismissal under Rule 12(b)(6).  *Weiland*, 792 F.3d at 1323; *see also Bickerstaff Clay Prods. Co. v. Harris Cnty.*, 89 F.3d 1481, 1484 n.4 (11th Cir. 1996) (a complaint that "present[s] more than one discrete claim for relief" in "the counts" is "a typical shotgun pleading").  Plaintiffs' SAC suffers from this exact defect—in Claim II, Plaintiffs assert 28 different state antitrust claims, and in Claim III, Plaintiffs assert 25 different state consumer-protection claims.  Plaintiffs' failure to separate these claims into separate counts means they must be dismissed.  *See, e.g.*, *Garvey v. Sec'y, U.S. Dep't of Lab.*, 2023 WL 3057474, at *3 (M.D. Fla. Apr. 24, 2023) (dismissing a complaint that involved "multiple statutes" per count because it was a "quintessential shotgun pleading"); *Alvarez v. Lakeland Area Mass Transit Dist.*, 2019 WL 2868943, at *3 (M.D. Fla. July 3, 2019) (dismissing, on shotgun pleading grounds, a complaint that "combine[d] claims under different statutes into one count").

### 2.    Plaintiffs Do Not Actually Plead Their State-Law Claims

Even setting aside the shotgun pleading doctrine, Plaintiffs' state antitrust and consumer-protection claims must be dismissed because Plaintiffs do not actually *plead* these claims.  That

is, they do not identify the elements of these claims or plead any factual bases unique to the state laws under which they sue.  By both "fail[ing] . . . to account for any consequential differences that may exist among the undifferentiated state-law claims," and "bald[ly] asserti[ng] that [] alleged antitrust conduct violates dozens of non-antitrust laws," Plaintiffs have not "truly *pleaded* claims . . . as required by Rule 8."  *Aggrenox*, 94 F. Supp. 3d at 255 (dismissing claims).

### 3.      Plaintiffs Fail to Plausibly Allege Any Unlawful Agreement

Plaintiffs have failed to allege the basic foundation of an antitrust conspiracy—an unlawful agreement.  To plausibly allege such an agreement, a complaint must include "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556 (an "allegation of parallel conduct and a bare assertion of conspiracy will not suffice"); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (pleading "facts that could just as easily suggest rational, legal business behavior . . . as they could suggest an illegal conspiracy [is] insufficient to plead a violation of antitrust laws").  Here, Plaintiffs fail to allege (i) that the conduct they challenge was the product of any agreement between Defendants and NAR; or (ii) that Defendants entered into an agreement with each other or any other horizontal competitor.

*First*, Plaintiffs have not plausibly alleged any facts to suggest any Defendants entered an unlawful agreement with NAR.  The crux of Plaintiffs' allegations is that agents affiliated with Defendants were NAR members who followed, and Defendants themselves purportedly enforced, the challenged rules.  SAC ¶ 10.  But Plaintiffs allege independent business reasons as to why Defendants or their agents would participate in NAR, assuming for argument purposes that they did.  *See id*. ¶ 65 (explaining benefits NAR provides to real estate professionals, including insurance and trainings).  Plaintiffs' other allegations boil down to a theory that mere participation in a trade association, such as NAR, constitutes an antitrust conspiracy.  But it is well-established that "a trade association is not by its nature a 'walking conspiracy.'"  *Consol. Metal Prods., Inc.*

- 19 -

*v. Am. Petroleum Inst.*, 846 F.2d 284, 293–94 (5th Cir. 1988); *accord In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 349 (3d Cir. 2010).  Without specific, non-group pleading allegations as to how each Defendant allegedly entered into any agreement with NAR, Plaintiffs' claims fail.  For instance, the SAC merely offers the vague allegation that some unnamed HomeServices executives are "leaders within" NAR and that HomeServices supposedly "requires its franchisees" to join one of various organizations (including, but not necessarily, NAR).  SAC ¶¶ 136, 138.  And the SAC's sole substantive allegation regarding Douglas Elliman states that some of its executives served on NAR-affiliated committees related to MLSs and their governance, without any further detail.  *Id.* ¶ 140.  Such allegations are blatantly inadequate.

*Second*, Plaintiffs fail to allege any horizontal agreements among Defendants and their purported brokerage co-conspirators, as is required for a hub-and-spoke price-fixing conspiracy like Plaintiffs attempt to allege here.  Where defendants are alleged to only be in a vertical arrangement with a non-competitor, such as NAR, without an agreement among horizontal competitors—i.e., "separate spokes meeting at a common center . . . without the rim of the wheel to enclose the spokes"—there is not a "single conspiracy" in violation of the antitrust laws. *Katteakos v. Unites States*, 328 U.S. 750, 755 (1946).  Here, Plaintiffs do not allege that any Defendant ever communicated or agreed with any horizontal competitor about the challenged NAR rules, let alone their impact on commission rates.  Plaintiffs have thus failed to allege that Defendants and the other alleged brokerage co-conspirators have "[any] connection with one another." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002); *see also nFinanSe, Inc. v. Interactive Commc'ns Int'l, Inc.*, 2012 WL 13009231, at *8 (N.D. Ga. July 24, 2012) (dismissing claim where plaintiff failed adequately to plead agreement among alleged spokes).[11]

---

[11]  Plaintiffs' failure to plead an unlawful agreement is also fatal to their Sherman Act claim.

### 4. Plaintiffs Lack Standing to Bring Claims Under the Laws of Colorado, Hawaii, Montana, Nebraska, New Jersey, North Dakota, Pennsylvania, Rhode Island, and Vermont

While Plaintiffs allege they suffered injury in connection with home purchases in *26 states*, SAC ¶¶ 21–52, they assert antitrust and/or consumer-protection claims under the laws of *35 states*, *id.* ¶¶ 187, 193. But "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)). This is a matter of Article III standing:[12] a "named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise." *In re Takata Airbag Prod. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016); *see also Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1205 (S.D. Fla. 2021) (named plaintiffs "do not have standing to assert a[] . . . claim under any state's law but their own because they did not suffer any injuries in fact traceable to alleged violations of laws in other states"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (same).[13]

---

[12] If this Court disagrees, Defendants reserve the right to challenge Plaintiffs' claims under these states' laws on personal jurisdiction grounds at the class certification stage. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020); *Molock v. Whole Foods Market Grp.*, 952 F.3d 293, 298 (D.C. Cir. 2020); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877–78 (9th Cir. 2021).

[13] In an unpublished, non-binding decision, the Eleventh Circuit held in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, that whether named plaintiffs in a putative class action may assert claims under the laws of states other than the states in which the named plaintiffs were injured raises a "12(b)(6) merits issue" (and is not a matter of Article III standing). 2022 WL 16729170, at *5–6 (11th Cir. Nov. 7, 2022). To the extent this Court decides to follow that approach, Plaintiffs' claims under

Here, Plaintiffs' claims under the laws of Colorado, Hawaii, Montana, Nebraska, New Jersey, North Dakota, Pennsylvania, Rhode Island, and Vermont, SAC ¶¶ 187(f), (o), (u), (w), (z); 193(c), (l), (m), (p), (t), (u), must be dismissed for lack of Article III standing because no Plaintiff claims that he or she was injured there.[14]

### 5. Certain State-Law Antitrust Claims Fail for Additional Reasons

Many of Plaintiffs' state-law antitrust claims also fail because they are either barred by *Illinois Brick*'s direct purchaser rule or fail to meet state-law requirements.

**Illinois Brick *bars many of Plaintiffs' antitrust claims.*** In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court "established a bright-line rule that authorizes suits" for money damages under the Sherman Act "by *direct* purchasers but bars [damages] suits by *indirect* purchasers." *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019). While *Illinois Brick* itself "does not preclude indirect purchasers from seeking damages for the violation of state antitrust laws,

---

the laws of states where no Plaintiff purchased a home should be dismissed under Rule 12(b)(6) because Plaintiff does not even plead the *elements* of these claims, *see supra* pp. 18–19, let alone that these claims are "materially identical" to the claims for which Plaintiffs have Article III standing. *Coleman v. Burger King Corp.*, 2023 WL 5507730, at *3–4 (S.D. Fla. Aug. 25, 2023) (under *Zantac*, a named plaintiff may assert "claims on behalf of class members from *other* states," provided the other states' statutes are "materially identical" to the statute under which the named plaintiff's claim arises).

[14] Defendants previously argued that Plaintiff Lutz lacked Article III standing to bring claims under the laws of states other than Florida—the only state in which he alleges an injury. Dkt. 65 at 22–23. By naming 31 additional Plaintiffs in the SAC who bought homes in 25 states, Plaintiffs appear to tacitly acknowledge the merit of Defendants' argument. However, Plaintiffs' SAC continues to assert claims under the laws of a handful of states in which no Plaintiff purchased a home.

. . . many state legislatures and courts have adopted *Illinois Brick*'s general prohibition against antitrust [damages] suits by indirect purchasers." *Terazosin*, 160 F. Supp. 2d at 1372.

Among these states are Missouri and Florida. *See Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s, Neurology, P.C.*, 998 S.W.2d 821, 824–27 (Mo. Ct. App. 1999); *Mack v. Bristol-Myers Squibb*, 673 So.2d 100, 102 (Fla. Dist. Ct. App. 1996).[15]  Plaintiffs' Missouri and Florida claims, SAC ¶ 187(e), (n), must therefore be dismissed.  Recognizing this, Plaintiff Lutz previously withdrew these claims (Dkt. 80 at 15), yet inexplicably failed to omit them from the SAC.  Additionally, several states followed *Illinois Brick* until they passed statutes permitting indirect claims, and thus claims under those states' antitrust laws that accrued before the passage of those statutes fail too.  SAC ¶ 187(c), (k), (q), (s), (v), (w), (y); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *21–22 (E.D. Tenn. 2015) (Rhode Island - 2013); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, at *7 (N.D. Cal. Sept. 22, 2021) (Maryland - 2017); *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 842 (E.D. Mich. 2018) (New Hampshire - 2008 and Utah - 2006); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 681 (S.D. Fla. 2004) (New York - 1998); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 759 (E.D. Pa. 2014) (Oregon – 2010); *Miami Prod. & Chem. Co. v. Olin Corp.*, 2022 WL 3701159, at *5 (W.D.N.Y. Aug. 26, 2022) (Connecticut – 2018).

---

[15] While *Mack* held that indirect purchaser claims can be asserted under Florida's consumer-protection law, the Florida Supreme Court has not addressed this issue, and other courts have correctly rejected attempts to do "the proverbial 'end run'" around *Illinois Brick*.  *E.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 2002 WL 35651679, at *3–4 (S.D. Fla. Sept. 12, 2002) (rejecting attempt under New Jersey's consumer-protection law); *Abbott Lab'ys, Inc. (Ross Lab'ys Div.) v. Segura*, 907 S.W.2d 503, 507 (Tex. 1995).

***Several claims fail for lack of pre-suit notice.***   Courts routinely dismiss claims under the antitrust laws of Arizona, Hawaii, Nevada, Rhode Island, and Utah where a plaintiff fails to allege compliance with pre-suit notice requirements.   *See In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 412–13, 416 (D.N.J. 2018) (Arizona, Hawaii, Nevada, Utah); *see also* R.I. Gen. Laws Ann. § 6-36-21 (Rhode Island).   As there are no such allegations in Plaintiffs' SAC, these claims should be dismissed.   SAC ¶ 187(a), (f), (p), (w), (y).

### 6.     Certain Consumer-Protection Claims Must Also Be Dismissed

***Illinois Brick*** *bars Plaintiffs' Missouri and New Jersey consumer-protection claims.* Because Missouri and New Jersey follow *Illinois Brick*, courts have held that allowing indirect purchasers to refashion antitrust claims into claims under those states' consumer-protection laws would impermissibly allow an end run around *Illinois Brick*.   *See In re Suboxone Antitrust Litig.*, 64 F. Supp. 3d 665, 701–02 (E.D. Pa. 2014) (Missouri); *Wilson v. Gen. Motors Corp.*, 921 A.2d 414, 417 (N.J. 2007) (New Jersey).   Thus, these claims should be dismissed.   SAC ¶ 193(k), (p).

***Plaintiffs' claim under California's consumer-protection statute fails because damages are not recoverable under the statute.***   Plaintiffs seek money damages under California's Unfair Competition Law, but "a UCL action [pursuant to § 17200] is equitable in nature; damages cannot be recovered."   *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003).   Plaintiffs' UCL claim must therefore be dismissed.   SAC ¶¶ 193(b), 194.

***Certain consumer-protection statutes do not extend to pure antitrust violations.***   Pure antitrust violations are not actionable under the consumer-protection laws of Colorado, Kansas, Oregon, and Tennessee.   *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *49–50 (S.D.N.Y. Dec. 26, 2018) (Tennessee); *In re Restasis Antitrust Litig.*, 355 F. Supp. 3d 145, 159–60 (E.D.N.Y. 2018) (Colorado); *Batton*, 2024 WL 689989, at *9 (Kansas); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072,

1115–17 (N.D. Cal. 2007) (Oregon).  Here, Plaintiffs do not allege any wrongful conduct apart from alleged anticompetitive conduct.  And notably, Plaintiff Lutz previously voluntarily dismissed his Tennessee consumer-protection claim in recognition of this limitation (Dkt. 80 at 20 n.11) yet inexplicably reasserted it in the SAC.  SAC ¶ 193(w).  That claim—as well as Plaintiffs' claims under Colorado, Kansas, and Oregon law, *id.* ¶ 193(c), (h), (s)—must be dismissed.

        ***Some consumer-protection statutes require reliance or deception targeted at consumers, which Plaintiffs do not allege.***  The consumer-protection laws of Arizona, Kansas, Michigan, New York, Rhode Island, Pennsylvania, and Virginia require fraudulent or deceptive dealings with consumers.  *See Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. App. Div. 2004) (Arizona); *Cornelison v. Denison State Bank*, 315 P.3d 278, at *11 (Kan. Ct. App. 2014) (Kansas); *Mayhall v. A.H. Pond Co.*, 341 N.W.2d 268, 270 (Mich. App. 1983) (Michigan); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004) (New York); *Restasis*, 355 F. Supp. 3d at 160–61 (Pennsylvania); *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009) (Rhode Island); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 784 (D. Minn. 2020) (Virginia).  There are no such allegations in the SAC.  That is, although one of the NAR Rules allegedly "permit[s] buyer-agents to misrepresent to buyers that a buyer agent's services are free," SAC ¶ 9.d, Plaintiffs do not actually allege that any such misrepresentations were made.  This is fatal.  *See Batton*, 2024 WL 689989, at *9 (dismissing consumer-protection claim because "[i]t does not follow from the fact that buyer-brokers were permitted to make this arguable misrepresentation that such misrepresentation must have been made to Plaintiffs here").  Accordingly, these claims must be dismissed.  SAC ¶ 193(a), (h), (j), (q), (u), (t), (x).

**D.**    **Plaintiffs' Unjust Enrichment Claim Fails**

        This claim fails at the outset because Plaintiffs do not identify the specific state unjust enrichment claims they are asserting.  SAC ¶¶ 195–200 (no state(s) identified).  This defect

warrants dismissal.  For instance, *Terazosin* dismissed an unjust enrichment claim that, like Plaintiffs' claim here, did not clarify which state law(s) the claim arose under, describing the claim as "very poorly pled."  160 F. Supp. 2d at 1379; *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 149 (E.D. Pa. 2009) ("[B]ecause the plaintiffs' third count for unjust enrichment refers to no law or jurisdiction, the Court will dismiss . . . that count."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1124 (N.D. Cal. 2008) (similar).  But even assuming the SAC did adequately specify the state laws pursuant to which Plaintiffs' unjust enrichment claims arise, which it does not, many of these claims would still fail for various reasons.

> ***Plaintiffs do not allege viable unjust enrichment claims under the laws of states that require a plaintiff to confer a direct benefit on, or have a direct relationship with, the defendant***.  Florida, Kansas, Maine, Michigan, New York, North Carolina, North Dakota, and Utah limit unjust enrichment claims to those plaintiffs who have conferred a direct benefit on, or have a direct relationship with, the defendant.  *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (Florida); *In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259, at *2–3 (N.D. Ill. Apr. 1, 2010) (Kansas, Maine, Michigan, North Carolina, and Utah); *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 146 (S.D.N.Y. 2016) (New York); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 545–46 & n.15 (E.D. Pa. 2010) (North Carolina); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *18 (D. Mass. Sept. 16, 2015) (Maine and North Dakota).

There are no allegations in the SAC that satisfy this requirement.  As an initial matter, with just one exception discussed below, the SAC does not allege that any of the named Plaintiffs whose claims arise under Florida, Kansas, Maine, Michigan, New York, North Carolina, or Utah law had any direct dealings with Defendants or their affiliates.  That is, the SAC merely alleges that these

Plaintiffs purchased a home (or homes) in the relevant state "using a buyer-agent," but it is notably silent as to whether these agents were affiliated with either Douglas Elliman or HomeServices. SAC ¶¶ 22 (Davis), 23 (Adams), 26 (Bolton), 41 (Kim), 28 (Brace), 29 (Braun), 36 (Fairbourn), 40 (James), 49 (Shankus), 52 (Wohl).  These Plaintiffs' unjust enrichment claims therefore fail.

Lutz is the only Plaintiff from one of these states who alleges any direct dealings with an entity that is affiliated with any Defendant, *id.* ¶ 21, but his unjust enrichment claim fails as well. As an initial matter, he does not allege that he had *any* dealings with Douglas Elliman or its affiliates.  Regarding HomeServices, he alleges that he used a buyer broker affiliated with a HomeServices *franchise*, SAC ¶ 21, that "buyer-agents governed by NAR are . . . paid through the seller-broker," *id.* ¶ 114, and that buyer-agent commissions are, in turn, "baked into" the purchase price, *id.* ¶ 94.  Any supposed benefit Lutz conferred on HomeServices is therefore indirect at best, which is insufficient under Florida law.  *See e.g.*, *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (affirming dismissal of Florida unjust enrichment claim because "even if [the defendant] ultimately retained a portion of the [plaintiffs'] membership payments," the plaintiffs alleged they paid "membership fees to [a separate entity], who in turn paid premiums" to the defendant and thus the benefit conferred was "(at best) . . . indirect"); *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 2022 WL 736250, at *23 (D. Del. Mar. 11, 2022) (dismissing Florida claim brought by indirect purchasers); *cf. Peterson v. Aaron's, Inc.*, 2015 WL 5479877, at *2 (N.D. Ga. Sept. 16, 2015) (Georgia unjust enrichment claim failed because the plaintiffs "provided no direct benefit" to a franchisor; rather, "[a]ny payments that [the franchisor] received from [its franchisee] were determined entirely by the franchisee agreement").

**Illinois Brick *bars certain of Plaintiffs' unjust enrichment claims.*  As courts in this district (and elsewhere) have held, indirect purchasers may not recast antitrust claims that would**

be barred by *Illinois Brick* as ones that sound in unjust enrichment.  *See Terazosin*, 160 F. Supp. 2d at 1380 (dismissing with prejudice unjust enrichment claims brought under the laws of states that follow *Illinois Brick*); *In re Niaspan*, 42 F. Supp. 3d at 763 ("join[ing] the majority of courts in concluding" that indirect purchasers cannot circumvent *Illinois Brick* via unjust enrichment claims).  For this reason, Plaintiffs' Colorado, Connecticut, Maryland, Massachusetts, Missouri, Montana, New Jersey, Pennsylvania, South Carolina, and Virginia unjust enrichment claims must be dismissed.  *See In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 381 (D.R.I. 2019) (New Jersey, Pennsylvania, Virginia); *In re Niaspan*, 42 F. Supp. 3d at 763–65 (Colorado, Maryland); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 704 (E.D. Pa. 2014) (Massachusetts); *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1088–90 & n.49 (N.D. Cal. 2014) (Colorado, Connecticut, Missouri, Montana, New Jersey, Pennsylvania, South Carolina, Virginia).

***Certain unjust enrichment claims fail because Plaintiffs affirmatively allege an adequate remedy at law.***  Under Hawaii and Massachusetts law, a plaintiff cannot bring "a claim for unjust enrichment where an adequate remedy at law exists."  *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 419 (S.D.N.Y. 2017) (Massachusetts); *see also AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008) (Hawaii).  Here, Plaintiffs affirmatively allege they have an adequate damages remedy under the antitrust and consumer-protection statutes of dozens of states.  SAC ¶¶ 186–88, 193–94.  Thus, these claims fail.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

## EXHIBIT A: STATUTES OF LIMITATIONS AND THE NAMED PLAINTIFFS' TIME-BARRED CLAIMS

### ANTITRUST CLAIMS

| 3 Year Limitations Period |
|---|
| **Kansas** (Kan. Stat. Ann. § 60-512(2)); **Tennessee** (Tenn. Code. Ann. § 28-3-105; *State ex rel. Leech v. Levi Strauss & Co.*, 1980 WL 4696, at *3 (Tenn. Ch. Sept. 25, 1980)). |
| **4 Year Limitations Period** |
| **Arizona** (Ariz. Rev. Stat. § 44-1410); **California** (Cal. Bus. & Prof. Code § 16750.1); **Connecticut** (Conn. Gen. Stat. § 35-40); **D.C.** (D.C. Code § 28-4511(b)); **Florida** (Fla. Stat. 542.26(1)); **Hawaii** (HRS § 480-24); **Illinois** (740 ILCS 10/7(2), (4)); **Iowa** (Iowa Code § 553.16); **Maryland** (Md. Code Ann. § 11-209(d)(1)); **Michigan** (Mich. Comp. Laws § 445.781); **Minnesota** (Minn. Stat. § 325D.64); **Missouri** (Mo. Rev. Stat. § 416.131); **Nebraska** (Neb. Rev. Stat. § 25-212); **Nevada** (Nev. Rev. Stat. § 598A.220); **New Hampshire** (N.H. Rev. Stat. Ann. § 356:12); **New Mexico** (N.M. Stat. Ann. § 57-1-12); **New York** (N.Y. Gen. Bus. Law § 340(5)); **North Carolina** (N.C. Gen. Stat. § 75-16.2); **North Dakota** (N.D. Cent. Code § § 51-08.1-10(2)); **Oregon** (Or. Rev. Stat. § 646.800); **Rhode Island** (R.I. Gen. Laws Ann. § 6-36-23); **Utah** (Utah Code Ann. § 76-10-3117); **West Virginia** (W. Va. Code § 47-18-11) |
| **6 Year Limitations Period** |
| **Maine** (14 M.R.S.A. § 752); **Vermont** (Vt. Stat. tit. 12, § 511);  **Wisconsin** (Wis. Stat. § 133.18(2)) |
| **Named Plaintiffs' Time-Barred Antitrust Claims** |
| **Batton** (SAC ¶ 24 – 2020 Tennessee purchase); **Brace** (SAC ¶ 28 – 2020 Kansas purchase); **Kim** (SAC ¶ 41 – 2018 Florida purchase); **Shankus** (SAC ¶ 49 – various Michigan purchases as early as 2018); **Strine** (SAC ¶ 50 – 2019 Oregon purchase) |

### CONSUMER-PROTECTION CLAIMS

| 1 Year Limitations Period |
|---|
| **Arizona** (Ariz. Rev. Stat. § 12-541); **Oregon** (Or. Rev. Stat. § 646.638(6)); **Tennessee** (Tenn. Code. Ann. § 47-18-110) |
| **2 Year Limitations Period** |
| **Iowa** (Iowa Code § 714H.5(5)); **Montana** (Mont. Code Ann. § 27-2-211); **Virginia** (Va. Code Ann. § 59.1-204.1(A)) |
| **3 Year Limitations Period** |
| **Colorado** (Colo. Rev. Stat. § 6-1-115); **Connecticut** (Conn. Gen. Stat. 42-110g(f)); **D.C.** (D.C. Code § 12-301); **Kansas** (Kan. Stat. Ann. § 60-512); **New Hampshire** (N.H. Rev. Stat. Ann. § 358-A:3); **New York** (N.Y. C.P.L.R. 214); **South Carolina** (S.C. Code Ann. § 39-5-150); **Wisconsin** (Wis. Stat. § 100.18) |
| **4 Year Limitations Period** |
| **California** (Cal. Bus. & Prof. Code § 17208); **Florida** (Fla. Stat. § 95.11(3)(e)); **Massachusetts** (Mass. Gen. Laws ch. 260, § 5A); **Nebraska** (Neb. Rev. Stat. § 59-1612); **Nevada** (Nev. Rev. Stat. § 11.190(1)(b)); **North Carolina** (N.C. Gen. Stat. § 75-16.2) |

| 5 Year Limitations Period |
|---|
| **Missouri** (Mo. Rev. Stat. § 516.120(2)) |

| 6 Year Limitations Period |
|---|
| **Michigan** (Mich. Comp. Laws § 445.911(8)); **New Jersey** (N.J. Rev. Stat. § 2A:14-1); **Pennsylvania** (42 Pa. Cons. Stat. § 5527) |

| 10 Year Limitations Period |
|---|
| **Rhode Island** (R.I. Gen. Laws Ann. § 9-1-13) |

| Named Plaintiffs' Time-Barred Consumer-Protection Claims |
|---|
| **Batton** (SAC ¶ 24 – 2020 Tennessee purchase); **Putt** (SAC ¶ 45 – 2020 Arizona purchase); **Strine** (SAC ¶ 50 – 2019 Oregon purchase); **Clark** (SAC ¶ 31 – 2021 Iowa purchase); **Sannar** (SAC ¶ 46 – 2020 Virginia purchase); **Sayles** (SAC ¶ 47 – 2019 South Carolina purchase); **Kim** (SAC ¶ 41 – 2018 Florida purchase) |

## UNJUST ENRICHMENT CLAIMS

| 3 Year Limitations Period |
|---|
| **California** (Cal. Civ. Proc. Code § 338(d)); **Colorado** (Colo. Rev. Stat. § 13-80-101(1)(a)); **Kansas** (Kan. Stat. Ann. § 60-512); **Maryland** (Md. Code Ann. § 5-101); **Montana** (Mont. Code Ann. § 27-2-202(3)); **New Hampshire** (N.H. Rev. Stat. Ann. 508:4(I)); **New York** (N.Y. C.P.L.R. 214(3)); **North Carolina** (N.C. Gen. Stat. § 1-52(1)); **South Carolina** (S.C. Code Ann. § 15-3-530(1)); **Tennessee** (Tenn Code Ann. § 28-3-105); **Virginia** (Va. Code Ann. § 8.01-246(4));**Washington, D.C.** (D.C. Code § 12-301(7)) |

| 4 Year Limitations Period |
|---|
| **Arizona** (Ariz. Rev. Stat. Ann. § 12-550); **Florida** (Fla. Stat. § 95.11(3)(j)); **Nebraska** (Neb. Rev. Stat. § 25-212); **Nevada** (Nev. Rev. Stat. § 11.190(2)(c)); **New Mexico** (N.M. Stat. Ann. § 37-1-4); **Pennsylvania** (42 Pa. Cons. Stat. Ann. § 5525(a)(4)); **Utah** (Utah Code Ann. § 78B-2-307(4)) |

| 5 Year Limitations Period |
|---|
| **Illinois** (735 Ill. Comp. Stat. 5/13-205); **Iowa** (Iowa Code § 614.1(4)); **Missouri** (Mo. Rev. Stat. § 516.120(1)) |

| 6 Year Limitations Period |
|---|
| **Connecticut** (Conn. Gen. Stat. § 52–576(a))**; Hawaii** (Hawaiʻi Rev. Stat. § 657-1(1))**; Maine** (Me. Stat. tit. 14, § 752)**; Massachussetts** (Mass. Gen. Laws ch. 260, § 2); **Michigan** (Mich. Comp. Laws § 600.5813)**; Minnesota** (Minn. Stat. § 541.05, subd. 1(1))**; New Jersey** (N.J. Stat. Ann. § 2A:14-1); **North Dakota** (N.D. Cent. Code § 28-1-16); **Oregon** (Or. Rev. Stat. § 12.080(1)); **Vermont** (Vt. Stat. Ann. tit. 12, § 511)**; Wisconsin** (Wis. Stat. § 893.4) |

| 10+ Year Limitations Period |
|---|
| **Rhode Island** (R.I. Gen. Laws Ann. § 9-1-13) (10 years); **West Virginia** (*Dunn v. Rockwell*, 225 W. Va. 43, 55, 689 S.E.2d 255, 267 (2009) (no statute of limitations). |

| Named Plaintiffs' Time-Barred Unjust-Enrichment Claims |
|---|
| **Batton** (SAC ¶ 24 – 2020 Tennessee purchase); **Brace** (SAC ¶ 28 – 2020 Kansas purchase); **Kim** (SAC ¶ 41 – 2018 Florida purchase); **Sannar** (SAC ¶ 46 – 2020 Virginia purchase); **Sayles** (SAC ¶ 47 – 2019 South Carolina purchase) |

Dated:  December 23, 2024

Respectfully submitted,

By: */s/ Christopher D. Dusseault*
Christopher D. Dusseault *(pro hac vice)*
Sarah M. Kushner *(pro hac vice)*
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:     (213) 229-7000
Email: cdusseault@gibsondunn.com
Email: smkushner@gibsondunn.com

By: */s/ Alejandro J. Paz*
**AKERMAN LLP**
Alexandra M. Mora, Esq.
Florida Bar Number: 52368
Primary E-mail:
alexandra.mora@akerman.com
Secondary E-mail:
marylin.herrera@akerman.com
Alejandro J. Paz, Esq.
Florida Bar Number: 1011728
Primary E-mail:
alejandro.paz@akerman.com
Secondary E-mail:
marylin.herrera@akerman.com
Three Brickell City Centre
98 S.E. 7th St., Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Facsimile: (305) 374-5095

*Attorneys for Defendants HomeServices of*
*America, Inc., BHH Affiliates, LLC, and*
*HSF Affiliates LLC*

By: */s/ Edward M. Spiro*
Robert J. Anello *(pro hac vice)*
Edward M. Spiro *(pro hac vice)*
**MORVILLO ABRAMOWITZ GRAND**
**IASON & ANELLO P.C.**
565 Fifth Ave.
New York, NY 10017
Phone: (212) 856-9600
Facsimile: (212) 856-9494

Email: ranello@maglaw.com
Email: espiro@maglaw.com


By: */s/ Phillip M. Soven*
Michael N. Kreitzer
Florida Bar No. 705561
Phillip M. Soven
Florida Bar No. 1035504
**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: kreitzerm@gtlaw.com
Email: phil.soven@gtlaw.com
Email: moisem@gtlaw.com
Email: flservice@gtlaw.com


*Attorneys for Defendant Douglas Elliman Inc.*

## **REQUEST FOR HEARING**

In accordance with Local Rule 7.1(b)(2), Defendants respectfully request that the Court hear oral argument on Defendants' Motion to Dismiss.  This case is a complex antitrust class action involving a myriad of legal issues and claims, including claims brought under the laws of dozens of different jurisdictions.  A hearing would permit the parties to address the significant Article III standing issue presented by certain of Plaintiffs' claims, as well as various issues unique to the specific state laws under which Plaintiffs have sued.  Ultimately, Defendants believe oral argument would further the Court's understanding of the grounds for dismissal set forth in the Motion, and will enable Defendants to address any questions and/or concerns the Court may have prior to ruling.  Defendants submit that thirty (30) minutes per side, for a total of sixty (60) minutes, is sufficient for the parties to argue the issues presented.

<u>**CERTIFICATE OF SERVICE**</u>

I, Alejandro J. Paz, hereby certify that, on December 23, 2024, a true and correct copy of the foregoing was filed electronically using the CM/ECF system, which will provide notice to all counsel of record.

By: *<u>/s/ Alejandro J. Paz</u>*
Alejandro J. Paz