## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JAMES LUTZ, SCOTT DAVIS, NIALL ADAMS, MYA BATTON, THEODORE BISBICOS, AARON BOLTON, JASON BOOMSMA, MICHAEL BRACE, THOMAS BRAUN, TIMOTHY CARUSO, SABRINA CLARK, COLLEEN DUVAL, JAMES EDWARDS, RYAN EISNER, STEVEN EWALD, CARSON FAIRBOURN, JOHN GARRETT, BRENNON GROVES, DARIN HENDRY, ANNA JAMES, DO YEON IRENE KIM, JORDAN KULLMANN, JAMES MULLIS, DANIEL PARSONS, JOSHUA PUTT, JOHN SANNAR, ROBERT SAYLES, BEN SHADLE, LISA SHANKUS, BRENT STRINE, CHRISTINE VAN WOERKON, and SHERRIE WOHL, individually and on behalf of all others similarly situated,

          Plaintiff,

    v.

HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, and DOUGLAS ELLIMAN INC.,

          Defendants.

Case No. 4:24-cv-10040-KMM

### JOINT MOTION TO AMEND THE CASE SCHEDULE

Plaintiffs, Defendants HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC, and Defendant Douglas Elliman Inc. respectfully ask the Court to extend the deadlines set forth in the operative scheduling order (Doc. 75). This is the parties' first motion to amend the case schedule.

### BACKGROUND

Plaintiffs brought this action on behalf of homebuyers alleging antitrust violations

stemming from certain rules set by the National Association of Realtors ("NAR") after three other cases were brought on behalf of home sellers based on the same NAR rules: *Moehrl et al. v. National Association of Realtors et. al.*, No. 1:19-cv-01610 (N.D. Ill.); *Sitzer et al. v. National Association of Realtors et al.*, No. 4:19-cv-00332 (W.D. Mo.) (formerly *Burnett et al. v. National Association of Realtors et al.*); and *Nosalek et al. v. MLS Prop. Inf. Net., et al.*, 1:20-cv-12244 (D. Mass.). The *Moehrl* case involved 20 Multiple Listing Services ("MLSs") throughout the country, the *Sitzer* case involved seven MLSs in Missouri, and the *Nosalek* case involved one MLS in Massachusetts. By contrast, the instant case was brought on behalf of homebuyers alleging misconduct with respect to most of the MLSs across the nation, and Plaintiffs' theory of harm is based on the pass-through of anticompetitive commissions to homebuyers through higher home prices. *See* Ewing Decl. ¶ 2.

On August 7, 2024, the parties jointly proposed a schedule to govern discovery, pretrial proceedings, and trial that contemplated a lengthier timeline than the "complex" case management track dictated by the Local Rules. *See* Docs. 62 & 63; L.R. 16.1(a). The parties explained that the instant case is even more complex than those anticipated by the "Complex Track", specifically because antitrust cases are notoriously complex and involve a greater volume of evidence than most cases, and because Plaintiffs' claims require discovery from a large assortment of third parties in order to obtain data about home transactions throughout the country relevant to their claims and experts' analyses. Doc. 63 at 2-3. The parties explained that the home-seller cases, which were less geographically expansive and complex than this case, took approximately 4 years to reach trial. Doc. 63 at 4. Thus, the parties requested class certification briefing and expert disclosures to begin in October 2025, merits expert disclosures to begin in February 2026, summary judgment to be due in June 2026, and trial in October 2026.

Doc. 62 at 5.

The Court, in turn, entered its own schedule on September 27, 2024, setting forth the current case deadlines, with the first deadline being July 24, 2025 for expert disclosures. *See* Doc. 75.

In the interim, the parties have been vigorously working to complete discovery as quickly as possible. Plaintiffs have served their entire set of Requests for Productions on Defendants. Ewing Decl. ¶ 3. The HomeServices Defendants have produced over 400,000 documents, and Plaintiffs and the HomeServices Defendants are currently meeting and conferring over their document requests served thus far. Ewing Decl. ¶ 4. HomeServices has also collected and produced nearly 7 terabytes of data, which Plaintiffs' experts are now working with to organize, understand, and identify any deficiencies. Ewing Decl. ¶ 5. Plaintiffs and Douglas Elliman have met and conferred multiple times over Plaintiffs' document requests, with the parties now having agreed upon a production protocol. Ewing Decl. ¶ 6. Douglas Elliman anticipates that it will be able to complete its document production in August-September 2025. Ewing Decl. ¶ 7. Plaintiffs further obtained the deposition transcripts from the HomeServices defendants in the seller cases following extensive meet and confers and a motion to compel in January 2025. Doc. 99. Plaintiffs then filed a motion to compel the production of other deposition transcripts from defendants in other cases, but withdrew that motion upon reaching agreements with those parties to produce the majority of the materials sought. Defendants also served document demands, Interrogatories, and Request for Admission on the 32 named plaintiffs at the end of May 2025. The parties will meet and confer over those requests, following which it will take 2-3 months for Plaintiffs to review and produce the agreed upon documents. Ewing Decl. ¶ 8. Despite the parties' best efforts to negotiate and complete discovery as quickly as possible, each of the

parties still has at least several months of document productions ahead.

Another pressing need for more time is the need to obtain from numerous third parties through Rule 45 subpoenas data that Defendants do not maintain about characteristics of homes sold and bought (e.g., closing costs, square footage, number of rooms, and offered broker commissions) that will likely be used in an economic model to ascertain the extent of alleged anticompetitive broker commissions and their alleged impact on home prices paid by buyers. Ewing Decl. ¶ 9. Plaintiffs discovered in January 2025 that the corporate brokerage defendants do not maintain the necessary home characteristic information. Ewing Decl. ¶ 10. To obtain this information, Plaintiffs began serving third-party subpoenas on February 20, 2025 and negotiating with certain third-party data vendors. Ewing Decl. ¶ 11. Plaintiffs have recently secured a large database of property information for homes sold, but it does not contain the necessary information about offered broker commissions that must come directly from each of the Multiple Listing Services at issue. Ewing Decl. ¶ 12. Subpoenas have since been served on the owners of the websites Zillow.com and Realtor.com, as well as on 59 different MLSs and/or their data vendors. Ewing Decl. ¶ 13. The subpoenas request listing data, the subpoenaed party's policies and procedures, and the identity of any individuals responsible for implementing or maintaining those policies and procedures. Ewing Decl. ¶ 14.

Plaintiffs' counsel has since been meeting and conferring with counsel for the various subpoenaed MLSs. Ewing Decl. ¶ 15. Through their meet and confers over the past two months, Plaintiffs have proposed various compromises to limit the data sought, and the vast majority of the MLSs have agreed to produce the requested data. Ewing Decl. ¶ 16. Defendants have also served their own subpoenas on these MLSs in order to ensure they obtain any data fields needed for their analysis, and the parties have been meeting and conferring to develop a standardized list

of data fields that would satisfy both subpoenas before the MLSs make their production. Ewing Decl. ¶ 17. The parties promptly reached agreement on those data fields by June 9, 2025, and the MLSs are presently working to prepare and produce the data. Ewing Decl. ¶ 18.

Because of the quantity of the data and the need to configure it before producing it to the parties (MLSs removed their broker commission fields last year as a result of settlements in related cases), most MLSs will not be able to produce their data until at least the end of June 2025. Ewing Decl. ¶ 19. Because those MLSs systems are structured in different ways with different fields, Plaintiffs' experts will then need to standardize this data received from multiple databases (e.g., matching fields with different names, identifying errors, combining the databases, etc.) and aggregate it before being able to provide their expert opinions relevant to class certification. Ewing Decl. ¶ 20. Plaintiffs have been informed that work will take approximately four months. Ewing Decl. ¶ 23. Upon receiving Plaintiffs' expert reports, Defendants will also need appropriate time to analyze Plaintiffs' complex econometric analyses and data concerning the millions of home transactions on which it will be based.

## ARGUMENT

The parties demonstrate "good cause" under Rule 16 of the Federal Rules of Civil Procedure to amend the current case schedule because they have been diligent in obtaining and producing substantial discovery, because the requested timeframe is appropriate for a highly complex case such as this, because additional time is needed for the parties to complete negotiations over discovery and complete their document productions, because additional time is needed to obtain, aggregate, standardize, and utilize the data required from numerous third parties, and because no party will be prejudiced by an extension of the schedule. *See Damian v. Melton, et al.*, No. 1:22-cv-22606, 2024 WL 3650418 (S.D. Fla. Mar. 28, 2024) (good cause to

modify scheduling order satisfied when "the schedule cannot be met despite the diligence of the party seeking amendment."). Here, the record establishes that the parties have been diligent. In 8 months' time, the parties have served their complete set of document requests, produced over 400,000 documents, presented and resolved two motions to compel leading to the production of more than 80 deposition transcripts of witnesses from HomeServices and its alleged co-conspirators, and Plaintiffs have negotiated and obtained a large dataset of home purchase information and secured agreements from over 50 MLSs to promptly produce information pursuant to Rule 45 subpoenas. *See id.*, at *1 (granting motion to extend because "the Parties have been engaged in discovery since [the scheduling order], which has included a number of hearings before the Magistrate Judges that have been assigned to handle discovery disputes in this matter" and the production of "nearly 300,000 pages of new documents.").

Despite the parties' diligence in resolving discovery disputes and producing requested documents, all of the parties have additional productions to make over the next few months that must also be analyzed by the parties before fact and expert depositions can begin.

Another obstacle that remains is the parties' need to obtain information from third-party MLSs, for Plaintiffs particularly with respect to the rates of broker commissions on listed properties, in order to assess the impact of anti-competitive broker commissions on the prices paid by homebuyers. Plaintiffs were diligent in obtaining this information. As soon as they discovered in January 2025 that Defendants do not maintain MLS listings or offered broker commissions for non-Defendant properties, Plaintiffs immediately identified and purchased a dataset from a commercial vendor for part of this information while serving subpoenas on aggregators of MLS listings and individual MLSs beginning in February 2025 to obtain the remainder. Plaintiffs then diligently met with the MLSs in March and April 2025 to understand

6

their data systems, limitations, and burdens, so they could craft a proposed compromise to which

the vast majority of the MLSs have agreed, thereby avoiding motion practice and delays based

on resolving those motions. Ewing Decl. ¶ 21. Through no lack of diligence on the parties'

behalf, it has taken and will take the MLSs several weeks to organize and produce the data,

which should be largely complete by at least the end of June 2025. Ewing Decl. ¶ 22. Because

those MLSs systems are structured in different ways with different fields, Plaintiffs will then

require four months to organize it, standardize it, analyze it, and prepare expert reports upon it.

Ewing Decl. ¶ 23. Defendants will also need appropriate time to analyze Plaintiffs' complex

econometric analyses and data concerning the millions of home transactions on which it will be

based.

Given the nationwide scope of Plaintiffs' claims, the involvement of numerous alleged

co-conspirators, the complex economic analysis involved in measuring the effect of commissions

on home prices, and the need to obtain and standardize data from over 50 third parties, the

amount of discovery Plaintiffs have obtained and that others have agreed to produce soon

(hundreds of thousands of documents, scores of deposition transcripts, and multiple large

databases from both Defendants and third parties) was only possible because the parties have

been diligent and extremely busy from the moment the scheduling order was entered. The

extension requested herein is only necessary to obtain information that the parties could not have

obtained earlier despite their diligence, and it will result in a fully developed record and a fair

trial. *See id.*, at *2 ("Thus, the Court believes that amending the scheduling order in this matter is

in the best interest of the Parties, and will provide for a fully developed record, and thus, a fair

trial"). Notably, this is the parties' first motion to amend the case schedule.

Additionally, the parties' proposed amended case schedule includes staggered deadlines

for this complex antitrust case. These staggered deadlines will promote efficiency by reducing

the need to seek individualized briefing schedules on particular issues, thereby preserving

judicial resources.

As a result, the parties propose amending the case schedule (Doc. 75) as follows:

- **February 6, 2026:** Plaintiffs' deadline to serve class expert disclosures and reports and to file motion for class certification;

- **April 4, 2026:** Defendants' deadline to serve class cert expert reports, opposition to Plaintiffs' motion for class certification, and *Daubert* motions in response to Plaintiffs' class certification experts;

- **June 5, 2026:** Plaintiffs' deadline to submit reply in support of motion for class certification, any rebuttal expert reports, and *Daubert* motions in response to Defendants' class certification experts;

- **June 12, 2026:** Opening Rule 26(a)(2) merits expert disclosures deadline;

- **August 14, 2026:** Rebuttal Rule 26(a)(2) merits expert disclosures and report deadline;

- **September 18, 2026:** Close of discovery;

- **October 2, 2026:** Parties' deadline for filing summary judgment and *Daubert* motions on merits experts;

- **December 4, 2026**: Parties' deadline for filing responses to summary judgment and *Daubert* motions on merits experts;

- **January 8, 2027:** Parties' deadline to submit replies in support of summary judgment and *Daubert* motions on merits experts;

- **January 15, 2027:** Deadline for Motions in Limine;

- **January 29, 2027:** Parties to exchange exhibit lists, witness lists, and deposition designations;

- **January 29, 2027:** Parties to submit joint pre-trial order, proposed jury instructions, proposed findings of fact and conclusions of law;

- **February 19, 2027:** Pretrial Conference;

- **March 1, 2027:** Trial.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court enter an order amending the

case schedule as proposed above.

Respectfully submitted,

Dated: June 24, 2025

/s/ *Randall P. Ewing, Jr.*
Randall P. Ewing, Jr. (Bar No. 76879)
George A. Zelcs
Ryan Z. Cortazar
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
rewing@koreintillery.com
gzelcs@koreintillery.com
rcortazar@koreintillery.com

Steven M. Berezney
Michael E. Klenov
Carol O'Keefe
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
sberezney@koreintillery.com
mklenov@koreintillery.com
cokeefe@koreintillery.com

Vincent Briganti
Christian Levis
Noelle Forde
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
nforde@lowey.com

*Attorneys for Plaintiffs and the Proposed Class*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2025, a true and correct copy of the foregoing was served

on all counsel of record by electronic filing.


/s/ *Randall P. Ewing, Jr.*
Randall P. Ewing, Jr.