UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 4:24-cv-10040-KMM

JAMES LUTZ, *et al.*,

    Plaintiffs,

v.

HOMESERVICES OF AMERICA, INC., *et al.*,

    Defendants.
_____/

# ORDER

THIS CAUSE came before the Court upon Defendants HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates LLC (collectively, "HomeServices"), and Douglas Elliman Inc.'s ("Douglas Elliman," and together with HomeServices, "Defendants") Joint Motion to Dismiss Plaintiffs' Second Amended Complaint. ("Mot.") (ECF No. 98). Plaintiffs filed a response in opposition, ("Resp.") (ECF No. 101), and Defendants filed a reply. ("Reply") (ECF No. 105). The Motion is now ripe for review. As set forth below, the Motion is GRANTED.

**I.   BACKGROUND**[1]

On April 29, 2024, Plaintiff James Lutz filed the instant action on behalf of himself and a class of others similarly situated. *See* (ECF No. 1). Thereafter, with leave from this Court, Plaintiffs filed the SAC, asserting four causes of action against Defendants: (1) injunctive and equitable relief pursuant to 15 U.S.C. § 1 ("Count I"), (2) "violation of state antitrust statutes" ("Count II"), (3) "violation of state consumer protection statutes" ("Count III"), and (4) "unjust

---

[1] The following facts are taken from the Second Amended Complaint, ("SAC") (ECF No. 92) and are accepted as true for purposes of ruling on the Motion to Dismiss. *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022).

enrichment" ("Count IV"). *See generally* SAC; *see also* (ECF No. 87). Plaintiffs are home buyers who purchased their homes on a multiple listing service ("MLS") "affiliated with and governed by" the National Association of Realtors ("NAR"). *See* SAC at 1–2. HomeServices is "one of the nation's largest real estate brokerages and a member of NAR" and Douglas Elliman "is a publicly traded real estate brokerage company." *Id.* ¶¶ 53, 140.

In sum, this action stems from anticompetitive and unfair practices, which Plaintiffs allege resulted in inflated home prices. *See generally* SAC. Plaintiffs provide that "[l]icensed brokers are the only entities permitted by state law to be paid to represent buyers or sellers in a real estate transaction." *Id.* ¶ 68. "Brokers typically share and find information about houses for sale on an MLS." *Id.* ¶ 69. Plaintiffs further allege that:

> The standard practice in the residential real estate industry is to compensate brokers and agents with commissions that are calculated as a percentage of a home's sale price. Commissions are paid when the home sells. The seller-broker's compensation is specified in a listing agreement, a contract between the seller and the seller-broker that details the terms of the seller-broker services, such as requiring that property be listed on an MLS. The listing agreement specifies the total commission that a home seller will pay to the seller-broker, often with a portion of that amount earmarked to be paid to the buyer-agent in the event the buyer has a broker.

*Id.* ¶¶ 74–75.

"Plaintiff[s] bring[] this action against Defendants for agreeing, combining, and conspiring to impose, implement, and enforce anticompetitive restraints that reduce price competition in the markets for buyer-agent services in violation of federal antitrust law and state antitrust statutes, consumer protection laws, and common law." *Id.* ¶ 4. Plaintiffs further allege that "Defendants' unlawful, anticompetitive conduct causes America's home buyers to pay inflated commissions for broker services they misrepresent are free, to pay inflated prices for the homes they purchase, and to receive reduced quality broker services." *Id.* ¶ 5.

Courts across the country have addressed identical or similar issues to those raised in the

SAC. *See, e.g., Batton v. Nat'l Ass'n of Realtors*, No. 21-CV-00430, 2024 WL 689989, at *10 (N.D. Ill. Feb. 20, 2024); *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 309 (N.D. Ill. 2022); Class Action Complaint, *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB (W.D. Mo. April 29, 2019), (ECF No. 1); Class Action Complaint, *Davis v. Hanna Holdings, Inc.*, Case No. 2:24-cv-02374-WB (E.D. Pa. May 31, 2024), (ECF No. 1). Now before the Court is Defendants' Motion to Dismiss Plaintiffs' SAC. *See generally* Mot. Therein, Defendants argue, among other things, that: (1) Plaintiffs lack standing to pursue injunctive relief, (2) Plaintiffs' state law claims are untimely, (3) Plaintiffs' antitrust and consumer protection claims are impermissible shotgun pleadings, (4) Plaintiffs lack standing on certain state law antitrust claims, and (5) Plaintiffs' unjust enrichment claim should be dismissed. *Id.*

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The Court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting

3

*Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### III.  DISCUSSION

In the instant Motion, Defendants argue that dismissal of the SAC is appropriate because Plaintiffs lack standing to pursue injunctive relief and because the remaining counts of the SAC are impermissible shotgun pleadings.[2] *See generally* Mot. In response, Plaintiffs argue that they have both Article III and antitrust standing to pursue injunctive relief and that they have "spelled out the alleged anticompetitive conduct in detail and alleged how that conduct violated the identified laws." Resp. at 22. Plaintiffs further argue "[t]hat [the SAC] is more than sufficient to put Defendants on notice of the claims against them." *Id.* In reply, Defendants contend that Plaintiffs are not efficient enforcers of the antitrust laws, that "Plaintiffs' injunctive relief claim under the Sherman Act fails because home sellers have already pursued and secured the relief that Plaintiffs seek here[,]" and that "Plaintiffs' failure—after being granted leave to amend to resolve this issue—to separate into a different count each cause of action is sufficient to warrant dismissal on shotgun pleading grounds." Reply at 1–8. The Court will first address whether Plaintiffs have antitrust standing to pursue injunctive relief before turning to whether the SAC is an impermissible shotgun pleading.

#### A. Plaintiffs Lack Standing to Pursue Injunctive Relief

Defendants first argue that Plaintiffs lack standing to pursue injunctive relief. When analyzing antitrust standing, courts use a "two-prong test" that considers "the nexus between the

---

[2] While Defendants also argue that dismissal is appropriate on alternative grounds, such as timeliness, the Court declines to address these additional concerns raised in the Motion because the Court finds dismissal appropriate on the issues addressed herein.

antitrust violation and the plaintiff's harm and whether the harm alleged is of the type for which Congress provides a remedy." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1272–73 (11th Cir. 2015) (quoting *Sunbeam Television Corp. v. Nielsen Media Research, Inc.,* 711 F.3d 1264, 1271 (11th Cir. 2013)). First, courts consider whether "the plaintiff has suffered an antitrust injury." *Id.* In other words, the inquiry is whether plaintiff's injury is the type of injury that "the antitrust laws were intended to prevent[.]" *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489 (1977)). Second, "the plaintiff must 'be an efficient enforcer' of the antitrust laws." *Duty Free Americas*, 797 F.3d at 1272 (quoting *Sunbeam Television Corp.,* 711 F.3d at 1271). Where "only injunctive relief is sought," courts are "less concerned about whether the party would be the most efficient enforcer of the antitrust laws[.]" *Id.* (citations omitted). "Nevertheless, certain factors that the Court typically considers when determining whether a plaintiff is an efficient enforcer remain relevant to this Court's inquiry into whether injunctive relief would be appropriate." *Id.* (citing *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 111 n.6 (1986)). Notably, "a plaintiff who has suffered only indirect injury, or who alleges speculative damages, may lack antitrust standing to seek an injunction." *Id.*

As an initial matter, Plaintiffs are indirect purchasers. In considering whether relief under the Sherman Act is appropriate, courts consider "the nature of the injury," "the relationship between the alleged antitrust violation and the [] injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims of the alleged conspiracy[.]" *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 545 (1983). Here, although Plaintiffs were home buyers, under the alleged scheme, the inflated commissions were paid by home sellers, or deducted from the home

5

sale proceeds, rather than paid directly by Plaintiffs. SAC ¶¶ 74–75. Moreover, Plaintiffs' assertion that they "d[id] not necessarily realize that the broker commission is added to the purchase price of the home[,]" supports the conclusion that Plaintiffs were indirect purchasers. *Id.* ¶ 78; *see also* Reply at 3 ("Plaintiffs allege that home sellers agree to pay their seller agents a total commission, and under the NAR Rules, buyers never learn how much of the total commission their buyer agents are ultimately paid. The 'implication,' then, is that buyers 'will never be expressly or directly charged that commission.'") (citing SAC ¶¶ 77, 110; *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 309 (N.D. Ill. 2022)). Furthermore, Plaintiffs' belief that the realtor services were "free and not reflected in the home price," is immaterial where, even if that belief were justified, the commissions were paid for by the home sellers. SAC ¶ 78. Consequently, any injury to Plaintiffs from the alleged scheme was indirect.

Second, Plaintiffs are not efficient enforcers of the antitrust laws. Defendants note that "[n]ot only are Plaintiffs' claimed injuries indirect—as they acknowledge by not asserting a damages claim under the Sherman Act—but there are more directly injured plaintiffs (i.e., home sellers) pursuing *the same injunctive relief that Plaintiffs seek here*." Mot. at 1 (emphasis in original). Defendants further note that in parallel litigation, courts have determined that home buyers raising nearly identical concerns to those raised in the SAC, lack antitrust standing. *See* Mot. at 7 (citing Amended Consolidated Class Action Complaint, *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610-ARW (N.D. Ill. June 14, 2019), (ECF No. 84 at 67); Third Amended Complaint, *Sitzer*, No. 4:19-cv-00332-SRB, (ECF No. 759 at 53); Amended Consolidated Class Action Complaint, *Gibson v. Nat'l Ass'n of Realtors*, No. 4:23-cv-788-SRB (W.D. Mo. June 11, 2024), (ECF No. 232 at 88)). In response, Plaintiffs argue that "home-sellers' interests and harms are distinct from homebuyers'" Resp. at 7. In reply, Defendants argue:

> Plaintiffs discount the fact that home sellers are pursuing (and have obtained) much of the injunctive relief sought here, claiming that "[t]he HomeServices Defendants' settlement does not unambiguously eliminate the prohibition on modifying broker commissions as part of the home price negotiation." Resp. at 7. But that settlement flatly refutes this argument, as it expressly provides that HomeServices "will … require that any … company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable." Settlement Agreement ¶ 51.ii; *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB (W.D. Mo. Aug. 7, 2024), (ECF No. 1518-1) (emphasis added). In light of these disclosures, the fact that the settlement does not address "the lockbox policy" is immaterial, Resp. at 7, as both sets of plaintiffs "are attacking the entire system of real-estate broker compensation and both seek to enjoin the core NAR rules underpinning that system." *Batton*, 2024 WL 689989, at *10 (rejecting injunctive relief regarding ancillary NAR rules).

Reply at 1–2. Here, the Court finds that home sellers, as the directly affected individuals, are better suited to seek antitrust relief. Thus, as courts faced with the same question have found that the "existence of more direct victims" or more specifically home sellers, cause Plaintiffs to lack antitrust standing under the Sherman Act. *Associated Gen. Contractors of California*, 459 U.S. at 545; *see also Batton v. Nat'l Ass'n of Realtors*, No. 21-CV-00430, 2024 WL 689989, at *10 (N.D. Ill. Feb. 20, 2024) ("home sellers are best situated to seek injunctive relief"); *Leeder*, 601 F. Supp. 3d at 314 ("In sum, because Leeder's damages claims have been dismissed and the more directly injured home seller plaintiffs in *Moehrl* are seeking the same injunction as Leeder, the Court concludes that Leeder lacks antitrust standing to pursue his claim for injunctive relief.").

Moreover, Plaintiffs' request for injunctive relief is rendered moot by the NAR settlement. *See* Mot. at 2 ("Defendants and NAR have abandoned the challenged rules through settlements—making clear that these rules will not impact any future home purchases by Plaintiffs. This defect provides an independent basis for dismissal here."). A claim for injunctive relief is rendered moot when "'(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Reich v. Occupational Safety & Health Rev. Comm'n*, 102 F.3d

7

1200, 1201 (11th Cir. 1997) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)). The Court is unconvinced by Plaintiffs' argument that (1) home sellers and home buyers have disparate interests or (2) the Department of Justice's "concern" regarding the settlement entitles them to injunctive relief.  *See* Resp. at 7–8.  First, the de minimis differences between home buyers and sellers are insufficient to establish a "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury."  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013) (emphasis in original).  Second, the Department of Justice's opinion regarding the settlement has no bearing on whether Plaintiffs' have alleged a "real and immediate . . . threat of *future* injury." *Id.* (emphasis in original).  Accordingly, the Court finds that Plaintiffs are not entitled to injunctive relief, and that dismissal of Count I of the SAC is appropriate. Furthermore, the Court dismisses Count I with prejudice because the Court is unconvinced that any amendment to the SAC would result in a finding that Plaintiffs have standing to seek injunctive relief or remedy the issues of mootness discussed above.  *See Patel v. Georgia Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012).

B. The SAC is an Impermissible Shotgun Pleading

Defendants next argue that Counts II and III SAC should be dismissed on shotgun pleading grounds.  *See* Mot. at 2–3 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015)) ("In Claim II, Plaintiffs assert claims under the antitrust laws of 28 jurisdictions; in Claim III, Plaintiffs assert claims under the consumer-protection laws of 25 jurisdictions. This is a textbook example of improper 'shotgun pleading,' as Plaintiffs have failed to 'separat[e] into a different count each cause of action or claim for relief.'").  "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"  *Weiland*, 792 F.3d at 1320.  "The typical shotgun complaint contains several counts,

each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Another type of shotgun pleading is one that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Id.* Such a shotgun pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996). Therefore, "shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Est. Mortg. Network, Inc. v. Cadrecha*, No. 8:11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

Count II of the SAC violates Rule 8(a)(2) and should be dismissed on shotgun pleading grounds. Count II seeks relief under twenty-five state antitrust statutes, but fails to allege, absent conclusory statements, that: (1) the elements of any particular statute is met, (2) the statutes are sufficiently similar to warrant relief on behalf of a nationwide class, (3) relief on a class wide basis is appropriate, (4) the factual allegations incorporated from other portions of the SAC relate to these statutes, or (5) the acts of any individual Defendant warrant relief under these statutes. *See* SAC at 49–52. While Plaintiff argues that "Lutz has spelled out the alleged anticompetitive conduct in detail and alleged how that conduct violated the identified laws[,]" the Court is unconvinced. *See* Resp. at 33.

Count II of the SAC asserts damages under twenty-five statutes, but fails to articulate,

9

absent conclusory allegations, that Plaintiffs are entitled to relief under any statute. *See* SAC at 49–52 ("Beginning at least in 1996, Defendants engaged in a continuing contract, combination, or conspiracy with respect to broker services provided in each of the Indirect Purchaser States."). Relatedly, Plaintiffs' assertion that "[e]ach state at issue implements its own equitable principles" regarding timeliness bolsters Defendants' argument that the SAC is an impermissible shotgun pleading. Resp. at 10; *see also* Mot. at 7–8. Furthermore, while Count II asserts that "Defendants are jointly and severally liable for all damages suffered by Plaintiffs and the Damages Class Members[,]" the sole allegation against Douglas Elliman is a conclusory allegation that states "[e]xecutives from Douglas Elliman served on and participated in NAR-affiliated committees related to MLSs and their governance." SAC ¶¶ 140, 189. Consequently, the Court finds that dismissal of Count II is warranted.

Count III of the SAC is nearly identical, except it asserts relief under twenty-five consumer protection statutes, as opposed to twenty-five antitrust statutes. SAC at 52–54 ("Beginning at least in 1996, Defendants engaged in a continuing contract, combination, or conspiracy with respect to broker services provided in each of the Indirect Purchaser States."). Furthermore, Count IV of the SAC fails to even provide what statutes or which state's common law Plaintiffs are seeking relief under. Consequently, the Court finds that dismissal of Counts III and IV is also warranted.

As an aside, throughout their Motion, Defendants raise concerns that the instant claims are "identical" to claims that have been asserted by "by many of these same Plaintiffs, represented by the same counsel" in cases across the country. Mot. at 18. The Court finds that Defendants' concerns are warranted and raise significant doubt about whether Plaintiffs have sufficiently alleged that they are entitled to relief from the Defendants in this case. The Court is particularly concerned with *Davis v. Hanna Holdings, Inc.*, Case No. 2:24-cv-02374-WB, (E.D. Pa.), (ECF

No. 40), where Plaintiffs' counsel submitted a nearly identical complaint asserting relief against a different defendant on September 16, 2024, a few months before filing the SAC in this action. *See Daker v. Bryson*, No. 515CV00088TESCHW, 2019 WL 826474, at *4 (M.D. Ga. Feb. 21, 2019), *aff'd*, 848 F. App'x 884 (11th Cir. 2021) (citations omitted) ("Filing identical lawsuits in multiple district courts is abusive and wasteful of judicial resources and warrants dismissal under § 1915(e) as frivolous and malicious."). While the Court acknowledges that Plaintiffs seek relief from a different defendant in *Hanna*, the prolonged and expansive nature of this litigation, coupled with the nearly identical complaint in *Hanna*, sows doubt as to whether Plaintiffs are seeking relief against all possibly implicated parties, rather than solely pursuing claims that they can plausibly allege. *See Batton*, No. 21-CV-00430, (ECF No. 124) (granting Defendant HomeServices of America, Inc., HSF Affiliates, LLC, Long & Foster Companies, Inc., and BHH Affiliates, LLC's motion to dismiss for lack of personal jurisdiction); *see also Batton et al v. Compass, Inc. et al*, Case No. 1:23-cv-15618, (N.D. Ill.), (ECF No. 117) (Plaintiffs voluntarily dismissing their claims against Defendant Douglas Elliman).

Relatedly, the Court notes that several assertions in the SAC lack sufficient explanation or legal basis. For example, Plaintiffs' assert that "Defendants are jointly and severally liable for the acts of their coconspirators, whether named or not named as defendants in this Complaint." SAC ¶ 63. This assertion is particularly troubling where Plaintiffs, and their counsel, are seeking relief before other courts (from different defendants) arising from the same incidents discussed in the SAC. Consequently, to survive dismissal, Plaintiffs are instructed to amend their complaint in a manner that states a claim for relief against each Defendant on each count they seek to assert. Failure to remedy the aforementioned issues will result in dismissal of this entire action with prejudice.

## IV.     CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendants Joint Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 98) is GRANTED.  Count I of the Second Amended Complaint (ECF No. 92) is DISMISSED WITH PREJUDICE.  Counts II , III, and IV of the Second Amended Complaint (ECF No. 92) are DISMISSED WITHOUT PREJUDICE.  Should Plaintiffs choose to file a third amended complaint, they may do so within twenty-one (21) days of the date of this Order.  The Clerk of Court is INSTRUCTED to administratively CLOSE THIS CASE.  All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida this 15th  day of July 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:  All counsel of record