**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-CV-10040-MOORE/ELFENBEIN

**JAMES LUTZ**, *et al.*,

                Plaintiffs,

     v.

**HOMESERVICES OF AMERICA, INC.**, *et al.*,

                Defendants.

**DEFENDANTS  DOUGLAS ELLIMAN INC., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, AND HSF AFFILIATES LLC'S CORRECTED OPPOSITION TO PLAINTIFFS' MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      The First Series of Antitrust Cases Against NAR and Many Real Estate
                Brokerages ................................................................................................ 2

        B.      The *Burnett* Trial and Settlements ............................................................. 3

        C.      The Follow-On Seller Side Cases ............................................................... 4

        D.      The Seller-Side Appeals ............................................................................. 5

        E.      The *Tuccori* Buyer-Side Class Action ...................................................... 6

        F.      The *Lutz* Buyer-Side Class Action Before this Court ............................... 6

        G.      The *Batton I* Court Strikes Plaintiffs' Motion for Class Certification and
                Appointment of Co-Lead Class Counsel in Light of the *Burnett* Appeal ............... 7

        H.      The Initial *Tuccori* Settlement with Ten Brokerages and Preliminary
                Approval of an Opt-In Procedure Based on the Opt-In Procedure
                Approved in *Burnett* ................................................................................. 8

        I.      The *Batton I* Plaintiffs' Settlement with Keller Williams that Improperly
                Includes Enjoined, Released Claims .......................................................... 9

        J.      The *Tuccori* Plaintiffs' Opt-In Settlement with Anywhere ..................... 9

        K.      Plaintiffs' Counsel's Flurry of Unwarranted Emergency Filings ......................... 10

        L.      Plaintiffs' Counsel's Latest Unwarranted Filing: The Instant Motion to
                Appoint Interim Co-Lead Class Counsel ................................................. 12

III.    LEGAL STANDARD ......................................................................................... 12

IV.     ARGUMENT ...................................................................................................... 12

        A.      Plaintiffs' Counsel Cannot Fairly and Adequately Represent the Interests
                of the Buyer-Only Class Because They Are Violating the Injunctions in
                *Burnett* and *Gibson* to the Detriment of the Non-Released Buyer-Side
                Class .......................................................................................................... 13

        B.      Plaintiffs' Counsel Cannot Fairly and Adequately Represent the Interests
                of the Buyer-Only Class Because Their Representation of Mr. Mullis in
                His Objections to the Seller-Side Class's Release of Their Buyer-Side
                Claims Creates a Conflict ......................................................................... 16

i

V.      CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batton, et al. v. The National Association of Realtors, et al.,*
No. 1:21-cv-00430 (N.D. Ill)................................................................*passim*

*Batton, et al. v. Compass, Inc., et al.,*
No. 1:23-cv-15618 (N.D. Ill)................................................................*passim*

*Boyd v. Secy,*
114 F.4th 1232 (11th Cir. 2024) .............................................................. 14

*Burnett v. Nat'l Ass'n of Realtors, et al.,*
No. 4:19-cv-00332-SRB (W.D. Mo.2019) .........................................*passim*

*Drazen v. Pinto,*
106 F.4th 1302 (11th Cir. 2024) .............................................................. 14

*Fox v. Ritz-Carlton Hotel Co., L.L.C.,*
345 F.R.D. 358 (S.D. Fla. 2024)............................................................... 15

*Gibson, et al. v. Nat'l Ass'n of Realtors, et al.,*
No. 4:23-cv-788-SRB (W.D. Mo.) ......................................................*passim*

*In re: Disposable Contact Lens Antitrust.,*
No. 3:15–MD–2626–J–20JRK, 2015 WL 10818781 (M.D. Fla. Oct. 7, 2015)........................ 12

*Johnson v. NPAS Sols., LLC,*
975 F.3d 1244 (11th Cir. 2020) ............................................................... 14

*Med. & Chiropractic Clinic, Inc. v. Oppenheim,*
981 F.3d 983 (11th Cir. 2020) ................................................................ 14

*Moehrl v. Nat'l Ass'n of Realtors, et al.,*
No. 1:19-cv-01610-ARW (N.D. Ill 2019) ................................................. 3

*Nosalek v. MLS Prop. Info. Network, Inc.,*
No. 1:20-cv-12244-PBS (D. Mass.) .......................................................... 3

*Ruderman ex rel. Schwartz v. Washington Nat. Ins. Co.,*
263 F.R.D. 670 (S.D. Fla. 2010).............................................................. 16

*Tuccori v. At World Properties, LLC, et al.,*
No. 1:24-cv-00150 (N.D. Ill)................................................................*passim*

iii

*Umpa, et al. v. Nat'l Ass'n of Realtors, et al.,*
  No. 2:23-cv-945-SRB (W.D. Mo.) ............................................................................................... 4

*United States CFTC v. Escobio*,
  946 F.3d 1242 (11th Cir. 2020) ................................................................................................. 14

**Rules**

Federal Rule of Civil Procedure 23(g)(1) ....................................................................................... 12

Federal Rule of Civil Procedure 23(g)(3) ....................................................................................... 12

## I.      INTRODUCTION

Plaintiffs' motion to appoint interim co-lead class counsel should be denied, stricken, or stayed because Plaintiffs' counsel—who also represent Plaintiff James Mullis in appeals before the Eighth Circuit that seek to unwind the release of buyer-side claims by home sellers in settlements Defendants entered in 2024—are conflicted and cannot fairly and adequately represent the interests of the non-released buyer-side class for two separate reasons.

First, Plaintiffs' counsel's pursuit in this case of compensation for the 79% of buyer-side claims that already were bargained for and released in Defendants' 2024 seller-side settlements violates court-ordered injunctions enjoining the pursuit of those released buyer-side class claims.[1] This is detrimental to the non-released buyer-side putative class members (*i.e.*, those class members who purchased, but never sold, a home during the class period).  These putative class members deserve counsel with undivided loyalty who will act in their best interest to pursue a prompt settlement of their claims—not counsel here who seek to hold their claims hostage in the hopes of extracting compensation from Defendants for enjoined claims that have already been released.

Second, Plaintiffs' counsel's ongoing challenge to the scope of the releases in Defendants' 2024 seller-side settlements creates a separate, independent conflict.  Plaintiffs' counsel, on behalf of Mr. Mullis, objected to Defendants' 2024 settlements on the ground that they release the home seller class's buyer-side claims.  While Plaintiffs' counsel lost on this issue in the district court, they have appealed to the Eighth Circuit.  If Plaintiffs' counsel are successful in unwinding

---

[1] The parties have agreed that the claims of the enjoined named Plaintiff (James Mullis) are stayed pending final resolution of all appeals from the 2024 settlements.  ECF 86.

Defendants' seller-side settlements, the non-released buyer-side class would be significantly harmed by being forced to compete for compensation from Defendants' limited pool of assets against all of the unwound seller-side claims and the unwound buyer-side claims representing 79% of the buyer-side class.

For these reasons, this Court should deny, strike, or stay Plaintiffs' motion. Indeed, it is clear that Plaintiffs' counsel's true objective in filing the instant motion is to prevent those putative class members who only purchased (but never sold) a home during the relevant time period from settling their claims against Defendants through an opt-in settlement procedure recently approved in *Tuccori v. At World Properties LLC, et al.*, No. 1:24-cv-00150 (N.D. Ill.). Specifically, the settlement in *Tuccori* contains a procedure whereby brokerage defendants can opt in to settle, on a nationwide basis, the buyer-side claims against them that were not released in their seller-side settlements. Plaintiffs' motion is a blatant attempt effectively to vacate or do an end-run around that opt-in procedure by preventing Defendants from pursuing settlement negotiations with anyone but Plaintiffs' counsel in this case. Two judges of the Northern District of Illinois (Judge Lindsay C. Jenkins, who is presiding over *Tuccori*, and Judge LaShonda A. Hunt, who is presiding over a different buyer-side case in which Plaintiffs' counsel represent the plaintiffs (*Batton I*)) have now correctly rejected similar attempts by Plaintiffs' counsel—through a flurry of emergency motions—to interfere with this opt-in procedure. This Court should do the same.

## II.    BACKGROUND

### A.  The First Series of Antitrust Cases Against NAR and Many Real Estate Brokerages

In 2019 and 2020, a series of direct-purchaser nationwide class action lawsuits were filed on behalf of home-sellers alleging that they paid inflated broker commissions as a result of alleged anticompetitive rules promulgated by the National Association of Realtors ("NAR") and

purportedly enforced by virtually every real estate brokerage in the U.S. real estate industry. *See Burnett v. Nat'l Ass'n of Realtors, et al.*, No. 4:19-cv-00332-SRB (W.D. Mo. 2019) ("*Burnett*"); *Moehrl v. Nat'l Ass'n of Realtors, et al.*, No. 1:19-cv-01610-ARW (N.D. Ill. 2019); *Nosalek v. MLS Prop. Info. Network, Inc.*, No. 1:20-cv-12244-PBS (D. Mass.). On January 25, 2021, plaintiffs, represented by the same counsel as Plaintiffs in this case, filed a nationwide indirect-purchaser class action against HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates LLC (collectively, "HomeServices"), NAR, Keller Williams Realty, LLC ("Keller Williams") and others on behalf of home-buyers alleging they paid inflated prices for homes based on the same claimed conspiracy. *Batton, et al. v. The National Association of Realtors, et al.*, No. 1:21-cv-00430, ECF No. 1 (N.D. Ill.) ("*Batton I*").

## B. The *Burnett* Trial and Settlements

The *Burnett* case proceeded through extensive discovery, and in October 2023, NAR, Keller Williams, and HomeServices proceeded to trial. The trial ended in a jury verdict in favor of the plaintiffs totaling approximately $1.8 billion—a damages award that was subject to trebling damages up to $5.4 billion under the antitrust laws. *Id.* ECF No. 1294. In light of the risk of extended appeals and uncertainty, NAR ($418 million), HomeServices ($250 million) and Keller Williams ($70 million) settled in the months following the verdict for substantial monetary amounts and industry-shifting injunctive relief. *Id.* ECF No. 1371, 1372, 1458, 1460, 1469, 1518, 1520.

Similar to the opt in procedure in *Tuccori v. At World Properties, LLC, et al.*, No. 1:24-cv-00150 (N.D. Ill.) ("*Tuccori*") discussed below, the NAR settlement included an opt-in procedure for alleged co-conspirator brokerages that were not parties to *Burnett* to join the settlement following preliminary approval. *Id.* ECF No. 1458, 1519, 1538. More than 20 brokerages that

were not parties to *Burnett* used the opt-in procedure to join the settlement, *Id.* ECF No. 1538, 1540, with no objection to the opt-in procedure from the *Batton I* plaintiffs, ECF No. 1561. Rather, Mr. Mullis, represented by the same counsel as Plaintiffs in this case, objected to final approval of NAR and HomeServices' settlements because those settlements released the seller-side class's buyer side claims, including many of the claims at issue in *Batton I* and this case. *Id.*

The *Burnett* plaintiffs moved for final approval of the settlements involving NAR and HomeServices on November 20, 2024. *Id.* ECF No. 1595. Following the final approval hearing on November 26, 2024 (*Id.* ECF No. 1618), the district court overruled Mr. Mullis' objection and granted final approval of those settlements. *Id.* ECF No. 1622 ¶¶ 127-146. In its final approval order, the district court enjoined "Members of the Settlement Class" from "filing, commencing, prosecuting, intervening in, or pursuing as a plaintiff or class member any Released Claims against any of the Released Parties." *Id.* ¶ 168. The district court's final approval order further stated: "[f]or the avoidance of doubt, [the] injunction extends to claims arising from or relating to transactions where Settlement Class members either sold or purchased a home on any MLS nationwide, regardless of affiliation or association with NAR or not, and thus includes, e.g., NWMLS, WPML, and REBNY/RLS." *Id.* Mr. Mullis filed a notice of appeal. ECF No. 1632.

## C. The Follow-On Seller Side Cases

The *Burnett* verdict also led to the filing of a series of copycat lawsuits with substantially similar allegations to *Burnett* against other real estate brokerages, including Douglas Elliman Inc. ("Douglas Elliman"). *See, e.g.*, *Gibson, et al. v. Nat'l Ass'n of Realtors, et al.*, No. 4:23-cv-788-SRB (W.D. Mo.) ("*Gibson*"); *Umpa, et al. v. Nat'l Ass'n of Realtors, et al.*, No. 4:23-cv-945-SRB (W.D. Mo.) ("*Umpa*," which was consolidated with *Gibson* in April 2024). Beginning in the spring of 2024, many of the brokerages in these copycat lawsuits settled.

On April 29, 2024, the *Gibson* plaintiffs filed a motion for preliminary approval of a settlement involving several brokerages, including Douglas Elliman, which was granted. *Gibson*, ECF No. 161, 163. In addition to sweeping injunctive relief, Douglas Elliman settled for a monetary payment of $7.75 million with up to an additional $10 million in contingent payments. *Id.* at 8.

On October 3, 2024, Mr. Mullis, represented by the same counsel as Plaintiffs here, objected to Douglas Elliman's settlement because it released the seller-side class's buyer-side claims, including many of the claims at issue in *Batton I* and this case. *Id.* ECF No. 471. On October 24, 2024, the *Gibson* plaintiffs filed their motion for final approval of the settlement with Douglas Elliman and other brokerages. *Id.* ECF No. 521. Following a final approval hearing on October 31, 2024 (*Id.* ECF No. 526), the district court granted final approval of the settlement with Douglas Elliman and overruled Mr. Mullis' objection. *Id.* ECF No. 530 ¶¶ 67-86. In its final approval order, the district court issued an identical injunction to the injunction issued in the final approval order in *Burnett*. *Id.* ¶ 90. Mr. Mullis filed a notice of appeal. ECF No. 561.

### D. The Seller-Side Appeals

Mr. Mullis appealed the overruling of his objections in *Burnett* and *Gibson* to the release of the seller-side class's buyer-side claims against HomeServices and Douglas Elliman. *Burnett v. Mullis*, No. 24-2143; *Gibson v. Mullis*, No. 24-3473. Those appeals are fully briefed. Oral argument occurred on January 14, 2026. The appeals are currently *sub judice*.

### E. The *Tuccori* Buyer-Side Class Action

In December 2023, the *Tuccori* plaintiffs filed a buyer-side antitrust suit against At World Properties, LLC ("At World Properties") that raises the same theories as are at issue in *Batton I*. *Tuccori*, ECF No. 1. On May 8, 2025, the *Tuccori* plaintiffs moved to consolidate five additional buyer-side actions involving 10 additional brokerage defendants with *Tuccori*. *Id.* ECF No. 41. The district court granted the motion to consolidate. *Id.* ECF No. 43. The *Batton I* plaintiffs never filed an opposition. *Id.* The *Tuccori* plaintiffs also filed a subsequent motion to reassign and a motion to consolidate related cases, both of which were granted by the district court without any opposition from the *Batton I* plaintiffs. *Id.* ECF Nos. 47, 51, 52, 66.

### F. The *Lutz* Buyer-Side Class Action Before this Court

Following HomeServices' filing a motion to dismiss in fall 2022 in *Batton I*, the district court dismissed HomeServices for lack of personal jurisdiction. *Batton I*, ECF No. 93, 97, 99, 124, 125. In November 2023, plaintiffs represented by the same counsel as Plaintiffs here filed *Batton, et al. v. Compass, Inc., et al.*, No. 1:23-cv-15618 (N.D. Ill.) ("*Batton II*"), a home-buyer action that contained the same allegations as *Batton I* but against a different set of brokerage defendants, including Douglas Elliman. *Batton II*, ECF No. 1. Plaintiffs in *Batton II* voluntarily dismissed Douglas Elliman on June 11, 2024. *Id.* ECF No. 117.

On April 29, 2024, Plaintiffs represented by the same counsel as plaintiffs in *Batton I* and *Batton II* filed this case against HomeServices. ECF No. 1. Plaintiffs subsequently filed an amended complaint naming Douglas Elliman as an additional defendant. ECF No. 45.

On July 15, 2025, this Court dismissed all claims against HomeServices and Douglas Elliman, including Plaintiffs' federal antitrust claim with prejudice and the state law antitrust, consumer protection, and unjust enrichment claims with an opportunity to amend. ECF No. 144.

Plaintiffs subsequently filed the operative Third Amended Complaint ("TAC") on August 5, 2025, defining the damages class as "[a]ll persons who, since December 1, 1996 through August 17, 2024, purchased in the Indirect Purchaser States residential real estate that was listed on a NAR MLS." ECF No. 145.  Shortly thereafter, HomeServices and Douglas Elliman moved to dismiss the TAC.  That motion is fully briefed and pending before this Court.  *Id.* ECF Nos. 152, 154,[2] 155.

### G. The *Batton I* Court Strikes Plaintiffs' Motion for Class Certification and Appointment of Co-Lead Class Counsel in Light of the *Burnett* Appeal

On September 23, 2025, plaintiffs in *Batton I* filed a motion for class certification and appointment of co-lead class counsel.  *Batton I*, ECF Nos. 239, 243.  On October 22, 2025, Anywhere filed a motion to strike, or alternatively to stay, plaintiffs' motion for class certification.  *Id.* ECF No. 246.  Anywhere argued, among other things, that Plaintiffs' certification motion should be struck or stayed because Plaintiffs' proposed class would violate a federal injunction barring claims by as much as 79% percent of the putative class who released their home-buying claims in the seller-side settlements (according to plaintiffs' own expert Dr. Abrantes-Metz).  *Id.* After holding a hearing on the motion on November 4, 2025, the district court granted Anywhere's motion, struck Plaintiffs' motion for class certification without prejudice and stayed briefing on class certification and related *Daubert* motions pending resolution of the *Burnett* appeal.  *Id.* ECF No. 257, 258, 259.

---

[2] Plaintiffs withdrew their state law consumer protection claims in Arizona, Colorado, Iowa, Kansas, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Virgina, and Wisconsin. ECF No. 154 at 31.

During the hearing, Judge Hunt explained: "I don't quite see how the plaintiffs could have filed a motion for class certification that includes the *Burnett* claims that were released. That's the district court's ruling, and it's in effect, and so that should have been honored. I don't know what the Eighth Circuit is going to do, but it's not stayed, and so I'm not sure why I got a class certification motion with a class that I [can't] really certify."  Exhibit 1 - T.6-7.  When plaintiffs' counsel argued only the subset of named plaintiffs with non-released buyer-side claims were seeking to certify a class that includes the released claims in *Burnett*, Judge Hunt responded that counsel was "splitting hairs" and "I don't agree. I think I have to give effect to whatever order has been written. I would expect a district judge to do the same thing if I had an injunctive -- some type of injunctive relief entered in a final approval order, and not to say, 'Well, we can go ahead and continue to litigate,' as if my order has no effect. It does. That provision was not stayed."  *Id.* T. 35-36.

**H.  The Initial *Tuccori* Settlement with Ten Brokerages and Preliminary Approval of an Opt-In Procedure Based on the Opt-In Procedure Approved in *Burnett***

On October 13, 2025, the *Tuccori* plaintiffs filed a motion for preliminary approval of a settlement with 10 brokerage defendants.  *Tuccori*, ECF No. 58-1 ¶ 18.  The settlement, which included monetary relief and injunctive relief, expressly excludes from the settlement class those "persons who have separately released their claims against a Settling Defendant as part of certain other court approved class settlements."  *Id.* ECF No. 58 at 7.

The *Tuccori* settlement includes an opt-in procedure modeled after the opt-in procedure finally approved a year prior in *Burnett* (ECF No. 1622), which contemplates that non-party real estate brokerages may opt in to the settlement using one of three available mechanisms, including mediation before a designated Special Master, retired Northern District of Illinois Chief Judge James Holderman.  *Tuccori*, ECF No. 58-1 ¶¶ 32-35.  Non-parties may enter into opt in settlements

until April 13, 2026.  *Id.* ¶ 8.  The *Tuccori* settlement, of which Plaintiffs' counsel here were well aware, encourages non-parties to take advantage of this opt-in procedure, noting: "Plaintiffs and Settlement Class Counsel shall use their best efforts to resolve Released Claims with the National Association of REALTORS®, and any real estate brokerage, franchisor, or real estate company that is not a Party to this Settlement Agreement during the Opt-In Period."  *Id.* at ¶ 36.  The district court in *Tuccori* preliminarily approved the settlements and the opt-in procedure on October 16, 2025.  ECF No. 65.

**I.   The *Batton I* Plaintiffs' Settlement with Keller Williams that Improperly Includes Enjoined, Released Claims**

On February 2, 2026, the *Batton I* plaintiffs moved for preliminary approval of a $20 million class action settlement with Keller Williams.  *Batton I*, ECF No. 262; ECF No. 262-1 ¶ 12. In contrast to the *Tuccori* settlement reached approximately four months prior, the *Batton I* plaintiffs' settlement with Keller Williams expressly includes all buyer-side claims (*Id.* ECF No. 262 at 15), including the approximately 79% of buyer-side claims released in the seller-side settlements and prohibited by the injunction in *Burnett*.  *Id.* ECF No. 262-1 ¶ 57.  On February 12, 2026, the district court granted preliminary approval.  *Id.* ECF Nos. 268, 269.  Thereafter, the *Batton I* plaintiffs filed a motion for preliminary approval of the proposed distribution plan, which was granted without opposition on March 13, 2026.  *Id.* ECF No. 276, 296.

**J.   The *Tuccori* Plaintiffs' Opt-In Settlement with Anywhere**

On February 23, 2026, the *Tuccori* plaintiffs moved for preliminary approval of settlements reached with various brokerages, including Anywhere, that opted in to the court-approved settlement procedure following arms' length mediations before Judge Holderman.  *Tuccori*, ECF No. 98.  The five opt-in settlors agreed collectively to contribute $10,787,500 to the *Tuccori* settlement fund, bringing the total contributions thus far to $13,989,500 as well as significant

injunctive relief similar to the seller-side settlements. *Id.* at 4. As was the case with the initial *Tuccori* settlement, this settlement class properly excluded the enjoined buyer-side claims already released in the seller-side settlements. *Id.* ECF No. 98-1 ¶ 8. Simultaneously, the *Tuccori* plaintiffs moved for leave to amend their class action complaint to add the opt-in settlors. *Id.* ECF No. 97.

### K. Plaintiffs' Counsel's Flurry of Unwarranted Emergency Filings

Rather than object to non-party opt-in settlor Anywhere's *Tuccori* settlement, Plaintiffs' counsel filed a flurry of emergency motions, including a motion to intervene in *Tuccori* with respect to the proposed class action settlement with Anywhere (a defendant in *Batton I*) on February 24, 2026. *Tuccori*, ECF No. 100. The same day, the *Batton I* plaintiffs also filed a motion to relate and reassign the *Tuccori* case to Judge Hunt. *Batton I*, ECF No. 271. A day later, the *Batton I* plaintiffs filed a motion for a preliminary injunction to maintain the status quo until plaintiffs' motion to reassign *Tuccori* was decided or, if necessary, until competing applications to appoint interim class counsel for the homebuyer claims against Anywhere are resolved. *Id.* ECF No. 273.

On March 4, 2026, Judge Jenkins held a hearing in *Tuccori* on the *Batton I* plaintiffs' motion to intervene. *Tuccori*, ECF No. 119. During the hearing, the *Tuccori* plaintiffs stated they and Judge Holderman were never informed by Anywhere that it had an unsuccessful mediation with the *Batton I* plaintiffs, which Anywhere confirmed and argued proved it was not attempting a reverse auction to settle with the lowest bidder. Exhibit 2 - T.17, 23. Anywhere also explained that after the *Batton I* plaintiffs informed Judge Hunt they did not want to proceed with a class certification motion of only the non-released claims, they began a settlement discussion with the *Tuccori* plaintiffs concerning the non-released claims. *Id.* T.22. Judge Jenkins ultimately denied the motion to intervene, reasoning that the *Batton I* plaintiffs' interests will not be impaired because

they can object to Anywhere's *Tuccori* settlement and will have an opportunity to be heard in connection with the final approval hearing. *Tuccori*, ECF No. 118 at 1-2.[3]

On March 4, 2026, the *Batton I* plaintiffs filed a virtually identical motion to the motion at issue here to appoint interim co-lead class counsel. *Batton I*, ECF No. 292. On March 5, 2026, Judge Hunt held a hearing on the *Batton I* plaintiffs' motion to relate and reassign and motion for a preliminary injunction. *Id.* ECF No. 294. Judge Hunt denied those motions. *Id.* Judge Hunt explained she was denying the motion to relate and reassign *Tuccori* given that *Batton I* was in a different procedural posture than the *Tuccori* case. Exhibit 3 - T.6-8. Judge Hunt explained that she was also denying the motion for preliminary injunction for the same reasons Judge Wood denied the *Batton I* plaintiffs' request for a TRO to enjoin Anywhere's seller-side settlement in *Burnett*, namely, that they can object to Anywhere's *Tuccori* settlement. *Id.* T.8-10.

Judge Hunt also addressed the *Batton I* plaintiffs' pending motion to appoint interim co-lead class counsel, explaining "I guess I just don't understand why, if everything is stayed pending resolution of *Burnett*, why we're now going to start briefing some new issue, that it seems like this could have been raised a while ago if anybody thought that there was a need to parse out who is lead counsel for which groups of plaintiffs." *Id.* T.18-19. Judge Hunt further stated "it sounds like we have a process here where this opt-in -- this option was used in the *Burnett* case, and Judge Jenkins used it in her case, which means that any defendant that decides, you know, 'I'd like to move on,' should be able to, if they meet whatever requirements are set – I mean, I don't know what that process is like in her case; I haven't looked at it closely -- but has the right to talk to -- to plaintiffs' counsel." *Id.* T.20.

---

[3] The *Batton I* plaintiffs have filed a notice of appeal from the denial of their motion to intervene.

**L. Plaintiffs' Counsel's Latest Unwarranted Filing: The Instant Motion to Appoint Interim Co-Lead Class Counsel**

On March 5, 2026, Plaintiffs filed the instant motion to appoint interim co-lead class counsel ("Motion") in which they cite supposed "recent developments." *Lutz*, ECF No. 169 at 4. According to Plaintiffs, the development is simply that Anywhere, a defendant in *Batton I*, settled all non-released buyer-side claims through the court-approved opt-in settlement procedure in *Tuccori. Id.* at 5-6.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 23(g)(3), "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  "Federal Rule of Civil Procedure 23(g)(1) outlines the considerations pertinent to the appointment of lead counsel at the time a class is certified and applies equally to the appointment of interim lead counsel before certification."  *In re: Disposable Contact Lens Antitrust*., No. 3:15–MD–2626–J–20JRK, 2015 WL 10818781, at *1 (M.D. Fla. Oct. 7, 2015). Under Rule 23(g)(1)(A) , the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Under Rule 23(g)(1)(B), the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

## IV.   ARGUMENT

Plaintiffs' Motion should be denied under Rule 23(g)(1)(B) for two separate reasons.  First, Plaintiffs' counsel cannot fairly and adequately represent the interests of those homebuyers who did not also sell a home during the putative class period because Plaintiffs' counsel improperly are

pursuing claims in this case on behalf of the enjoined buyer-side class, in violation of the injunctions in *Burnett* and *Gibson*. Second, Plaintiffs' counsel's challenge to the scope of the releases in Defendants' seller-side settlements creates a conflict because if Plaintiffs' counsel's efforts are successful, those individuals who have purchased (but not sold) a home during the putative class period would be forced to compete for compensation from the common pool of assets belonging to Defendants against all of the unwound seller-side direct purchaser and buyer-side indirect purchaser claims.

**A.      Plaintiffs' Counsel Cannot Fairly and Adequately Represent the Interests of the Buyer-Only Class Because They Are Violating the Injunctions in *Burnett* and *Gibson* to the Detriment of the Non-Released Buyer-Side Class**

Plaintiffs' counsel cannot fairly and adequately represent the interests of the non-released buyer-side class because they improperly are pursuing claims in this case on behalf of the enjoined buyer-side class, in violation of the injunctions in *Burnett* and *Gibson*. According to Plaintiffs' counsel's own expert in *Batton I*, those enjoined, released claims constitute as much as 79% of the buyer-side class. *Batton I*, ECF No. 246.

In granting final approval of Defendants' seller-side settlements that released, among other claims, the seller-side class's buyer-side claims, the district court in *Burnett* and *Gibson* enjoined "Members of the Settlement Class" from "filing, commencing, prosecuting, intervening in, or pursuing as a plaintiff or class member any Released Claims against any of the Released Parties," including "claims arising from or relating to transactions where Settlement Class members either sold or purchased a home." *Burnett*, ECF No. 1622 ¶ 168; *Gibson*, ECF No. 530 ¶ 90. The same counsel representing Plaintiffs here filed, on behalf of Mr. Mullis, objections in those cases arguing, among other things, that the seller-side class could not release their buyer-side claims. *Burnett*, ECF No. 1147; *Gibson*, ECF No. 471. The district courts overruled Mr. Mullis' objections

and counsel here filed appeals that are pending in the Eighth Circuit.  ECF No.  *Burnett*, ECF Nos. 1487, 1498; *Gibson*, ECF Nos. 530, 561; *Burnett v. Mullis*, No. 24-2143; *Gibson v. Mullis*, No. 24-3473.

The final approval orders in *Burnett* and *Gibson* and the injunctions contained therein are "final judgments" that are immediately effective notwithstanding Plaintiffs' counsels appeals on behalf of Mr. Mullis and Mr. Mullis has not sought a stay of either injunction.  *See United States CFTC v. Escobio*, 946 F.3d 1242, 1251 (11th Cir. 2020) ("Absent entry of a stay, a district court retains jurisdiction to enforce its judgment—via contempt or other means—during the pendency of an appeal."); *see also Boyd v. Secy*, 114 F.4th 1232, 1238 (11th Cir. 2024) ("What the transfer of authority from the district court to the court of appeals does *not* do is rob the district court's judgment of its effect while the appeal is pending.").  Despite these injunctions, Plaintiffs' counsel continue to prosecute claims on behalf of the enjoined class, in violation of the *Burnett* and *Gibson* final approval orders.  ECF No. 145.

Plaintiffs' counsel has openly violated and continues to violate the *Burnett* and *Gibson* injunctions in the hope that their appeals on behalf of Mr. Mullis one day will succeed in undoing the release of the seller-side class's buyer side claims.  Plaintiffs' counsel's interests conflict with the interest the non-released, non-enjoined buyer-side class has in prompt resolution of their claims.  *See Drazen v. Pinto*, 106 F.4th 1302, 1333 (11th Cir. 2024) ("One cardinal rule defines the scope of counsel's ethical obligations in class actions: class counsel owes a duty to the class as a whole and not to any individual members of the class.") (quoting *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020)); *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1252 (11th Cir. 2020)); *see also Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020) ("Applying this [cardinal] rule, courts [sic] have rejected attempts by

- 14 -

class members to derail settlements beneficial to the class."); *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 345 F.R.D. 358, 367 (S.D. Fla. 2024) ("Even the appearance of having divided loyalties or acting without the best interests of the class in mind can render counsel incompetent."). Defendants already bargained for the release and injunction of the seller-side class's buyer-side claims in *Burnett* and *Gibson*. They will not pay twice for the same claims. Plaintiffs' counsel's improper pursuit of enjoined claims is a dilemma of their own making and is not fair to or in the best interests of the non-released buyer-side class that deserve counsel who will promptly pursue settlement of their claims.

By bringing the instant Motion, Plaintiffs' counsel is further harming the non-released buyer-side class by attempting to preclude any opportunity for settlement of their claims against Defendants through the court-approved opt-in procedure in *Tuccori* (modeled after the opt-in procedure approved in *Burnett*). That is certainly not in the best interest of the non-released buyer-side class. That class would be best served by counsel who only represent their interests and not the interests of the vast majority of the buyer-side class who are enjoined from pursuing their released buyer-side claims, at least until the *Burnett* and *Gibson* appeals are resolved.

If Plaintiffs' counsel here has a concern with any settlement Defendants might reach in *Tuccori*, as Judges Wood, Jenkins, and Hunt have made clear, the proper course is for Plaintiffs' counsel to formally object to the settlements in *Tuccori*.

**B.     Plaintiffs' Counsel Cannot Fairly and Adequately Represent the Interests of the Buyer-Only Class Because Their Representation of Mr. Mullis in His Objections to the Seller-Side Class's Release of Their Buyer-Side Claims Creates a Conflict**

There is a second, independent reason why Plaintiffs' motion should be denied: Plaintiffs' counsel are conflicted due to their representation of Mr. Mullis in his objections to and appeals of the release of the settlement class's buyer-side claims in Defendants' settlements in *Burnett* and *Gibson*. "Class counsel must act with unwavering and complete loyalty to the class members they

represent, and the responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Co.*, 263 F.R.D. 670, 684 (S.D. Fla. 2010) (internal quotation marks and citations omitted).  "[C]ourts have consistently held that counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants in a different proceeding."  *Id.* (citations omitted).

If Plaintiffs' counsel here succeed on behalf of Mr. Mullis in unwinding the seller-side settlements, the non-released buyer-side class would be forced to compete for compensation from the common pool of assets belonging to Defendants against all of the unwound seller-side direct purchaser and buyer-side indirect purchaser claims.  This creates an actual conflict for Plaintiffs' counsel here as they are "pursuing a class action as well as actions on behalf of individual plaintiffs when both actions pursue a common pool of assets that might be insufficient to support the total amount sought."  *Id.* at 685.  Thus, the Court should deny Plaintiffs' motion for this additional, independent reason.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied because Plaintiffs' counsel cannot fairly and adequately represent the interests of those homebuyers who did not also sell a home during the putative class period.  At a minimum, this Court should exercise its discretion to strike or stay Plaintiffs' motion to appoint interim co-lead class counsel until the *Burnett* and *Gibson* appeals are resolved, just as Judge Hunt struck Plaintiffs' counsel's motion for class certification without prejudice and stayed all briefing on class certification and related *Daubert* briefing pending resolution of the *Burnett* appeal in *Batton I*.

Dated:  March 20, 2026

Respectfully submitted,

By:  */s/ Robert J. Anello*
Robert J. Anello (*pro hac vice*)
Edward M. Spiro (*pro hac vice*)
**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**
565 Fifth Ave.
New York, NY 10017
Phone:  (212) 856-9600
Facsimile:  (212) 856-9494
Email:  ranello@maglaw.com
Email:  espiro@maglaw.com

By:  */s/ Michael N. Kreitzer*
Michael N. Kreitzer
Florida Bar No. 705561
Phillip M. Soven
Florida Bar No. 1035504
**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717
Email:  kreitzerm@gtlaw.com
Email:  phil.soven@gtlaw.com
Email:  moisem@gtlaw.com
Email:  flservice@gtlaw.com

*Attorneys for Defendant Douglas Elliman Inc.*

By:  /s/ *Christopher D. Dusseault*
Christopher D. Dusseault *(pro hac vice)*
Sarah M. Kushner *(pro hac vice)*
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7000
Email:  cdusseault@gibsondunn.com
Email:  smkushner@gibsondunn.com

By:  */s/ Alexandra M. Mora*
**AKERMAN LLP**
Alexandra M. Mora, Esq.
Florida Bar Number:  52368
Primary E-mail:  alexandra.mora@akerman.com

- 17 -

Secondary E-mail:  marylin.herrera@akerman.com
Alejandro J. Paz, Esq.
Florida Bar Number:  1011728
Primary E-mail:  alejandro.paz@akerman.com
Secondary E-mail:  marylin.herrera@akerman.com
Three Brickell City Centre
98 S.E. 7th St., Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Facsimile:  (305) 374-5095

*Attorneys for Defendants HomeServices of
America, Inc., BHH Affiliates, LLC, and HSF
Affiliates LLC*

## CERTIFICATE OF SERVICE

I, Phillip M. Soven, hereby certify that, on March 20, 2026, a true and correct copy of the foregoing was filed electronically using the CM/ECF system, which will provide notice to all counsel of record.

/s/ Phillip M. Soven
Phillip M. Soven