## THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

JAMES LUTZ, et al.,

Plaintiffs,

v.

HOMESERVICES OF AMERICA, INC., et al.,

Defendants.

Case No. 4:24-cv-10040-KMM

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................**Error! Bookmark not defined.**

**INTRODUCTION**...................................................................................................... 1

**ARGUMENT**.............................................................................................................. 1

    I.       Plaintiffs Have Antitrust Standing to Bring State Law Indirect-Purchaser Claims .......1

    II.      Plaintiffs Have Antitrust Standing Even if *AGC* Applies.........................................12

        A.   Plaintiffs Satisfy Causation......................................................................... 12

        B.   Plaintiffs Satisfy Directness........................................................................ 13

        C.   Plaintiffs' Claims are Consistent with Purpose of Antitrust Laws................................ 14

        D.   Plaintiffs are Efficient Enforcers.................................................................. 14

**CONCLUSION** ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur v. Microsoft Corp.*,
676 N.W.2d 29 (Neb. 2004)............................................................................................6

*Aryeh v. Canon Bus. Sols., Inc.*,
292 P.3d 871 (Cal. 2013) ...............................................................................................3

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983).......................................................................................................1

*In re Auto. Parts Antitrust Litig.*,
50 F. Supp. 3d 836 (E.D. Mich. 2014)...........................................................................7

*Batton v. Nat'l Ass'n of Realtors*,
2024 WL 689989 (N.D. Ill. Feb. 20, 2024) .....................................................13, 14, 15

*Beckler v. Visa U.S.A., Inc.*,
2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004).........................................................9

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ..................................................................... *passim*

*Brown v. Hartford Healthcare Corp.*,
2023 WL 7150051 (Conn. Super. Ct. Oct. 26, 2023) ..................................................3, 4

*Bunker's Glass Co. v. Pilkington PLC*,
75 P.3d 99 (Ariz. 2003)................................................................................... *passim*

*Cepiel v. N.H. Interscholastic Athletic Ass'n*,
2025 WL 1693649 (N.H. June 17, 2025)........................................................................7

*City of Rockford v. Mallinckrodt ARD, Inc.*,
360 F. Supp. 3d 730 (N.D. Ill. 2019) ...........................................................................12

*Comes v. Microsoft Corp.*,
646 N.W.2d 440 (Iowa 2002) ........................................................................................4

*County of Cook v. Phillip Morris, Inc.*,
817 N.E.2d 1039 (Ill. App. Ct. 2004) ...........................................................................4

*D.R. Ward Const. Co. v. Rohm & Haas Co.*,
470 F. Supp. 2d 485 (E.D. Pa. 2006) ................................................................1, 10, 13

*Davis v. Four Seasons Hotel Ltd.*,
    228 P.3d 303 (Haw. 2010) ................................................................................4

*Davis v. Hanna Holdings, Inc.*,
    771 F. Supp. 3d 552 (E.D. Pa. 2025) .............................................. *passim*

*Dicesare v. Charlotte-Mecklenburg Hosp. Auth.*,
    2017 WL 1359599 (N.C. Super. Ct. Apr. 11, 2017)...................................8

*Elkins v. Microsoft Corp.*,
    817 A.2d 9 (Vt. 2002)...............................................................................10

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................................... *passim*

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005)....................................................................9

*Fucile v. Visa U.S.A., Inc.*,
    2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ..................................10

*In re Graphics Processing Units Antitrust Litig.*,
    540 F. Supp. 2d 1085 (N.D. Cal. 2007) ...............................................3, 12

*Ho v. Visa U.S.A. Inc.*,
    787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004) ...................................................8

*Holder v. Archer Daniels Midland Co.*,
    1998 WL 1469620 (D.C. Super. Ct. Nov. 4, 1998) ................................11

*Hyde v. Abbott Lab'ys, Inc.*,
    473 S.E.2d 680 (N.C. App. 1996)..............................................................8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)..................................................................... *passim*

*Kanne v. Visa U.S.A. Inc.*,
    723 N.W.2d 293 (Neb. 2006)......................................................................6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019)............................................. *passim*

*Knowles v. Visa U.S.A., Inc.*,
    2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) ...................................5

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007)....................................................................6

iii

*McGarry & McGarry, LLC v. Bankr. Mgmt. Solutions, Inc.*,
   937 F.3d 1056 (7th Cir. 2019) .................................................................................................4

*Nass-Romero v. Visa U.S.A. Inc.*,
   279 P.3d 772 (N.M. Ct. App. 2012)..........................................................................................7

*Nevada Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*,
   423 P.3d 605 (Nev. 2018) .........................................................................................................6

*Obstetrical & Gynecological Assocs. of Neenah, S.C. v. Landig*,
   384 N.W.2d 719 (Wis. Ct. App. 1986) ...............................................................................11, 12

*Peterson v. Visa U.S.A., Inc.*,
   2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005)................................................................11

*Pub. Advisors, LLC v. Conn. Res. Recovery Auth.*,
   217 A.3d 953 (Conn. 2019) ......................................................................................................3

*Southard v. Visa U.S.A. Inc.*,
   734 N.W.2d 192 (Iowa 2007) ...................................................................................................4

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
   42 A.D.3d 301 (N.Y. App. Div. 2007) .....................................................................................8

*Stark v. Visa U.S.A. Inc.*,
   2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)...................................................................6

*State v. Philip Morris Inc.*,
   1997 WL 540913 (Md. Cir. Ct. May 21, 1997)........................................................................5

*Strang v. Visa U.S.A., Inc.*,
   2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) .....................................................................12

*Teague v. Bayer AG*,
   671 S.E.2d 550 (N.C. App. 2009)............................................................................................8

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...................................................................................2

*In re Terazosin Hydrochloride Antitrust Litig.*,
   2002 WL 35651679 (S.D. Fla. Sept. 12, 2002) .......................................................................2

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004)..........................................................................................1, 2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................................................2

iv

*Union Carbide Corp. v. Superior Ct.*,
  679 P.2d 14 (Cal. 1984) ........................................................................................................3

*Wrobel v. Avery Dennison Corp.*,
  2006 WL 7130617 (Kan. Dist. Ct. Feb. 01, 2006)..................................................................5

**Statutes**

Conn. Gen. Stat. Ann. § 35-46a ....................................................................................................3

D.C. Code § 28-4509 ...................................................................................................................11

Haw. Rev. Stat. § 480-13 ..............................................................................................................4

740 Ill. Comp. Stat. 10/7(2) .........................................................................................................4

Iowa Code Ann. § 553.2 ................................................................................................................4

Md. Code Ann., Com. Law § 11-209 ............................................................................................5

Me. Rev. Stat. Ann. tit. 10, § 1104(1)...........................................................................................5

Mich. Comp. Laws Ann. § 445.778................................................................................................5

N.C.G.S. § 75-16............................................................................................................................8

N.D. Cent. Code § 51-08.1-08(4) ..................................................................................................9

N.H. Rev. Stat. Ann. § 356:11 .......................................................................................................7

N.H. Rev. Stat. Ann. § 356:14 .......................................................................................................7

N.M. Stat. Ann. § 57-1-3 ...............................................................................................................7

N.Y. Gen. Bus. Law § 340..............................................................................................................7

Neb. Rev. Stat. Ann. § 59-829........................................................................................................6

Nev. Rev. Stat. § 598A.210 ...........................................................................................................6

Or. Rev. Stat. § 646.715(2)............................................................................................................9

Or. Rev. Stat. § 646.780.................................................................................................................9

R.I. Gen. Laws § 6-36-7(d).............................................................................................................9

Tenn. Code Ann. § 47-25-106(a) .................................................................................................10

Utah Code Ann. § 76-10-3109(1)(a)............................................................................................10

**Rules**

FRCP 12(b)(6) ................................................................................................................12

**INTRODUCTION**

All of Defendants' arguments regarding antitrust standing were raised and rejected in a nearly identical case. *Davis v. Hanna Holdings, Inc.*, 771 F. Supp. 3d 552, 569–81 (E.D. Pa. 2025). Defendants' arguments here fail for the same reasons. First, indirect purchasers suing under state antitrust statutes need only prove injury to have antitrust standing. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 695 n.38 (S.D. Fla. 2004). Plaintiffs allege such injury. Second, Plaintiffs easily satisfy *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), which the parties agree is the most restrictive test. The Court can therefore spare itself a state-by-state analysis (ECF No. 191 at 28) and find antitrust standing for all states using *AGC*. Third, even a state-by-state analysis reveals that no relevant state has officially adopted *AGC* and the rest have either modified or explicitly rejected it. Thus, under any mode of analysis, Defendants' standing arguments should be rejected.

**ARGUMENT**

**I.      Plaintiffs Have Antitrust Standing to Bring State Law Indirect-Purchaser Claims**

Defendants' *AGC* argument turns on generic harmonization statutes. But each state under which Plaintiffs bring antitrust claims *has* enacted "authority to the contrary": their *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) repealer statutes that permit indirect purchasers to sue for antitrust violations. In repealing *Illinois Brick*, these states "have necessarily made the policy decision that duplicative recovery may permissibly occur." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156 (N.D. Cal. 2009). Applying *AGC* to repealer states would virtually *always* lead to a finding of no standing for indirect purchaser claims because there are always more direct victims and the potential of duplicative recovery in indirect purchaser actions. Strict application of *AGC* in this context would thus wholly undermine the purpose of *Illinois Brick* repealers. *See, e.g.*, *D.R. Ward Const. Co. v. Rohm & Haas Co.,* 470 F. Supp. 2d 485, 503 (E.D.

1

Pa. 2006) ("strict application of this factor" to indirect purchaser claims "would always caution against standing, an outcome incompatible with the purpose of *Illinois Brick* repealer statutes."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2008) (broad application of *AGC* inappropriate "under the repeater states' laws in the absence of a clear directive from those states' legislatures or highest courts").

Courts in this District have thus found that indirect purchasers asserting antitrust claims under the laws of *Illinois Brick* repealer states have antitrust standing. *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1375–76 (S.D. Fla. 2001); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317, 2002 WL 35651679, at *3 (S.D. Fla. Sept. 12, 2002); *cf. In re Terazosin*, 220 F.R.D. at 675, 678 & n.5, 38 (certifying indirect purchaser classes in 17 states, explaining "the primary difference between the state antitrust laws and the federal statutes is that indirect purchasers, to the extent they can prove that they were injured by Defendants' conduct, have standing to prosecute the state law claims"). Here, Plaintiffs allege such injury (TAC, ECF No. 151-1 ¶¶ 20, 260[1]) and therefore have standing in all states. Regardless, none of the states in question would bar Plaintiffs' claims here under *AGC*.

**Arizona**: The Arizona Supreme Court has held that, notwithstanding the state's *permissive* harmonization statute, indirect purchasers may sue under Arizona's antitrust law despite *AGC. Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 107 (Ariz. 2003) (en banc). Defendants ignore this binding authority and instead cite an isolated Arizona trial court decision. *Bunker's Glass*, which did not apply *AGC*, controls. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 263 (S.D.N.Y. 2019) (concluding Arizona

---

[1] All TAC paragraphs referenced appear in the Fourth Amended Complaint (ECF No. 198).

Supreme Court would not apply *AGC* factors, citing *Bunker's Glass*); *see also In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) (that one intermediate appellate court used the *AGC* test "is not the same as showing that *AGC* has been adopted as the law" of that state).

**California:** California antitrust law explicitly allows for indirect purchaser claims. *Union Carbide Corp. v. Superior Ct.*, 679 P.2d 14, 16 (Cal. 1984). While some courts have applied the *AGC* factors, more recent decisions post-dating Defendants' cited authority call into question *AGC*'s applicability to Cartwright Act claims. *See Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 877 (Cal. 2013) ("Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century."); *In re Keurig*, 383 F. Supp. 3d at 258 (court unwilling to conclude *AGC* applies in California for indirect purchaser antitrust standing under the Cartwright Act).

**Connecticut:** Contrary to Defendants' argument, the Supreme Court of Connecticut has not decided whether to apply the *AGC* test to indirect purchaser claims brought pursuant to Connecticut's *Illinois Brick* repealer, Conn. Gen. Stat. Ann. § 35-46a. The case that Defendants cite did not address indirect purchaser claims at all. *See Brown v. Hartford Healthcare Corp.*, No. X03-CV-22-6152239-S, 2023 WL 7150051, at *8 (Conn. Super. Ct. Oct. 26, 2023) ("In *Tremont* [*Pub. Advisors, LLC v. Conn. Res. Recovery Auth.*, 217 A.3d 953, 966 (Conn. 2019)], which involved a direct relationship between the plaintiff and defendant, the court referenced the efficient enforcer test but was not called upon to apply that test. Much less was it an occasion for the court to determine how, if at all, that test applies to indirect purchaser claims."). Connecticut courts that have addressed how *AGC* applies to indirect purchaser claims have explained that the

3

*AGC* factors "must be modified" to reflect Connecticut's decision to allow indirect purchaser claims. *Brown*, 2023 WL 7150051, at *8.

**Hawaii:** Hawaii law explicitly provides for antitrust lawsuits on behalf of indirect purchasers. Haw. Rev. Stat. § 480-13. The Hawaii Supreme Court has never held that *AGC* applies to indirect purchaser claims in the state, and has declined requests to do so. *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 324 n.33 (Haw. 2010). Neither of the cases Defendants cite conducted any analysis of Hawaii case law on this question.

**Illinois:** Illinois has enacted an *Illinois Brick* repealer statute. 740 Ill. Comp. Stat. 10/7(2). No Illinois court has applied all of the *AGC* factors to Illinois state antitrust claims. Defendants' two cited cases do not establish what they claim. *County of Cook v. Phillip Morris, Inc.*, 817 N.E.2d 1039 (Ill. App. Ct. 2004) never applied all of the *AGC* factors; instead, the court merely said that Illinois recognizes the remoteness doctrine, *id.* at 1047, which is related to only one of several *AGC* factors. And in *McGarry & McGarry, LLC v. Bankr. Mgmt. Solutions, Inc.*, 937 F.3d 1056 (7th Cir. 2019), plaintiff there was not a participant in the relevant market *at all*—direct, indirect, or otherwise—and the only reason an *AGC* analysis was conducted was because the plaintiff argued his position based on it. *Id.* at 1064, 1066.

**Iowa:** While the Iowa Supreme Court has held that *AGC* applies to Iowa antitrust claims, it did so in a case where plaintiffs "did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity." *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 196–97 (Iowa 2007). The Iowa Supreme Court has elsewhere made clear that Iowa's harmonization statute, Iowa Code Ann. § 553.2, does not apply where federal law is inconsistent with Iowa's antitrust law, such as with indirect purchaser actions. *See Comes v. Microsoft Corp.*, 646 N.W.2d 440, 449 (Iowa 2002) ("[I]owa antitrust law is not bound by … *Illinois Brick*."). And one court declined to

4

find that Iowa would strictly apply the *AGC* factors. *See In re Keurig*, 383 F. Supp. 3d at 257.

**Kansas:** The Kansas Supreme Court has not addressed whether and how to apply *AGC* to Kansas indirect purchaser claims. But even the *Wrobel* decision that Defendants cite recognized that any application of *AGC* would need to be modified to "limit[ ] the factors that otherwise would act as a per se disqualification of indirect purchasers in price fixing cases." *See Wrobel v. Avery Dennison Corp.*, No. 05CV1296, 2006 WL 7130617, at *3 (Kan. Dist. Ct. Feb. 01, 2006). There is no reason to think the Kansas Supreme Court would not perceive the same inconsistency between *AGC* and its *Illinois Brick* repealer statute that so many courts have noted.

**Maine:** Maine has an *Illinois Brick* repealer statute, which explicitly allows for indirect purchaser claims. Me. Rev. Stat. Ann. tit. 10, § 1104(1). As Defendants correctly note, one lower court case made clear that the *AGC* factors would need to be modified so as not to prohibit indirect purchaser claims. *Knowles v. Visa U.S.A., Inc.*, No. CIV.A. CV-03-707, 2004 WL 2475284, at *6 (Me. Super. Ct. Oct. 20, 2004) (stating directness of injury factor "should be disregarded entirely in any inquiry as to standing under Maine's antitrust laws"); *see also In re Keurig*, 383 F. Supp. 3d at 260 (declining to apply *AGC* to Maine indirect purchaser claims).

**Maryland:** Maryland has enacted an *Illinois Brick* repealer statute allowing for indirect purchasers to bring antitrust claims. Md. Code Ann., Com. Law § 11-209. The only Maryland court to address the issue held that *AGC* does not apply to claims under § 11-209. *See State v. Philip Morris Inc.*, No. 96122017, 1997 WL 540913, at *19–*20 (Md. Cir. Ct. May 21, 1997).

**Michigan:** Michigan has enacted an *Illinois Brick* repealer statute that allows for indirect purchasers to bring antitrust claims. Mich. Comp. Laws Ann. § 445.778. Michigan courts have not considered whether to apply the *AGC* factors to Michigan indirect purchaser claims. The lone Michigan case cited by Defendants did not involve an indirect purchaser because plaintiff there

5

was "not a consumer or competitor in the allegedly restrained market." *Stark v. Visa U.S.A. Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *2 (Mich. Cir. Ct. July 23, 2004).

**Minnesota:** The Minnesota Supreme Court has explicitly rejected the application of *AGC* to indirect purchaser claims under Minnesota law. *See Lorix v. Crompton Corp.*, 736 N.W.2d 619, 629 (Minn. 2007) ("[W]ith due respect to courts that have chosen to apply *AGC,* we believe application of the *AGC* factors in Minnesota would contravene the plain language of the statute and in some cases thwart the intent of the legislature by barring indirect purchaser suits for the reasons articulated in *Illinois Brick*.").

**Nebraska:** While the Nebraska Supreme Court has once applied *AGC* to Nebraska antitrust claims, it did so in a case where plaintiffs were neither direct nor indirect purchasers, while re-affirming that indirect purchaser lawsuits are generally viable under Nebraska law. *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 300–01 (Neb. 2006). This is consistent with a prior decision holding indirect purchaser claims were allowed under Nebraska law notwithstanding the state's harmonization provision, Neb. Rev. Stat. Ann. § 59-829. *See Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004); *see also In re Keurig*, 383 F. Supp. 3d at 257 (declining to find that Nebraska would strictly apply *AGC* factors).

**Nevada:** Nevada has an *Illinois Brick* repealer statute that explicitly allows for indirect purchaser actions. Nev. Rev. Stat. § 598A.210. The case in which the Nevada Supreme Court used the *AGC* factors involved one plaintiff who was not a competitor or customer (direct or indirect) of the defendant and another who suffered no injury at all. *See Nevada Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*, 423 P.3d 605, 608 (Nev. 2018). If asked to apply the *AGC* factors in an indirect purchaser case, Nevada courts would need to modify those factors to comport with the state's decision to repeal *Illinois Brick*. *See In re Broiler Chicken Antitrust*

6

*Litig.*, 290 F. Supp. 3d 772, 815 (N.D. Ill. 2017); *In re Flash Memory*, 643 F. Supp. 2d at 1156.

**New Hampshire:** New Hampshire enacted an *Illinois Brick* repealer statute in 2008, long after it enacted its *permissive* harmonization provision. N.H. Rev. Stat. Ann. §§ 356:11, 356:14; *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 856 (E.D. Mich. 2014). While the New Hampshire Supreme Court recently said that antitrust plaintiffs with speculative injuries lack standing and cited *AGC*, the court never adopted *AGC* or applied all of its factors and the case did not involve an indirect purchaser. *Cepiel v. N.H. Interscholastic Athletic Ass'n*, No. 2023-0640, 2025 WL 1693649, at *4 (N.H. June 17, 2025). Because the New Hampshire legislature has made clear that it intends for New Hampshire antitrust law to allow for indirect purchaser claims and has not mandated harmonization, any application of *AGC* would need to modify those factors that would tend to exclude indirect purchaser claims. *See In re Broiler Chicken*, 290 F. Supp. 3d at 815; *In re Flash Memory*, 643 F. Supp. 2d at 1156.

**New Mexico:** New Mexico enacted an *Illinois Brick* repealer and specifically allows indirect purchasers to pursue antitrust damages claims. N.M. Stat. Ann. § 57-1-3. The case Defendants cite applied *AGC* but not in the context of an indirect purchaser. *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 780 (N.M. Ct. App. 2012) ("we reject Plaintiff's claim that she is an indirect purchaser"). In fact, federal courts have cited *Nass-Romero* for the proposition that, "*Illinois Brick* repealers work to save indirect purchaser damages suits, even from application of the *AGC* factors." *In re Broiler Chicken*, 290 F. Supp. 3d at 815. Even if the Court were to apply the *AGC* factors to indirect purchaser claims under New Mexico law, it would need to modify those factors that would tend to exclude indirect purchaser claims. *See id.*; *In re Flash Memory*, 643 F. Supp. 2d at 1156.

**New York:** New York has enacted an *Illinois Brick* repealer statute that permits antitrust

damages claims by indirect purchasers. N.Y. Gen. Bus. Law § 340. Defendants' cited cases do not establish what they claim. *Ho v. Visa U.S.A. Inc.*, 787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004) appears to have applied the *AGC* factors only because plaintiffs did not contest the issue. And *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 303–04 (N.Y. App. Div. 2007) only cited citing *Ho* in the context of a consumer fraud claim. Federal courts have held that *AGC* should not apply to indirect purchaser claims under New York law (*In re Broiler Chicken*, 290 F. Supp. 3d at 816) and, even if *AGC* did apply, it would need to be reconciled with state law allowing indirect purchaser claims. *See id.*; *In re Flash Memory*, 643 F. Supp. 2d at 1156.

**North Carolina:** Notwithstanding North Carolina's harmonization statute, North Carolina's appellate courts have permitted indirect purchaser claims. *Hyde v. Abbott Lab'ys, Inc.*, 473 S.E.2d 680, 688 (N.C. App. 1996) ("we hold that indirect purchasers have standing under" North Carolina's antitrust law, N.C.G.S. § 75-16). The highest court in North Carolina to specifically consider the question has found that *AGC* does not apply to indirect purchaser claims. *See Teague v. Bayer AG*, 671 S.E.2d 550, 557 (N.C. App. 2009) ("[W]e hold the *AGC* factors do not apply in determining which indirect purchasers have standing to sue under the North Carolina antitrust statutes."). *Teague* makes clear that Plaintiffs have antitrust standing if Defendants' conduct affected the price of goods they purchased. *Id.* at 558. Plaintiffs have alleged this. (TAC, ECF 151-1 at ¶¶ 457, 461.) While Defendants are correct that one trial court articulated a modified standing test based on *ACG*, *Teague* reversed a lower court that used the same test. *Teague*, 671 S.E.2d at 556–57. Until the North Carolina Supreme Court addresses the issue, *Teague* controls. *Dicesare v. Charlotte-Mecklenburg Hosp. Auth.*, No. 16 CVS 16404, 2017 WL 1359599, at *9 (N.C. Super. Ct. Apr. 11, 2017), *cert. denied* 370 N.C. 215 (2017).

**North Dakota:** North Dakota law specifically allows for antitrust damages claims by

8

indirect purchasers. N.D. Cent. Code § 51-08.1-08(4). Plaintiffs were unable to locate any instance of a court in North Dakota applying the *AGC* factors to an indirect purchaser antitrust claim. The only case Defendants cite does not discuss or apply the *AGC* factors, and instead only cites *AGC* for the general proposition that an antitrust plaintiff must have standing. *See Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004 WL 2115144, at *3 (N.D. Dist. Ct.  Aug. 23, 2004). This is insufficient to establish that North Dakota follows *AGC* for indirect purchaser standing. *See In re Keurig*, 383 F. Supp. 3d at 260–61 (finding same).

**Oregon:** Oregon has enacted an *Illinois Brick* repealer statute allowing indirect purchaser claims for damages under Oregon's antitrust law. Or. Rev. Stat. § 646.780. Additionally, Oregon's harmonization statute says only that federal law is "persuasive" where it "relat[es] to the same subject." Or. Rev. Stat. § 646.715(2). Because federal law, specifically *AGC*, does not address the subject of indirect purchaser claims for damages authorized by statute there is no reason to believe that Oregon courts would apply *AGC* to claims under Or. Rev. Stat. § 646.780. *See In re Keurig*, 383 F. Supp. 3d at 261 (finding no basis to apply *AGC* to Oregon antitrust law).

**Rhode Island:** Rhode Island enacted an *Illinois Brick* repealer in 2013. *See* 6 R.I. Gen. Laws § 6-36-7(d). Plaintiffs have not located any Rhode Island cases addressing whether the *AGC* factors apply to Rhode Island indirect purchaser claims. Even if Rhode Island courts were to apply the *AGC* factors to indirect purchaser claims under Rhode Island law, they would need to modify those factors that would undermine Rhode Island's *Illinois Brick* repealer law. *See In re Broiler Chicken*, 290 F. Supp. 3d at 815; *In re Flash Memory*, 643 F. Supp. 2d at 1156.

**Tennessee:** Tennessee has forged a different path from federal antitrust law in that it "does not have a statutory 'harmony clause' mandating courts to interpret the [Tennessee's Trade Practices Act] consistently with federal law." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172

S.W.3d 512, 519 (Tenn. 2005). Tennessee's statute provides that "[a]ny person who is directly or indirectly injured or damaged by any violation of this part may individually sue for and recover … equitable relief and actual damages." Tenn. Code Ann. § 47-25-106(a). This plain language "provides a cause of action to indirect purchasers" under the TTPA. *Freeman*, 172 S.W.3d at 517. *Freeman* also rejected *Illinois Brick*'s concern about avoiding duplicative recovery, *id.* at 520, thus proving that Tennessee does not fully apply *AGC*. *Freeman* also did not adopt *AGC*'s proximate cause analysis but instead adopted a "substantial effect" on trade or commerce test. *Id.* at 523. Therefore, *AGC* is inapplicable in Tennessee. Plaintiffs plead facts under the substantial effects test, citing a Tennessee resident who bought a home in Tennessee based on application of NAR rules in force in a local MLS. (TAC, ECF No. 151-1 at ¶ 30.) Similar allegations establish antitrust standing under the TTPA. *See D.R. Ward*, 470 F. Supp. 2d at 505–06.

**Utah:** Utah enacted a statutory *Illinois Brick* repealer. Utah Code Ann. § 76-10-3109(1)(a). Defendants do not identify any Utah case applying *AGC* to curtail indirect purchaser claims. If the Court does apply *AGC*, it should modify the *AGC* factors to recognize Utah's decision to allow indirect purchaser claims. *See In re Broiler Chicken*, 290 F. Supp. 3d at 815.

**Vermont:** The Vermont Supreme Court has held that the state's harmonization statute only applies to what conduct is prohibited, and not to who may sue. *Elkins v. Microsoft Corp.*, 817 A.2d 9, 17 (Vt. 2002). That court also held that the state's legislature intended for its antitrust statute to have the broadest reach possible. *Id.* at 13. Thus, as one court found, "the Vermont Supreme Court would not apply the *AGC* factors." *In re Keurig*, 383 F. Supp. 3d at 262. Even the non-controlling *Fucile* case Defendants cite recognized that any application of *AGC* would have to be "consistent with allowing 'indirect purchaser' standing." *Fucile v. Visa U.S.A., Inc.*, No. S1560-03 CNC, 2004 WL 3030037, at *3 (Vt. Super. Ct. Dec. 27, 2004). And the other

10

case Defendants cite failed to identify the Vermont case supporting its decision.

**Washington D.C.:** D.C.'s Antitrust Act expressly permits claims by indirect purchasers. *See* D.C. Code § 28-4509. This law was passed three years after *Illinois Brick* "to distinguish D.C. antitrust law from federal law with respect to standing for indirect purchasers." *Holder v. Archer Daniels Midland Co.*, No. 96-2975, 1998 WL 1469620, at *3 n.4 (D.C. Super. Ct. Nov. 4, 1998) (holding indirect purchasers had standing without applying *AGC*). Defendants' sole D.C. case, *Peterson v. Visa U.S.A., Inc.*, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005), applied *AGC* but only where the plaintiff was neither a direct nor indirect purchaser and had "wholly speculative" harm. *Id.* at *2–*3. *Holder* is the more apt authority here, and given the District's choice to expressly allow indirect purchaser claims, *AGC* should not be applied to D.C. claims. *Cf. In re Keurig*, 383 F. Supp. 3d at 258 (refusing to find *Peterson* more controlling than *Holder*).

**West Virginia:** After West Virginia's harmonization statute was in place, West Virginia implemented an *Illinois Brick* repealer that allows for lawsuits by indirect purchasers. W. Va. Code R. § 142-9-2. This repealer "suggests that the Supreme Court of Appeals of West Virginia would not apply *AGC*, or if it did, it would apply *AGC* more liberally than federal precedent would require." *In re Keurig*, 383 F. Supp. 3d at 264.

**Wisconsin:** After *AGC*, the Wisconsin Court of Appeals rejected the application of a proximate cause test, the so-called target area approach, to claims under Wisconsin antitrust law. *Obstetrical & Gynecological Assocs. of Neenah, S.C. v. Landig*, 384 N.W.2d 719, 723 (Wis. Ct. App. 1986). Although *Landig* does not address *AGC*, its reasoning for rejecting a proximate cause test is instructive because it held that "[t]here is no need to make the direct-indirect distinction under" Wisconsin antitrust law. *Id.* As the court explained,

> [Wisconsin antitrust law] explicitly allows any person injured directly *or indirectly* to sue upon this statute. Similar language is not found in the federal law. This,

11

> coupled with the legislature's instruction that we give the most liberal construction to achieve the aim of competition, compels us to the conclusion that an ultimate consumer who pays a higher price for goods and services indirectly due to a secret rebate comes within the ambit of the statute.

*Id.* at 723–24. Defendant is correct that a trial court subsequently applied the *AGC* factors, but it did so without citing or considering *Landig*. *See Strang v. Visa U.S.A., Inc.*, No. 03cv011323, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005). Absent a decision from the Wisconsin Supreme Court, *Landig* should control. *In re Keurig*, 383 F. Supp. 3d at 263.

## II.     Plaintiffs Have Antitrust Standing Even if *AGC* Applies

Both parties agree (at 15) that *AGC* is the strictest test available. Thus, if Plaintiffs satisfy *AGC*, Plaintiffs have standing to bring their antitrust claims in each relevant state. *Davis*, 771 F. Supp. 3d at 577 (applying *AGC* for simplicity); *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 760 (N.D. Ill. 2019) (same); *In re Graphics*, 540 F. Supp. 2d at 1097 (same). Here, even if *AGC* applies (it does not), Plaintiffs satisfy its factors. (ECF No. 191 at 27 (identifying *AGC* factors).)

### A.  Plaintiffs Satisfy Causation

Plaintiffs adequately plead causality by alleging that they paid supracompetitive home prices and received lower quality service (TAC, ECF 151-1 at ¶¶ 20, 22, 109, 150, 210, 224, 263), and that "[i]nflated total commissions were incorporated into the home price, thereby causing buyers to pay higher prices for homes," (*id.* at ¶ 210). *See Davis*, 771 F. Supp. 3d at 578 (finding same allegations sufficient to establish causation).

Defendants dispute causation (at 20) because many factors impact home prices. But this fails to treat the complaint's alleged facts as true (*see* FRCP 12(b)(6)) and improperly asks the Court to accept purported facts external to the complaint. *Davis*, 771 F. Supp. 3d at 577 (rejecting identical argument for same reason). The pleading stage is not the proper juncture to

assess complex factual questions about the precise relationship between commission rates and home prices. *See D.R. Ward*, 470 F. Supp. 2d at 503 ("the discovery process is necessary to develop an array of factual issues that bear upon the directness of the plaintiffs' injury," including "the degree to which the artificially increased portion of the price of plastics additives was passed along the distribution chain" and "the impact of intra- and extra-market factors").

Moreover, Plaintiffs have never alleged that commission levels are the *only* thing impacting home prices, nor do they need to. The price of every product on the market is impacted by multiple inputs. What matters at the pleading stage for purposes of *AGC* is that plaintiffs allege facts sufficient to show that their injury was proximately caused by defendants' conduct. Plaintiffs have done so. *Davis*, 771 F. Supp. 3d at 578 (quoting *Moehrl v. Nat'l Ass'n of Realtors*, 492 F. Supp. 3d 768, 784 (N.D. Ill. 2020) ("it is easy to understand how [the NAR rules implemented by Defendant] could plausibly result in inflated commission rates.")); *Batton v. Nat'l Ass'n of Realtors*, No. 21-CV-00430, 2024 WL 689989, at *8 (N.D. Ill. Feb. 20, 2024) ("*Batton I*") ("[I]t is not difficult to trace the path of the overcharge."). In any event, Plaintiffs have submitted an expert report in one of their other similar cases setting forth a comprehensive, precise methodology for calculating damages by isolating the effect of supracompetitive buyer-broker commissions from other factors impacting home prices. *See Batton I*, ECF No. 243-4. This also satisfies the fifth *AGC* factor regarding the identification and apportioning of damages.

### B.  Plaintiffs Satisfy Directness

Plaintiffs satisfy directness by alleging they are the direct recipients of buyer-broker services and that the prices of their homes were inflated to cover the cost of those services. (TAC, ECF 151-1 at ¶¶ 22, 109, 149, 154, 210, 223–24, 258, 260, 292.); *Davis*, 771 F. Supp. 3d at 578 (homebuyers may have suffered "the greatest, if not the most direct, injury" because they

received worse services and paid higher prices "while sellers came out even after passing on the supracompetitive fees"). Defendants again argue here (at 20) that home prices depend on many factors. This is wrong for the same reasons described above. All Plaintiffs must demonstrate is that the rules inflated commissions, which in turn inflated home prices, which Plaintiffs allege.

### C.  Plaintiffs' Claims are Consistent with Purpose of Antitrust Laws

Defendants do not dispute that Plaintiffs' injuries are of the type for which the antitrust laws were intended to provide redress. This factor weighs in Plaintiffs' favor. *Davis*, 771 F. Supp. 3d at 579 (finding same).

### D.  Plaintiffs are Efficient Enforcers

While the Court previously dismissed Plaintiffs' claims for *injunctive relief* because "there are more directly injured plaintiffs (i.e., home sellers) pursuing *the same injunctive relief that Plaintiffs seek here*" (ECF No. 144 at 6 (emphasis added)), the Court did not extend that holding to Plaintiffs' state-law claims for damages—the only claims still at issue in this case. The *Batton I* court similarly dismissed homebuyer plaintiffs' claim for injunctive relief, but upheld plaintiffs' state law claims. *Batton I*, 2024 WL 689989, at *8 ("The Court does not agree that Plaintiffs' claimed injury is too remote to support their state-law claims."). Defendants therefore cannot credibly claim that, just because home sellers were also injured and brought suit, *homebuyers* have no way of recouping their own damages even though their states have made the considered decision to permit indirect purchasers to recover damages.

The *Davis* court also rejected an identical efficient enforcer argument. *Davis*, 771 F. Supp. 3d at 580. The court reasoned that adopting defendants' "wide-sweeping proposition" would "automatically doom[]" all indirect purchaser cases where direct purchasers also sued, which would turn the efficient enforcer prong into an element rather than one factor among many

14

to be weighed as *AGC* suggests. *Id.* The same holds true here. This is just one factor to be weighed, and it weighs in Plaintiffs' favor for the same reason as directness did. *Id.* at 578.

The home sellers' various settlements likewise do not suggest that home sellers are better enforcers or that recovery here would be entirely duplicative. Those cases only guarantee compensation for home selling transactions, not home purchasing claims.[2] Home sellers thus cannot be more efficient enforcers of homebuyers' rights to compensation. Moreover, a significant percentage of the putative class in this case are homebuyers who have never sold a home and thus are not class members in the seller cases. Defendants cannot identify who other than Plaintiffs would be more efficient enforcers for these first-time homebuyers. *See Davis*, 771 F. Supp. 3d at 581 (rejecting identical defendant argument because defendant merely raised the "specter of duplicative recovery" instead of establishing "something more concrete," and finding damages are not truly duplicative since home sellers allegedly pass on inflated fees to buyers).

As all five of the *AGC* factors weigh in Plaintiffs' favor, the Court should find, consistent with *Davis* and *Batton I*, that Plaintiffs have antitrust standing.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

---

[2] *See*, *e.g.*, "Real Estate Broker Commission Claim Form", https://www.realestatecommissionlitigation.com/admin/api/connectedapps.cms.extensions/asset?id=c28deceb-c56d-4ffa-8c44-9154feb5a5fb&languageId=1033&inline=true (last visited May 13, 2026) (requesting information about home sales only).

15

Dated: May 15, 2026

Respectfully submitted,

 /s/ **Randall P. Ewing**
Randall P. Ewing, Jr. (Bar No. 76879)
George A. Zelcs
Ryan Z. Cortazar
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
(312) 641-9750
rewing@koreintillery.com
gzelcs@koreintillery.com
rcortazar@koreintillery.com

Steven M. Berezney
Michael E. Klenov
Carol O'Keefe
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
sberezney@koreintillery.com
mklenov@koreintillery.com
cokeefe@koreintillery.com

Vincent Briganti
Margaret MacLean
Noelle Forde
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500
vbriganti@lowey.com
mmclean@lowey.com
nforde@lowey.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, a true and correct copy of the foregoing was served upon counsel of record by electronic filing.

**/s/ Randall P. Ewing, Jr.**
Randall P. Ewing, Jr.

17